**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
----------------------------------X
THELMA FELIPE,

               Plaintiff,

    -against-

TARGET CORPORATION and KINGSBRIDGE
ASSOCIATES, LLC,

             Defendants.

----------------------------------X

Civil Action No:
08 CIV 4317

Judges Assigned:
Holwell, J
Pitman, M

**AFFIDAVIT IN**
**OPPOSITION**

STATE OF NEW YORK  )
                :ss.:
COUNTY OF NASSAU  )

    Kevin P. Simmons, an attorney duly admitted to practice law in the Southern District of New York, being duly sworn states as follows:

    1.  I am a member of the firm Simmons, Jannace & Stagg, L.L.P., attorneys for defendant TARGET CORPORATION ("TARGET"). As such, and upon review of the file maintained by this office, I am fully familiar with the facts and circumstances surrounding this case.

    2.  This Affidavit is submitted in Opposition to plaintiff's motion to remand this matter to the Supreme Court, County of Bronx.

3.    For the Court's reference, the following documents are referred to in Target's Memorandum of Law in Opposition to plaintiff's motion.

- Plaintiff's Verified Complaint.  (Exhibit "A");
- Correspondence dated May 5, 2008 (Exhibit "B");
- Affidavit of Marvin Romero, Esq. (Exhibit "C");
- Notice of Removal (Exhibit "D");
- Target Corporation's Answer (Exhibit "E");
- Operation and Easement Agreement (Exhibit "F");
- Affidavit of Cosmin Barbu (Exhibit "G");
- Affidavit of Jason Walbourn (Exhibit "H");
- New York Department of State Entity Information for Target Corporation (Exhibit "I").

4.    As more fully outlined in the accompanying memorandum of law, it is respectfully submitted that plaintiff's motion is without merit and it is respectfully requested that this Court deny plaintiff's motion in its entirety and grant defendant such other and further relief as this Court deems just and proper.

Dated:    Syosset, New York
          June 20, 2008

                                  Simmons, Jannace & Stagg, L.L.P.


                                  BY:  /s/Kevin P. Simmons
                                       Kevin P. Simmons (ks-7818)
                                  Attorneys for Defendant
                                  TARGET CORPORATION
                                  **Office & P.O. Address:**
                                  75 Jackson Avenue
                                  Syosset, New York 11791
                                  (516) 357-8100

Sworn to before me on this
20th day of June, 2008.


/s/Debra A. Meyer   Exp. 3/24/11
**Notary Public**   No. 01ME5075037 Nassau County

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF BRONX

Index No:

3023209/08

------------------------------------------------------------X

THELMA FELIPE,

**SUMMONS**

Plaintiff,

The plaintiff has chosen
**BRONX COUNTY**
as the place of trial

-against-

TARGET CORPORATION and KINGSBRIDGE
ASSOCIATES, LLC.,

The basis of venue is
Defendant's residence

Defendant.

------------------------------------------------------------X

To the above named Defendant(s):

You are hereby summoned to answer the complaint in this action and to serve a copy of your answer, or, if the complaint is not served with this summons, to serve a notice of appearance, on the Plaintiff's attorneys within 20 days after the service of this summons, exclusive of the day of service (or within 30 days after the service is complete if this summons is not personally delivered to you within the State of New York); and in case of your failure to appear or answer, judgment will be taken against you by default for the relief demanded in the complaint.

Dated: New York, NY
        March 19, 2008

MICHAEL J. ASTA

LAW OFFICES OF MICHAEL J. ASTA
450 Seventh Avenue, Suite 2205
New York, NY 10123
(212) 244-6555

TO:   Target Corporation
      1000 Nicollet Mall TPN -12E
      Minneapolis MN 55403

      Kingsbridge Associates, LLC
      c/o Roy P. Kozupsky & Associates, LLP
      Attn: William P. Walzer, Esq.
      10 E. 40th Street Suite 1710
      New York, NY 10016

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF BRONX

Index No:

-------------------------------------------------------------------X

THELMA FELIPE,

                      Plaintiff,

**VERIFIED COMPLAINT**

     -against-

TARGET CORPORATION and KINGSBRIDGE
ASSOCIATES, LLC.,

                      Defendant.

-------------------------------------------------------------------X

        Plaintiff, by her attorney, MICHAEL J. ASTA, ESQ., complaining of the defendant, states on

information and belief:

1.  That at all time hereinafter mentioned Plaintiff was and is a resident of the County of Bronx,

    City and State of New York.

2.  That at all times hereinafter mentioned defendant, TARGET CORPORATION, INC.

    (TARGET) was and still is a foreign corporation authorized to do business in the State of

    New York.

3.  That at all times hereinafter mentioned defendant, TARGET was and still is a domestic

    corporation duly existing under and by virtue of the laws of the State of New York.

5.  That at all times hereinafter mentioned defendant, KINGSBRIDGE was and still is a

    domestic corporation duly existing under and by virtue of the laws of the State of New York.

6.  That at all times hereinafter mentioned the defendant, TARGET conducted business within

    the City and State of New York with a place of business in the County of Bronx, State of New

    York.

7. That at all times hereinafter mentioned the defendant, KINGSBRIDGE conducted business within the City and State of New York with a place of business in the County of Bronx, State of New York.

8. That at all times hereinafter mentioned defendant KINGSBRIDE is a resident of the State of New York with a principal place of business at 99 Powerhouse Rd., Roslyn Heights, N.Y.

8. That at all time hereinafter mentioned KINGSBRIDGE owned the premises known as 40 W 225th Street # 50, County of Bronx, City and State of New York.

9. That at all time hereinafter mentioned KINGSBRIDGE managed the premises known as 40 W 225th Street, County of Bronx, State of New York.

10. That at all time hereinafter mentioned it was the duty of defendant, KINGSBRIDGE to inspect the premises to ensure the premises was kept in a safe condition, free from hazards and dangerous conditions.

11. That at all time hereinafter mentioned defendant TARGET operated a store at the premises known as 40 W 225th Street # 50, County of Bronx, City and State of New York.

12. That at all time hereinafter mentioned defendant TARGET maintained the store on the premises known as 40 W 225th Street # 50, County of Bronx, City and State of New York.

13. That at all time hereinafter mentioned defendant TARGET controlled the store on the premises known as 40 W 225th Street # 50, County of Bronx, City and State of New York..

14. That at all time hereinafter mentioned defendant TARGET managed the store on the premises known as 40 W 225th Street # 50, County of Bronx, City and State of New York..

15. That at all time hereinafter mentioned it was the duty of defendant TARGET to inspect the store on the premises to ensure the premises was kept in a safe condition, free from hazards and dangerous conditions.

16. That at all times hereinafter mentioned, it was the duty of defendant TARGET to keep the store on the premises in a safe condition, free from hazards and dangerous conditions.

17. That at all times hereinafter mentioned, it was the duty of defendant TARGET to maintain the store on the premises in a safe condition, free from hazards and dangerous conditions.

18. That at all times hereinafter mentioned, it was the duty of defendant TARGET to manage the store on the premises to ensure the premises was kept in a safe condition, free from hazards and dangerous conditions.

19. That at all times hereinafter mentioned, it was the duty of defendant TARGET to supervise the store on the premises to ensure the premises was kept in a safe condition, free from hazards and dangerous conditions.

20. On or about September 9, 2007, the plaintiff was lawfully present at the aforementioned location.

21. On or about September 9, 2007, the plaintiff was an invitee at the aforementioned location.

22. On or about September 9, 2007, while at the aforementioned location the plaintiff was caused to slip and fall.

23. The defendants, their agents, servants, or employees were negligent, careless, and reckless in the ownership, operation, management, maintenance, and control of the aforementioned store and premises.

24. The defendants, their agents, servants, or employees created an unreasonably dangerous condition at the aforementioned premises.

25. The defendants their agents, servants, or employees, allowed an unreasonably dangerous condition to exist at the aforementioned premises.



26. The defendant their agents, servants, or employees had observed or should have observed that the premises was in a dangerous and hazardous condition.



27. The defendants their agents, servants, or employees, had actual or constructive notice of the above-mentioned unreasonably dangerous condition.

28. That on or about September 9, 2007 and for a considerable period of time prior thereto, the defendants, their agents, servants and/or employees had negligently, recklessly and carelessly



caused, allowed and permitted the said premises to be, become and remain in a dangerous and defective condition for an unreasonably long and continuing period of time, thereby exposing guests and others lawfully on the said premises to an unreasonable risk of harm and the defendant, its agents, servants and/or employees, were otherwise reckless and careless in the premises.

29. That on September 9, 2007, while the plaintiff was lawfully and properly at the defendant's



premises he was caused to fall because of slick, slippery, defective, poorly lit, dangerous and/or otherwise hazardous condition on the premises known and described as the Target Store located at 40 W 225th Street, Bronx, NY 10463, wherein and whereby the plaintiff was caused to sustain serious and severe personal injuries.

30. The acts and/or omissions of negligence committed by the defendant, its agents, servants and/or employees consisted of failing to properly and adequately maintain the said premises



and its surface, in failing to post warning signs, barricades, and otherwise warning the plaintiff of the dangerous and hazardous condition; in failing to keep the premises free from defective and hazardous conditions which they knew or should have known constituted a danger and hazard to persons lawfully within the aforementioned premises; in failing to have sufficient inspections, repairs and maintenance done to the aforementioned premises; in

violating building department and administrative regulations; in improperly maintaining, cleaning and repairing the subject premises; in failing to use due care and caution in the premises; in being otherwise careless and negligent.

31. That by reason of the foregoing, plaintiff has been injured and suffered damages in a sum of money having a present value that exceeds the jurisdictional limits of all lower courts which would otherwise have jurisdiction of this matter, along with fees, costs, and expenses.

Wherefore, the plaintiff demands judgment against the defendant in an amount that will fairly and adequately compensate her for the injuries she has suffered, an amount that will exceed the jurisdiction of the lower courts, and for such other and further relief as is deemed just and proper.

Dated: New York, NY
     March 19, 2008

ASTA & ASSOCIATES, P.C.
450 Seventh Avenue, Suite 2205
New York, NY 10123
(212) 244-6555

**Verification**

STATE OF NEW YORK)

                    ) ss:

COUNTY OF NEW YORK)

       Michael J. Asta an attorney duly admitted to practice law in the Courts of this State affirms the truth of the following under penalty of perjury and pursuant to Rule 2106 of the CPLR: I am the attorney of record for the plaintiff herein. I have read the annexed Summons and Verified Complaint, know the contents thereof and the same are true to my knowledge, except those matters therein which are stated to be alleged on information and belief, as to those matters I believe them to be true. My knowledge is based upon conversations with the plaintiff and upon records on file in our office.

       The reason I make this verification instead of plaintiff, is because said plaintiff is not within the County where my firm maintains its office.

Dated: March 12, 2008
      New York, NY

                                   Michael J. Asta

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF BRONX

THELMA FELIPE,

                                                    Plaintiff,

                        -against-

TARGET CORPORATION and KINGSBRIDGE
ASSOCIATES, LLC.,

                                                    Defendant,

---

## SUMMONS AND VERIFIED COMPLAINT

---

LAW OFFICES OF
**MICHAEL J. ASTA**

*Attorney for*

**PLAINTIFF**

450 SEVENTH AVENUE
SUITE 2205
NEW YORK, N.Y. 10123
TEL: (212) 244-6555

---

*Pursuant to 22 NYCRR 130-1.1-a, the undersigned, an attorney admitted to practice in the courts of New York State, certifies that, upon information and belief and reasonable inquiry, (1) the contentions contained in the annexed document are not frivolous and that (2) if the annexed document is an initiating pleading, (i) the matter was not obtained through illegal conduct, or that if it was, the attorney or other persons responsible for the illegal conduct are not participating in the matter or sharing in any fee earned therefrom and that (ii) if the matter involves potential claims for personal injury or wrongful death, the matter was not obtained in violation of 22 NYCRR 1200.41-a.*

*Dated:*..............................          Signature ..................................................................................

                                               Print Signer's Name...............................................................

*Service of a copy of the within*                                          *is hereby admitted.*

*Dated:*

                                  ..................................................................................
                                          *Attorney(s) for*

---

*PLEASE TAKE NOTICE*

☐ **NOTICE OF ENTRY**
*that the within is a (certified) true copy of a*
*entered in the office of the clerk of the within-named Court on*                          20

☐ **NOTICE OF SETTLEMENT**
*that an Order of which the within is a true copy will be presented for settlement to the*
*Hon.*                                    *, one of the judges of the within-named Court,*
*at*
*on*                          20         *, at*          M.

*Dated:*

                                                              LAW OFFICES OF
                                                              **MICHAEL J. ASTA**

                                        *Attorney for*

                                                              450 SEVENTH AVENUE
*To:*                                                         SUITE 2205
                                                              NEW YORK, N.Y. 10123

*Attorney(s) for*

# SIMMONS, JANNACE & STAGG, L.L.P.

KEVIN P. SIMMONS
STEVEN D. JANNACE
THOMAS E. STAGG*◊
DEBRA LYNNE WABNIK*
DANIEL P. GREGORY*
ANDREW KAZIN
SAL F. DELUCAΔ

JASON W. CREECH
JACQUELINE DELLA CHIESA
KATHRYN FITZGERALD
MICHAEL D. KERNΔ
ALLISON C. LEIBOWITZ
ADAM M. LEVY
HALEY E. OLAMΔ
COREY J. PUGLIESE
ROBERT M. RACKLEY*
MARVIN N. ROMERO*
MICHELLE E. TARSON*

ATTORNEYS AT LAW
75 JACKSON AVENUE
SYOSSET, NEW YORK 11791-3139
(516) 357-8100
FAX (516) 357-8111

381 BROADWAY, SUITE 300
WESTWOOD, NEW JERSEY 07675

700 CANAL STREET
STAMFORD, CONNECTICUT 06902

COUNSEL

SUSAN B. JANNACE
ROSS M. CHINITZΔ
KRISTEN RENZULLI*

*ALSO ADMITTED NJ
ΔALSO ADMITTED CT
◊ALSO ADMITTED DC

May 5, 2008

**VIA FACSIMILE**

Michael J. Asta, Esq.
450 Seventh Avenue, Suite 2205
New York, New York 10123

      RE:  Thelma Felipe v. Target Corporation
           And Kingsbridge Associates, LLC
           D/L: 9/9/07
           Our File No.: TAR 5558

Dear Mr. Asta:

Please be advised that our office has been assigned the defense of Target Corporation in regards to the above-referenced matter.

Kindly be advised that it is our position that your claim against Kingsbridge Associates, LLC is without merit. Although Kingsbridge Associates, LLC is the owner of the property, it has no responsibilities in regards to the maintenance and operation of the inside of the Target store, where plaintiff's accident allegedly occurred. As a result of the foregoing, we hereby demand that your client immediately dismiss her complaint against Kingsbridge Associates, LLC.

In addition, kindly advise us whether your client will agree to cap her damages to $75,000 and avoid having this matter transferred to Federal Court. For your convenience, I have attached a stipulation capping your client's damages and

Michael J. Asta, Esq.
May 5, 2008
Page 2


allowing this matter to remain in the Supreme Court, County of
Bronx. Kindly provide us with a response as to whether your
client will discontinue her claim against Kingsbridge
Associates, LLC and agree to cap her damages to $75,000 no later
than **Tuesday, May 6, 2008.**

Please be advised that if a response has not been received
by May 6, 2008, we will have no alternative than to remove this
matter to Federal Court and request a finding that plaintiff's
claim against Kingsbridge Associates, LLC is frivolous, without
merit and asserted for the sole purpose of destroying diversity
jurisdiction.

Your cooperation and prompt attention will be appreciated.
I look forward to hearing from you soon.

Very truly yours,

Marvin N. Romero

MNR:mmr
Attachment

adv ltr 1.

**SUPREME COURT OF THE STATE OF NEW YORK**
**COUNTY OF BRONX**
----------------------------------------x
THELMA FELIPE,                                    **Index No.:  302329/08**

                    Plaintiff,

          -against-                               **STIPULATION**

TARGET CORPORATION and KINGSBRIDGE
ASSOCIATES, LLC,

                    Defendants.

----------------------------------------X

    **IT IS HEREBY STIPULATED AND AGREED**, by and between MICHAEL J. ASTA, ESQ., attorney for plaintiff THELMA FELIPE, and SIMMONS, JANNACE & STAGG, L.L.P., attorneys for defendant TARGET CORPORATION ("Target"), that the plaintiff's damages, including but not limited to, pain and suffering, personal injury, medical expenses, loss of earnings and/or any other special damages relating to the alleged accident of September 9, 2007, which forms the basis of this lawsuit, shall not exceed the sum of SEVENTY-FIVE THOUSAND DOLLARS ($75,000.00), and that plaintiff shall hold Target harmless from any and all liens, expenses, costs, fees or other obligations, concerning, associated with or relating to plaintiff's care and treatment, medical or otherwise, and any related damages, now known or unknown, existing currently, or which may arise in the future as a result of the claims arising from the above-captioned matter, and that any claim for damages contained in plaintiff's Complaint is hereby forever reduced to the sum of SEVENTY-FIVE THOUSAND DOLLARS ($75,000.00).

**IT IS HEREBY FURTHER STIPULATED AND AGREED**, that in exchange for the above, Target hereby consents to allowing this matter to remain in the Supreme Court of the State of New York, County of Bronx.

**IT IS HEREBY FURTHER STIPULATED AND AGREED**, a facsimile copy of this Stipulation shall be deemed an original.

Dated:    Syosset, New York
          May 5, 2008


**SIMMONS, JANNACE & STAGG, L.L.P.**    **LAW OFFICES OF MICHAEL J. ASTA**


BY:_____    BY:_____
       Marvin N. Romero                Michael J. Asta

Attorneys for Defendant           Attorneys for Plaintiff
TARGET CORPORATION                THELMA FELIPE
**Office & P.O. Address:**         **Office & P.O. Address:**
75 Jackson Avenue                 450 Seventh Avenue, Suite 2205
Syosset, New York 11791           New York, New York 10123
(516) 357-8100                    (212) 244-6555

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-----------------------------------X

THELMA FELIPE,

                        Plaintiff,

       -against-

TARGET CORPORATION and KINGSBRIDGE
ASSOCIATES, LLC,

                 Defendants.

-----------------------------------X

Civil Action No:
08 CIV 4317

Judges Assigned:
Holwell, J
Pitman, M

**AFFIDAVIT**

STATE OF NEW YORK   )
                    :ss.:
COUNTY OF NASSAU    )

    Marvin N. Romero, an attorney duly admitted to practice law in the Southern District of New York, being duly sworn states as follows:

    1.   I am an associate with the firm Simmons, Jannace & Stagg, L.L.P., attorneys for defendant TARGET CORPORATION ("TARGET"). As such, and upon review of the file maintained by this office, I am fully familiar with the facts and circumstances surrounding this case.

    2.   This Affidavit is submitted in Opposition to plaintiff's motion for remand. I respectfully submit that I personally attempted to contact plaintiff's counsel to discuss plaintiff's claims and inquire whether the damages sought exceeded $75,000. On May 2, 2008 I placed a call to plaintiff's

counsel and left a voicemail message detailing the basis for my call. Said phone call was not returned.

3. Having received no return phone call, a letter was sent to plaintiff's counsel indicating that Kingsbridge Associates, LLC was not a proper defendant in this action as it did not maintain or operate the interior of the Target store and a stipulation to cap plaintiff's damages at $75,000 was provided. (Simmons Aff., Ex. "B"). The proposed stipulation was not signed by plaintiff.

4. I called plaintiff's counsel again on May 6, 2008 to discuss the above-referenced letter and stipulation. I was transferred to voicemail and a message was left requesting a return call. Plaintiff's counsel failed to return my call or return an executed stipulation.

5. In light of plaintiff's refusal to sign the stipulation to cap her damages at $75,000 and counsel's failure to contact us to discuss plaintiff's claims, Target removed this matter from the Supreme Court, Bronx County to the Southern District Court pursuant to 28 U.S.C. § 1441 on May 7, 2008 (Simmons Aff., Ex. "D").

6. As indicated in the accompanying affidavits and memorandum of law, it is respectfully submitted that plaintiff's motion is without merit and it is respectfully requested that this Court deny plaintiff's motion in its entirety and grant

defendant such other and further relief as this Court deems just and proper.

Dated:      Syosset, New York
            June 20, 2008

Simmons, Jannace & Stagg, L.L.P.

BY: _____
        Marvin N. Romero (mr-7555)
Attorneys for Defendant
TARGET CORPORATION
**Office & P.O. Address:**
75 Jackson Avenue
Syosset, New York 11791
(516) 357-8100

Sworn to before me on this
20 day of June, 2008.

_____
**Notary Public**

MELISSA A. McGARRY
Notary Public, State of New York
No. 01MC6155688
Qualified in Nassau County
Commission Expires November 13, 20 10

3

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------X        Civil Action No.:
THELMA FELIPE,

                Plaintiff,        '08 CIV 4317

       -against-        **NOTICE OF REMOVAL**

TARGET CORPORATION and KINGSBRIDGE
ASSOCIATES, LLC.,        Bronx County
                             Index No.:
            Defendants-Petitioners.        302329/08
-----------------------------------------X

**TO THE HONORABLE JUDGES OF THE UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF NEW YORK:**

Defendant, TARGET CORPORATION ("Petitioner") by its attorneys, SIMMONS, JANNACE & STAGG, L.L.P., SAL F. DELUCA, ESQ., of counsel, upon information and belief, respectfully petitions the Court, pursuant to 28 U.S.C. § 1441, as follows:

1.    On or about March 21, 2008, the above-captioned civil action was commenced and is now pending in the Supreme Court of the State of New York, County of Bronx. A trial has not yet been had therein. A copy of the Summons and Complaint is annexed as **Exhibit "A"**. Petitioner has not yet served an Answer to plaintiff's Complaint.

2.    The action seeks monetary damages for personal injuries allegedly suffered by plaintiff, THELMA FELIPE, while she was inside a Target store. The plaintiff's complaint sounds in negligence.

RECEIVED
MAY 07 2008
U.S.D.C. S.D.N.Y.
CASHIERS

1

3.    The action involves a controversy between citizens of different states, in that: (a) Plaintiff is a citizen of the State of New York; and (b) Petitioner TARGET CORPORATION is now, and was at the time the action was commenced, a corporation incorporated in the State of Minnesota, with its principal place of business in the State of Minnesota.

4.    This action is one of which the District Courts of the United States have original jurisdiction under 28 U.S.C. § 1332. There is complete diversity between Petitioner and Plaintiff.

5.    Plaintiff also sued the owner of the premises Kingsbridge Associates, LLC, a New York Domestic Limited Liability Company.    However, upon information and belief, plaintiff did so solely in an effort to destroy diversity jurisdiction as Kingsbridge Associates, LLC is an absentee landlord, which did not operate or maintain the interior of the subject Target store where plaintiff's accident allegedly occurred.    See, Worth Distrs. v. Lathan, 59 N.Y.2d 231, 464 N.Y.S.2d 435, 451 N.E.2d 193 (1983).

6.    In addition, the amount in controversy exceeds $75,000.

7.    This Notice of Removal is being filed within thirty (30) days after receipt by Petitioner of Plaintiff's Complaint and a confirmation that the amount in controversy exceeds

2

$75,000.00.

8.    Written notice of the filing of this Notice of Removal will be given to plaintiff promptly after the filing of this Notice.

9.    A true and correct copy of this Notice of Removal will be filed with the Clerk of the Court of the Supreme Court of the State of New York, County of Bronx, promptly after the filing of this Notice.

10.    Attached to this Notice, and by reference made a part hereof, are true and correct copies of all process and pleadings filed herein.

11.    By filing this Notice of Removal, Petitioner does not waive any defense which may be available to it, specifically including, but not limited to, its right to contest *in personam* jurisdiction over Petitioner, improper service of process and the absence of venue in this Court or the Court from which this action has been removed.

**WHEREFORE**, Petitioner prays that the above-captioned action now pending in the Supreme Court in the State of New York, County of Bronx, be removed therefrom to this Court.

Dated:     Syosset, New York
           May 7, 2008

                              SIMMONS, JANNACE & STAGG, L.L.P.
                              Attorneys for Defendant-Petitioner
                              TARGET CORPORATION

                              By:_____
                                    Sal F. DeLuca  (sd-2354)
                              **Office & P.O. Address:**
                              75 Jackson Avenue
                              Syosset, New York 11791-3139
                              (516) 357-8100

TO:
MICHAEL J. ASTA, ESQ.
ASTA & ASSOCIATES, P.C.
Attorneys for Plaintiff
**Office & P.O. Address:**
450 Seventh Avenue, Suite 2205
New York, New York 10123
(212) 244-6555

Kingsbridge Associates, LLC
c/o Roy P. Kozupsky & Associates, LLP
Attn: William P. Walzer, Esq.
**Office & P.O. Address:**
10 E. 40th Street, Suite 1710
New York, New York 10016

4

## CERTIFICATE OF SERVICE

RE:        THELMA FELIPE v. TARGET CORPORATION and
           KINGSBRIDGE ASSOCIATES, LLC
           CIVIL ACTION NO.:  08 CIV 4317 (JH) (MP)
           J. Holwell/M. Pitman

STATE OF NEW YORK     )
                      : ss.:
COUNTY OF NASSAU      )

I, **MARGARET M. ROSE**, certify that I am, and at all times during the service of process was, not less than 18 years of age and not a party to the matter concerning which service of process was made.  I further certify that the service of this **NOTICE OF REMOVAL** was made on May 9, 2008 by:

❏     Mail service: Regular first class United States mail, postage fully pre-paid, addressed to:

       MICHAEL J. ASTA, ESQ.
       ASTA & ASSOCIATES, P.C.
       Attorneys for Plaintiff
       **Office & P.O. Address:**
       450 Seventh Avenue, Suite 2205
       New York, New York 10123
       (212) 244-6555

       Kingsbridge Associates, LLC
       c/o Roy P. Kozupsky & Associates, LLP
       Attn: William P. Walzer, Esq.
       **Office & P.O. Address:**
       10 E. 40th Street, Suite 1710
       New York, New York 10016

Under penalty of perjury, I declare that the foregoing is true and correct.

_Margaret M. Rose_
MARGARET M. ROSE

Sworn to before me this
9th day of May, 2008.

_Melissa A. McGarry_
NOTARY PUBLIC

MELISSA A. McGARRY
Notary Public, State of New York
No. 01MC6155668
Qualified in Nassau County
Commission Expires November 13, 20 10

SIMMONS, JANNACE & STAGG, L.L.P.
75 Jackson Avenue
Syosset, New York 11791-3139
(516) 357-8100

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-----------------------------------X
THELMA FELIPE,

|                                         |                              |
|-----------------------------------------|------------------------------|
|                     Plaintiff,          | Civil Action No: 08 CIV 4317 |
|            -against-                     | Judges Assigned: Holwell, J Pitman, M |
| TARGET CORPORATION and KINGSBRIDGE ASSOCIATES, LLC, | |
|                  Defendants.            | **ANSWER**                   |

-----------------------------------X


Defendant, TARGET CORPORATION, by its attorneys, SIMMONS, JANNACE & STAGG, L.L.P., as and for its Answer to the Complaint of plaintiff, responds as follows:

1.    Denies knowledge or information sufficient to form a belief as to the truth of the allegations contained in numbered paragraph "1" of the verified complaint.

2.    Admits the allegations contained in numbered paragraph "2" of the verified complaint.

3.    Denies the allegations contained in numbered paragraph "3" of the verified complaint.

4.    Denies knowledge or information sufficient to form a belief as to the truth of the allegations contained in numbered paragraph "5" of the verified complaint.

5.    Denies in the form alleged the allegations contained in numbered paragraph "6" of the verified complaint and leaves all questions of law to the Court.

6.    Denies knowledge or information sufficient to form a belief as to the truth of the allegations contained in numbered paragraph "7" of the verified complaint.

7.    Denies knowledge or information sufficient to form a belief as to the truth of the allegations contained in numbered paragraph "8" of the verified complaint.

8.    Denies knowledge or information sufficient to form a belief as to the truth of the allegations contained in numbered paragraph "8" (SIC) of the verified complaint.

9.    Denies the allegations contained in numbered paragraph "9" of the verified complaint.

10.    Denies the allegations contained in numbered paragraph "10" of the verified complaint.

11.    Admits the allegations contained in numbered paragraph "11" of the verified complaint.

12.    Denies in the form alleged the allegations contained in numbered paragraph "12" of the verified complaint and leaves all questions of law to the Court.

13.    Denies in the form alleged the allegations contained in numbered paragraph "13" of the verified complaint and leaves all questions of law to the Court.

2

14.   Denies in the form alleged the allegations contained in numbered paragraph "14" of the verified complaint and leaves all questions of law to the Court.

15.   Denies in the form alleged the allegations contained in numbered paragraph "15" of the verified complaint and leaves all questions of law to the Court.

16.   Denies in the form alleged the allegations contained in numbered paragraph "16" of the verified complaint and leaves all questions of law to the Court.

17.   Denies in the form alleged the allegations contained in numbered paragraph "17" of the verified complaint and leaves all questions of law to the Court.

18.   Denies in the form alleged the allegations contained in numbered paragraph "18" of the verified complaint and leaves all questions of law to the Court.

19.   Denies in the form alleged the allegations contained in numbered paragraph "19" of the verified complaint and leaves all questions of law to the Court.

20.   Denies knowledge or information sufficient to form a belief as to the truth of the allegations contained in numbered paragraph "20" of the verified complaint.

21.   Denies knowledge or information sufficient to form a belief as to the truth of the allegations contained in numbered paragraph "21" of the verified complaint.

22.  Denies the allegations contained in numbered paragraph "22" of the verified complaint.

23.  Denies the allegations contained in numbered paragraph "23" of the verified complaint.

24.  Denies the allegations contained in numbered paragraph "24" of the verified complaint.

25.  Denies the allegations contained in numbered paragraph "25" of the verified complaint.

26.  Denies the allegations contained in numbered paragraph "26" of the verified complaint.

27.  Denies the allegations contained in numbered paragraph "27" of the verified complaint.

28.  Denies the allegations contained in numbered paragraph "28" of the verified complaint.

29.  Denies the allegations contained in numbered paragraph "29" of the verified complaint.

30.  Denies the allegations contained in numbered paragraph "30" of the verified complaint.

31.  Denies the allegations contained in numbered paragraph "31" of the verified complaint.

32.  Denies plaintiff is entitled to the relief requested in the "WHEREFORE Clause."

33.  Defendant demands that liability, if any, be apportioned.

4

### AS AND FOR ITS FIRST AFFIRMATIVE DEFENSE

34.  Plaintiff's complaint fails to state a cause of action.

### AS AND FOR ITS SECOND AFFIRMATIVE DEFENSE

35.  Upon information and belief, the injuries allegedly sustained by plaintiff were not as a result of any culpable conduct by the defendant herein, or in the alternative, the amount of damages otherwise recoverable shall be diminished in the percentage proportion of the culpable conduct of plaintiff, which contributed to or caused plaintiff's alleged injury.

### AS AND FOR ITS THIRD AFFIRMATIVE DEFENSE

36.  Upon information and belief, plaintiff has not effectuated valid service, pursuant to the CPLR, and therefore, this Court lacks jurisdiction over the person of the defendant.

### AS AND FOR ITS FOURTH AFFIRMATIVE DEFENSE

37.  Upon information and belief, any damages sustained by plaintiff were caused, in whole or in part, by the culpable conduct of plaintiff and/or were aggravated by the culpable conduct of plaintiff.

### AS AND FOR ITS FIFTH AFFIRMATIVE DEFENSE

38.  If plaintiff proves at trial the existence of a dangerous condition, all of which is denied, upon information and belief, any damages sustained by plaintiff were caused by plaintiff having voluntarily and unreasonably assumed a known

5

and dangerous risk, and/or the damages were caused by or aggravated by such conduct.

## AS AND FOR ITS SIXTH AFFIRMATIVE DEFENSE

39. This defendant will rely upon the provisions of Article 16 of the CPLR with regard to the limitation of joint and several liability.

## AS AND FOR ITS SEVENTH AFFIRMATIVE DEFENSE

40. Upon information and belief, defendant never received actual or constructive notice of any defective or dangerous condition, and therefore, it cannot be liable for any alleged injuries suffered by plaintiff.

## AS AND FOR ITS EIGHTH AFFIRMATIVE DEFENSE

41. Upon information and belief, if plaintiff suffered any damages as alleged in the Verified Complaint, such damages were as a result of an independent superseding act by a third party for which defendant cannot be held liable, and defendant's conduct was in no way the proximate cause of such damages.

## AS AND FOR ITS NINTH AFFIRMATIVE DEFENSE

42. If plaintiff suffered damages as alleged, then plaintiff failed to mitigate such damages.

## AS AND FOR ITS TENTH AFFIRMATIVE DEFENSE

43. If plaintiff herein has received remuneration and/or compensation for some or all of his or her claimed economic loss, or will with reasonable certainty receive renumeration

and/or compensation for said loss in the future, this defendant is entitled to have plaintiff's award, if any, reduced by the amount of said remuneration and/or compensation, pursuant to Section 4545(c) of the CPLR.

## AS AND FOR ITS ELEVENTH AFFIRMATIVE DEFENSE

44. Upon information and belief, any damages sustained by the plaintiff were caused, in whole or in part, by an unavoidable accident, which was not intended and could not have been foreseen or prevented by the exercise of reasonable care.

**WHEREFORE**, for all of the foregoing reasons, it is respectfully requested that plaintiff's verified complaint be dismissed in its entirety, and that defendant be awarded the costs and disbursements of this action, reasonable attorneys fees, and such other and further relief as this Court may deem just and proper.

Dated:   Syosset, New York
         May 12, 2008

                         Simmons, Jannace & Stagg, L.L.P.


                         BY: _____
                             Kevin P. Simmons (ks-7818)

                         Attorneys for Defendant
                         TARGET CORPORATION
                         **Office & P.O. Address:**
                         75 Jackson Avenue
                         Syosset, New York   11791
                         (516) 357-8100

TO:
MICHAEL J. ASTA, ESQ.
ASTA & ASSOCIATES, P.C.
Attorneys for Plaintiff
**Office & P.O. Address:**
450 Seventh Avenue, Suite 2205
New York, New York 10123
(212) 244-6555

Kingsbridge Associates, LLC
c/o Roy P. Kozupsky & Associates, LLP
Attn: William P. Walzer, Esq.
**Office & P.O. Address:**
10 E. 40th Street, Suite 1710
New York, New York 10016

## CERTIFICATE OF SERVICE

RE:      **THELMA FELIPE v. TARGET CORPORATION and KINGSBRIDGE ASSOCIATES, LLC**
               **CIVIL ACTION NO.:  08 CIV 4317 (JH)  (MP)**
               **J. Holwell/M. Pitman**

STATE OF NEW YORK   )
                    : ss.:
COUNTY OF NASSAU    )

I, **MARGARET M. ROSE**, certify that I am, and at all times during the service of process was, not less than 18 years of age and not a party to the matter concerning which service of process was made.  I further certify that the service of this **ANSWER** was made on May 13, 2008 by:

❑    Mail service: Regular first class United States mail, postage fully pre-paid, addressed to:

    MICHAEL J. ASTA, ESQ.
    ASTA & ASSOCIATES, P.C.
    Attorneys for Plaintiff
    **Office & P.O. Address:**
    450 Seventh Avenue, Suite 2205
    New York, New York 10123
    (212) 244-6555

    Kingsbridge Associates, LLC
    c/o Roy P. Kozupsky & Associates, LLP
    Attn: William P. Walzer, Esq.
    **Office & P.O. Address:**
    10 E. 40th Street, Suite 1710
    New York, New York 10016

Under penalty of perjury, I declare that the foregoing is true and correct.

MARGARET M. ROSE

Sworn to before me this
13th day of May, 2008.

_____
NOTARY PUBLIC

JOSEPHINE RISELVATO
Notary Public, State of New York
No. 01RI6169418
Qualified in Suffolk County
Commission Expires June 25, 20 11

SIMMONS, JANNACE & STAGG, L.L.P.
75 Jackson Avenue
Syosset, New York 11791-3139
(516) 357-8100

3465 2145    (5)

# CITY REGISTER RECORDING AND ENDORSEMENT PAGE

**COUNTY OF ▶** NEW YORK

THIS PAGE FORMS PART OF THE INSTRUMENT

TOTAL NUMBER OF
PAGES IN DOCUMENT
**INCLUDING** THIS PAGE ▶  8|

| Block ▼ 2215 | Lots - ONLY IF ENTIRE LOT ▼ 654, 657, 665, 671, 700, 715 | Partial Lots ▼ P/O |
|---|---|---|

Premises ▼ See ATTACHED
68-78 West 225th Street

Title/Agent Company Name ▼
FIRST AMERICAN TITLE INS G

Title Company Number ▼
NY 0000 5187 NY NY

RECORD &
RETURN TO◀

NAME ▼ PROSKAUER ROSE LLP
ADDRESS ▼ ATT R SLAMAN, ESQ.
1585 BROADWAY
CITY ▼ NEW YORK    STATE ▼ NY    ZIP ▼ 10036

PARTY 1 ▶ TARGET CORPORATION
ADDITIONAL PARTY 1 ▶ 1000 NICOLLET MALL TPN-12E, MINN. MINNESOTA 55403

PARTY 2 ▶ KINGSBRIDGE ASSOCIATES, LLC
ADDITIONAL PARTY 2 ▶ 99 POWER HOUSE Rd, Roslyn Hgts NY 11577

CHECK THIS BOX IF THERE ARE MORE THAN 2 OF EITHER PARTY ☐

**CITY REGISTER'S USE ONLY • DO NOT WRITE BELOW THIS LINE**

Examined by (✍):

Mtge Tax Serial No..

Mtge Amount _____ $

Taxable Amount _____ $

Exemption (✓) _____ YES ☐    NO ☐

Type: CIRCLE ONE ▶ 339EE | 255 | OTHER _____

Dwelling Type: 1 to 2 | 3 | 4 to 6 | OVER 6
CIRCLE ONE ▶

**TAX RECEIVED ON ABOVE MORTGAGE ▼**

| County (basic) | $ |
|---|---|
| City (Add'l) | $ |
| Spec Add'l | $ |
| TASF | $ |
| MTA | $ |
| NYCTA | $ |
| **TOTAL TAX** | $ |

Apportionment Mortgage (✓) YES ☐  NO ☐

City Register
Serial Number ▶ 01146|

Indexed By (✍): LL    Verified By (✍): JMB

Block(s) and Lot(s) verified by (✓):
Address _____    Tax Map _____ ☐
Extra Block(s) _____    Lot(s) 5 _____

Recording Fee _____ (R) $ 437
Affidavit Fee _____ (C) $
RPTT Fee _____ (R) $ 25
HPD-A _____ ☐    HPD-C _____ ☐

New York State Real Estate Transfer Tax ▼
$ 0
Serial Number ▶ 005503

New York City Real
Property Transfer Tax
Serial Number ▶ R 1811

RECORDED IN THE OFFICE OF THE CITY REGISTER
OF THE CITY OF NEW YORK .

2002 MAR -7 P 2:06

OEA
NEW YORK

CRGFM89N.BPG  04/00

45 - H - 002

| New York County Tax Block and Lot | Address |
| --- | --- |
| Block 2215, lot 715 | 56-58 West 225th Street |
| Block 2215, lot 654 | 68-78 West 225th Street |
| Block 2215, lot 657 | 84-90 West 225th Street |
| Block 2215, lot 665 | 94-100 West 225th Street |
| Block 2215, lot 671 | 80 West 225th Street |

OPERATION AND EASEMENT AGREEMENT

between

TARGET CORPORATION

and

KINGSBRIDGE ASSOCIATES, LLC

-------------------------------------------------

February 5, 2002

-------------------------------------------------

Block 3245, Lot 51 (Bronx County)
Block 2215, Lot 654 (New York County)
Block 2215, Lot 657 (New York County)
Block 2215, Lot 665 (New York County)
Block 2215, Lot 671 (New York County)
Block 2215, Lot 700 (New York County)
Block 2215, Lot 715 (New York County)

RECORD AND RETURN TO:

Proskauer Rose LLP
1585 Broadway
New York, New York 10036
Attn: Ronald D. Sernau, Esq.

Table of Contents

1. Certain Definitions. ........................................................................................................2
   1.1. Additional Parcel. .................................................................................................2
   1.2. Additional Parcel Conveyance Date. .....................................................................2
   1.3. Adjacent Common Area Improvements. .................................................................2
   1.4. Affiliate. ...............................................................................................................2
   1.5. Approving Party ....................................................................................................2
   1.6. Building. ...............................................................................................................3
   1.7. Building Area .........................................................................................................3
   1.8. Common Area. ......................................................................................................3
   1.9. Constant Dollars. ...................................................................................................3
   1.10. Construction Company. .........................................................................................4
   1.11. Control. ................................................................................................................4
   1.12. Expedited Arbitration Proceeding. .........................................................................4
   1.13. Floor Area ............................................................................................................5
   1.14. Governmental Authorities. ....................................................................................5
   1.15. Governmental Requirements. ................................................................................5
   1.16. Indemnitees. .........................................................................................................5
   1.17. Kingsbridge Parcel A. ..........................................................................................5
   1.18. Kingsbridge Parcel. ..............................................................................................6
   1.19. Kingsbridge Parcel Owner. ...................................................................................6
   1.20. Kingsbridge Site. ..................................................................................................6
   1.21. Kingsbridge Site Owner. .......................................................................................6
   1.22. Mortgagee. ...........................................................................................................6
   1.23. New Parking Facility. ............................................................................................6
   1.24. New Target Building. .............................................................................................6
   1.25. Occupant. .............................................................................................................7
   1.26. Operator. ..............................................................................................................7
   1.27. Parcel. ..................................................................................................................7
   1.28. Party. ...................................................................................................................8
   1.29. Permittee. .............................................................................................................8
   1.30. Person. .................................................................................................................8
   1.31. Plans. ...................................................................................................................8
   1.32. Primary Floor Area. ..............................................................................................8
   1.33. Project ..................................................................................................................8
   1.34. Restaurant. ...........................................................................................................8
   1.35. Substantial Completion. .........................................................................................9
   1.36. Taxes. ..................................................................................................................9
   1.37. Target Parcel. .......................................................................................................9
   1.38. Target Parcel Owner. ............................................................................................9
   1.39. Utility Lines. ..........................................................................................................9
   1.40. Zoning Documents. ...............................................................................................9
2. Pre-Development Easements. .........................................................................................9

2.1. The Additional Parcel Easement. ..................................................................9
   (A) Grant of the Additional Parcel Easement to the Initial Target Parcel Owner. ................9
   (B) Limitations on the Additional Parcel Easement. ..........................................10
3. Post-Development Easements. ......................................................................10
  3.1. Access and Parking Easements. ...............................................................10
   (A) Reciprocal Easements for the Term. ...........................................................10
   (B) Driveway Easements that Extends Beyond the Term. .....................................11
   (C) Parking Easement for the Kingsbridge Site that Extends Beyond the Term. ................11
   (D) Air and Light Easement for the Kingsbridge Site. ...........................................12
  3.2. Utility Easements. ........................................................................12
   (A) In General. ...............................................................................12
   (B) Separate Utility Lines. ....................................................................13
   (C) Common Utility Lines. .....................................................................13
   (D) Surface Water. ...........................................................................14
   (E) Default. .................................................................................14
   (F) Relocation of Utility Lines. .................................................................15
  3.3. Easements for Construction, Maintenance and Reconstruction. ...........................15
   (A) Reciprocal Easements for Minor Building Encroachments. ...............................15
   (B) Subsurface Construction Elements .........................................................15
   (C) Duration. ................................................................................16
   (D) No Party Wall Rights; No Support Easement. ..............................................16
  3.4. Reciprocal Sign Easements. ................................................................17
   (A) Sign Easement for the Target Parcel Owner. ...............................................17
   (B) Sign Easement for the Kingsbridge Parcel Owner. ........................................17
   (C) Pylon Sign on the Western Parcel. .........................................................18
  3.5. Easements not to Benefit Other Property. ...................................................19
4. Construction. ....................................................................................19
  4.1. General Requirements. .....................................................................19
   (A) Performance of Construction. ..............................................................19
   (B) Indemnity. ...............................................................................19
   (C) Temporary Staging and Storage. ..........................................................19
   (D) License. .................................................................................20
  4.2. Common Area. .............................................................................20
   (A) Initial Construction of the Common Area. ..................................................20
   (B) Construction Beyond the Primary Floor Area. .............................................21
   (C) Parking Requirements for Special Uses. ...................................................21
   (D) Changes to the Common Area. ............................................................22
   (E) Billboards. ...............................................................................23
  4.3. Buildings. .................................................................................23
   (A) Building Areas. ...........................................................................23
   (B) Common Boundary Lines. .................................................................23
   (C) Height. ..................................................................................24
  4.4. Liens. ....................................................................................24
5. Maintenance and Repair. ..........................................................................25
  5.1. Utility Lines. ..............................................................................25



5.2. Common Area.............................................................................................25
  (A) Scope of Maintenance Obligations............................................................25
  (B) Management by the Operator.....................................................................27
  (C) Budget.....................................................................................................28
  (D) Allocation of Common Area Maintenance Costs and the Administration Fee. ...........29
  (E) Liens.......................................................................................................31
  (F) Casualty to the Common Area....................................................................31
5.3. Building Maintenance and Restoration..........................................................31
  (A) Maintenance. ...........................................................................................31
  (B) Casualty. .................................................................................................32
6. Operation of the Site. .....................................................................................32
6.1. Uses. .......................................................................................................32
  (A) In General. ..............................................................................................32
  (B) Limitations for the Kingsbridge Parcel and the Target Parcel.........................32
  (C) Limitations for the Western Parcel. ...........................................................34
  (D) Hazardous Materials.................................................................................34
  (E) Common Area..........................................................................................35
  (F) Site Name.................................................................................................35
  (G) No Operating Covenants. ..........................................................................35
6.2. Lighting.....................................................................................................35
  (A) In General. ..............................................................................................35
  (B) Overtime Lighting.....................................................................................36
6.3. Signs.........................................................................................................36
  (A) General Limitations. .................................................................................36
  (B) Temporary Leasing and Contractor's Signs.................................................37
  (C) Other Temporary Signs..............................................................................37
6.4. Insurance ..................................................................................................37
  (A) Insurance to be Obtained by the Operator. .................................................37
  (B) Insurance to be Obtained by the Parties......................................................38
  (C) Insurance for Construction. .......................................................................39
  (D) Property Insurance....................................................................................41
  (E) General Insurance Requirements. ...............................................................41
6.5. Taxes and Assessments...............................................................................42
7. Additional Provisions. ....................................................................................43
7.1. Default......................................................................................................43
  (A) In General. ..............................................................................................43
  (B) Self-Help Remedy....................................................................................43
  (C) Lien. .......................................................................................................44
  (D) Other Remedies. ......................................................................................44
7.2. Interest......................................................................................................45
7.3. Estoppel Certificate.....................................................................................45
7.4. Approval Rights..........................................................................................46
  (A) Sole Discretion. .......................................................................................46
  (B) Response Period. ......................................................................................46
  (C) Approving Parties.....................................................................................46



7.5. Condemnation ...................................................................................................46
7.6. Mortgagee Protections. .....................................................................................47
7.7. Notices. ..............................................................................................................47
7.8. Binding Effect ....................................................................................................48
7.9. Construction and Interpretation .......................................................................48
   (A) Merger. ..............................................................................................................48
   (B) Usage. ...............................................................................................................48
   (C) Captions. ...........................................................................................................49
   (D) Partial Invalidity. ..............................................................................................49
   (E) Amendments .....................................................................................................49
   (F) Counterparts. ...................................................................................................49
7.10. Negation of Partnership ..................................................................................49
7.11. Not a Public Dedication ..................................................................................50
7.12. Excusable Delays ............................................................................................50
7.13. OEA Shall Continue Notwithstanding Breach.................................................50
7.14. Time ..................................................................................................................50
7.15. No Waiver.........................................................................................................50
7.16. Governing Law. ...............................................................................................51
7.17. Authority. .........................................................................................................51
   (A) Target's Authority. ...........................................................................................51
   (B) Kingsbridge's Authority. ..................................................................................51
7.18. Subordination of Other Interests to this OEA.................................................52
8. Term.........................................................................................................................52
9. Exculpation. .............................................................................................................52

EXHIBITS

Exhibit "A"    Initial Target Parcel
Exhibit "B"    Initial Kingsbridge Parcel
Exhibit "C"    Western Parcel
Exhibit "D"    Site Plan
Exhibit "E"    Additional Parcel Area

Index of Defined Terms

Additional Parcel ............................................................................................................ 2
Additional Parcel Area ................................................................................................... 9
Additional Parcel Conveyance Date ............................................................................. 2
Additional Parcel Easement ......................................................................................... 10
Adjacent Common Area Improvements ........................................................................ 2
Adjacent Party .............................................................................................................. 16
Administration Fee ....................................................................................................... 28
Affiliate .......................................................................................................................... 2
Approving Party ............................................................................................................. 2
Base Index Number ....................................................................................................... 3
Budget ........................................................................................................................... 28
Building .......................................................................................................................... 3
Building Area ................................................................................................................. 3
Common Area ................................................................................................................. 3
Common Area Maintenance Costs ............................................................................... 27
Common Driveway ....................................................................................................... 11
Common Utility Lines .................................................................................................... 9
Constant Dollars ........................................................................................................... 3
Constructing Party ....................................................................................................... 15
Construction Company ................................................................................................. 4
Control ........................................................................................................................... 4
Cooperating Parties ..................................................................................................... 13
Current Index Number ................................................................................................... 3
Defaulting Party ........................................................................................................... 43
Development Agreement ................................................................................................ 1
Environmental Laws .................................................................................................... 35
Expedited Arbitration Proceeding ................................................................................ 4
Floor Area ...................................................................................................................... 5
Governmental Authorities ............................................................................................ 5
Governmental Requirements ......................................................................................... 5
Hazardous Materials .................................................................................................... 35
Hospital .......................................................................................................................... 1
Indemnitees .................................................................................................................... 5
Index .............................................................................................................................. 3
Initial Kingsbridge Parcel ............................................................................................ 1
Initial Kingsbridge Parcel Deed ................................................................................... 1
Initial Kingsbridge Parcel Owner ................................................................................. 1
Initial Target Parcel ...................................................................................................... 1
Initial Target Parcel Deed ............................................................................................. 1
Initial Target Parcel Owner .......................................................................................... 1
Interest .......................................................................................................................... 45
Kingsbridge .................................................................................................................... 1
Kingsbridge Panels ...................................................................................................... 17

Kingsbridge Parcel ............................................................................................ 6
Kingsbridge Parcel A ........................................................................................ 5
Kingsbridge Parcel Owner ................................................................................ 6
Kingsbridge Parking Spaces ............................................................................ 12
Kingsbridge Sign Area .................................................................................... 18
Kingsbridge Site ................................................................................................ 6
Kingsbridge Site Owner .................................................................................... 6
Mortgagee .......................................................................................................... 6
New Parking Facility .......................................................................................... 6
New Target Building .......................................................................................... 6
Non-Defaulting Party ...................................................................................... 43
Occupant ............................................................................................................ 6
OEA .................................................................................................................... 1
Operator ............................................................................................................ 7
Parcel .................................................................................................................. 7
Party .................................................................................................................... 7
Permittee ............................................................................................................ 8
Person ................................................................................................................ 8
Plans .................................................................................................................... 8
Primary Floor Area .......................................................................................... 8
Prime Rate ........................................................................................................ 45
Project ................................................................................................................ 8
Reconciliation .................................................................................................. 30
Released Party .................................................................................................. 41
Releasing Party ................................................................................................ 41
Requesting Party .............................................................................................. 36
Restaurant .......................................................................................................... 8
Separate Utility Lines ...................................................................................... 9
Site ...................................................................................................................... 1
Site Plan ............................................................................................................ 1
Substantial Completion .................................................................................... 8
Subsurface Construction Elements ................................................................ 16
Target .................................................................................................................. 1
Target Panels .................................................................................................... 17
Target Parcel ...................................................................................................... 9
Target Parcel Owner ........................................................................................ 9
Target Sign Area .............................................................................................. 17
Taxes .................................................................................................................. 9
Term .................................................................................................................. 52
Utility Lines ...................................................................................................... 9
Western Parcel .................................................................................................. 1
Western Parcel Owner ...................................................................................... 1
Zoning Documents ............................................................................................ 9

THIS OPERATION AND EASEMENT AGREEMENT (this "OEA"), dated as of the 5th day of February, 2002, between TARGET CORPORATION, a Minnesota corporation, having an office at 1000 Nicollet Mall TPN-12E, Minneapolis, Minnesota 55403 ("Target") and KINGSBRIDGE ASSOCIATES, LLC, a New York limited liability company, having an office at 99 Powerhouse Road, Suite 102, Roslyn Heights, New York 11577 ("Kingsbridge").

## W I T N E S S E T H :

WHEREAS, by deed (the "Initial Target Parcel Deed"), dated as of the date hereof, made by The New York And Presbyterian Hospital (the "Hospital"), as grantor, to Target, as grantee, Target is the owner of the fee interest in the real property described in Exhibit "A" attached hereto and made a part hereof (the "Initial Target Parcel"; Target, in its capacity as the owner of the fee interest in the Initial Target Parcel, being referred to herein as the "Initial Target Parcel Owner"); and

WHEREAS, by deed (the "Initial Kingsbridge Parcel Deed"), dated as of January 7, 2002, made by Patricia Broadbelt, Esq., as Referee duly appointed pursuant to Foreclosure Action No. 19035/90 in Supreme Court, New York County, as grantor, to Kingsbridge, as grantee, Kingsbridge is the owner of the fee interest in the real property described in Exhibit "B" attached hereto and made a part hereof (the "Initial Kingsbridge Parcel"; Kingsbridge, in its capacity as the owner of the fee interest in the Initial Kingsbridge Parcel, being referred to herein as the "Initial Kingsbridge Parcel Owner"); and

WHEREAS, Kingsbridge is also the owner of the fee interest in the real property described in Exhibit "C" attached hereto and made a part hereof (the "Western Parcel"; Kingsbridge, in its capacity as the owner of the fee interest in the Western Parcel, being referred to herein as the "Western Parcel Owner"; the Initial Target Parcel, the Initial Kingsbridge Parcel, and the Western Parcel being collectively referred to herein as the "Site"); and

WHEREAS, the Site is shown pictorially on the site plan attached hereto as Exhibit "D" and made a part hereof (the "Site Plan"); and

WHEREAS, the parties intend that the Initial Target Parcel Deed and the Initial Kingsbridge Parcel Deed will be recorded in the appropriate office of the Register of The City of New York prior to the recording hereof; and

WHEREAS, pursuant to a Development Agreement (the "Development Agreement"), dated as of the date hereof, between Target and Kingsbridge, the parties have provided for (i) the joint maintenance of the improvements that currently exist on the Initial Target Parcel, and (ii) the joint development of the Site, in either case on the terms and subject to the conditions set forth therein; and

WHEREAS, the parties intend that the Development Agreement (or a memorandum thereof, to the extent permitted by the Real Property Law of the State of New York) will be recorded in the appropriate office of the Register of The City of New York immediately prior to the recording hereof; and

WHEREAS, Target agrees to grant to Kingsbridge certain rights and easements in, to and over the Initial Target Parcel, on the terms and subject to the conditions set forth herein; and

WHEREAS, Kingsbridge agrees to grant to Target certain rights and easements in, to and over the Kingsbridge Parcel and the Western Parcel, on the terms and subject to the conditions set forth herein; and

WHEREAS, Target and Kingsbridge desire to provide for the joint operation of the common area during the period from and after the date that the joint development of the Site as contemplated by the Development Agreement is Substantially Completed, on the terms and subject to the conditions set forth herein.

NOW, THEREFORE, in consideration of the premises and other good and valuable consideration, the mutual receipt and legal sufficiency of which the parties hereto hereby acknowledge, Target and Kingsbridge hereby agree as follows:

1. Certain Definitions.

1.1. Additional Parcel.

"Additional Parcel" shall have the meaning set forth in the Development Agreement.

1.2. Additional Parcel Conveyance Date.

"Additional Parcel Conveyance Date" shall have the meaning set forth in the Development Agreement.

1.3. Adjacent Common Area Improvements.

"Adjacent Common Area Improvements" mean the common area improvements being constructed on the Site pursuant to the Development Agreement (other than the New Parking Facility).

1.4. Affiliate.

"Affiliate" shall mean any Person that Controls, is Controlled by, or is under common Control with, the Person in question.

1.5. Approving Party

"Approving Party" shall mean the Party designated from time to time to make certain decisions and/or give certain approvals pursuant to the terms of this OEA. There shall be one (1) Approving Party representing the Target Parcel and one (1) Approving Party representing the Kingsbridge Site. Each Approving Party shall make the decisions and/or give the approvals expressly designated to be made and/or given on behalf of the real estate represented by such

2

position regardless of whether the Approving Party then owns all or less than all of the Target Parcel or the Kingsbridge Site, as the case may be. The Party designated as Approving Party for the Kingsbridge Site shall have the right to assign such status to any other Party owning a Parcel within the Kingsbridge Site; provided, however, if such assignment is not made in writing, then the status of Approving Party for the Kingsbridge Site shall automatically be deemed assigned to the Party acquiring the last portion of the Kingsbridge Site that is owned by the Party then holding the status of Approving Party for the Kingsbridge Site. The Party designated as Approving Party for the Target Parcel shall have the right to assign such status to any other Party owning a Parcel within the Target Parcel; provided, however, if such assignment is not made in writing, then the status of Approving Party for the Target Parcel shall automatically be deemed assigned to the Party acquiring the last portion of the Target Parcel owned by the Party then holding the status of Approving Party for the Target Parcel. Kingsbridge shall be the initial Approving Party for the Kingsbridge Site and Target shall be the initial Approving Party for the Target Parcel.

### 1.6. Building

"Building" shall mean any permanently enclosed structure placed, constructed or located on a Parcel, which for the purpose of this OEA shall include any building appurtenances such as stairs leading to or from a door, transformers, trash containers or compactors, canopies, supports, loading docks, truck ramps, and other outward extensions of such structure.

### 1.7. Building Area

"Building Area" shall mean the limited areas of the Site within which Buildings may be constructed, placed or located during the Term. Building Areas are designated on the Site Plan. One or more Buildings may be located within a Building Area. Nothing contained in the definition of Building Area limits the Floor Area of a Building in the Building Area.

### 1.8. Common Area

"Common Area" shall mean (i) all areas within the exterior boundaries of the Site (other than the portions of the Site where Buildings are located), and (ii) the New Parking Facility (as the New Parking Facility may be altered or replaced from time to time in accordance with the terms hereof).

### 1.9. Constant Dollars.

"Constant Dollars" shall mean the value of the U.S. dollar to which such phrase refers, as adjusted from time to time. An adjustment shall occur on the 1st day of June of the sixth (6th) full calendar year following the date hereof and thereafter at five (5) year intervals. Constant Dollars shall be determined by multiplying the dollar amount to be adjusted by a fraction, the numerator of which is the Current Index Number and the denominator of which is the Base Index Number. The "Base Index Number" shall be the level of the Index for the year during which this OEA is executed and delivered; the "Current Index Number" shall be the level of the Index for the year preceding the adjustment year; the "Index" shall be the Consumer Price

Index for All Urban Consumers, published by the Bureau of Labor Statistics of the United States Department of Labor for U.S. City Average, All Items (1982-84=100), or any successor index thereto as hereinafter provided. If publication of the Index is discontinued, or if the basis of calculating the Index is materially changed, then the Approving Parties shall substitute for the Index comparable statistics as computed by an agency of the United States Government or, if none, by a substantial and responsible periodical or publication of recognized authority most closely approximating the result which would have been achieved by the Index.

1.10. Construction Company.

"Construction Company" shall have the meaning set forth in the Development Agreement.

1.11. Control.

"Control" shall mean direct or indirect ownership of more than fifty percent (50%) of the outstanding voting stock of a Person that is a corporation or of the majority equity interest in a Person that is not a corporation.

1.12. Expedited Arbitration Proceeding.

"Expedited Arbitration Proceeding" shall mean a binding arbitration proceeding conducted in The City of New York under the Commercial Arbitration Rules of the American Arbitration Association (or its successor) and administered pursuant to the Expedited Procedures provisions thereof; provided, however, that with respect to any such arbitration, (i) the list of arbitrators referred to in Section E-5(b) shall be returned within five (5) business days from the date of mailing; (ii) the parties shall notify the American Arbitration Association (or its successor) by telephone, within four (4) business days, of any objections to the arbitrator appointed and, subject to clause (vii) below, shall have no right to object if the arbitrator so appointed was on the list submitted by the American Arbitration Association (or its successor) and was not objected to in accordance with Section E-5(b) as modified by clause (i) above; (iii) the notification of the hearing referred to in Section E-8 shall be four (4) business days in advance of the hearing; (iv) the hearing shall be held within seven (7) business days after the appointment of the arbitrator; (v) the arbitrator shall have no right to award damages or vary, modify or waive any provision of this OEA; (vi) the decision of the arbitrator shall be final and binding on the parties; and (vii) the arbitrator shall not have been employed by either party (or their respective affiliates) during the period of three (3) years prior to the date of the Expedited Arbitration Proceeding. The arbitrator shall determine the extent to which each party is successful in such Expedited Arbitration Proceeding in addition to rendering a decision on the dispute submitted. If the arbitrator determines that one (1) party is entirely unsuccessful, then such party shall pay all of the fees of such arbitrator. If the arbitrator determines that both parties are partially successful, then each party shall be responsible for such arbitrator's fees only to the extent such party is unsuccessful (e.g., if Target is eighty percent (80%) successful and Kingsbridge is twenty percent (20%) successful, then Target shall be responsible for twenty percent (20%) of such arbitrator's fees and Kingsbridge shall be responsible for eighty percent (80%) of such arbitrator's fees).

1.13. Floor Area

"Floor Area" shall mean the aggregate of the actual number of square feet of space that is contained on each floor within a Building, including any mezzanine or basement space, as measured from the exterior faces of the exterior walls or store front and/or the center line of any common walls; provided, however, that the following areas shall not be included in such calculation:  space attributable to any multi-deck, platform, rack or other multi-level system used solely for the storage of merchandise which is located above ground floor; and any space used solely for Building utilities or mechanical equipment or for parking purposes (so that the floor area of the New Parking Facility shall not constitute Floor Area for purposes hereof). Within thirty (30) days after receipt of a request therefor, a Party shall certify to the requesting Party the amount of Floor Area applicable to such Party's Parcel.  If any Party causes an as-built survey to be prepared with respect to a Parcel, such Party shall furnish a copy of such survey to the other Parties for informational purposes only.

During any period of rebuilding, repairing, replacement or reconstruction of a Building, the Floor Area previously attributable to that Parcel shall be deemed to be the same as existed immediately prior to such period.  Upon completion of such rebuilding, repairing, replacement or reconstruction, the Party owning such Parcel shall cause a new determination of Floor Area for such Parcel to be made in the manner described above, and such determination shall be sent to any other Party requesting the same.

1.14. Governmental Authorities

"Governmental Authorities" shall mean any federal, state, county, city or local governmental or quasi-governmental authority, entity or body (or any departmental agency thereof) exercising jurisdiction over a particular subject matter.

1.15. Governmental Requirements.

"Governmental Requirements" shall mean all applicable laws, statutes, ordinances, codes, rules, regulations, orders, and applicable judicial decisions or decrees, as presently existing and hereafter amended, of any Governmental Authorities.

1.16. Indemnitees.

"Indemnitees" shall mean, with respect to a Party, (i) the officers, directors, members, shareholders, partners, and employees of such Party, and (ii) any Mortgagee of such Party.

1.17. Kingsbridge Parcel A.

"Kingsbridge Parcel A" shall have the meaning set forth in the Development Agreement.

1.18. Kingsbridge Parcel.

"Kingsbridge Parcel" shall have the meaning set forth in the Development Agreement.

1.19. Kingsbridge Parcel Owner.

"Kingsbridge Parcel Owner" shall mean Kingsbridge, in its capacity as the owner of the fee interest in the Kingsbridge Parcel.

1.20. Kingsbridge Site.

"Kingsbridge Site" shall mean, collectively, the Kingsbridge Parcel and the Western Parcel.

1.21. Kingsbridge Site Owner.

"Kingsbridge Site Owner" shall mean Kingsbridge, in its capacity as the owner of the fee interest in the Kingsbridge Site.

1.22. Mortgagee.

"Mortgagee" of a particular Party shall mean a person or entity that holds a mortgage lien on all or any part of such Party's interest in the applicable Parcel; provided, however, that such person or entity shall not constitute a Mortgagee of such party for purposes hereof unless and until such Party has given notice thereof to the other Parties.

1.23. New Parking Facility.

"New Parking Facility" shall mean the parking deck or decks constituting the top level or levels of the Buildings that are being constructed on the Kingsbridge Parcel and the Target Parcel pursuant to the Development Agreement, the ramps leading to such parking deck or decks, and the footings, columns, supports and other similar structures that are required for such parking deck or decks to constitute a free-standing structure.

1.24. New Target Building.

"New Target Building" shall have the meaning set forth in the Development Agreement.

1.25. Occupant.

"Occupant" shall mean any Person from time to time entitled to the use and occupancy of any portion of a Building at the Site under an ownership right or under any lease, sublease, license, concession, or other similar agreement.

1.26. Operator.

"Operator" shall mean the Person, if any, designated from time to time by the Approving Parties to maintain and operate the Common Area. The Person designated as Operator shall serve in such capacity until he resigns upon 60-days prior notice, or is removed by the Approving Parties. The Approving Parties hereby designate Target as the initial Operator, and Target hereby accepts such appointment.

1.27. Parcel.

"Parcel" shall mean the Site, or the applicable portion thereof, in respect of which a Party owns the fee interest therein.

1.28. Party.

"Party" shall mean each signatory hereto and its respective successors and assigns during the period of such Person's fee ownership of any portion of the Site. A Party transferring all or any portion of its fee interest in the Site shall give notice to all other Parties and the Operator, if any, of such transfer and shall include in such notice at least the following information:

(a) The name and address of the new Party;

(b) A copy of the legal description of the portion of the Site transferred by such Party; and

(c) A statement as to whether the new Party is the designated Approving Party.

Subject to Section 9 hereof, each Party shall be liable for the performance of all covenants, obligations and undertakings applicable to the Parcel owned by it that accrue during the period of such ownership, and such liability shall continue with respect to the Parcel transferred by such Party until the notice of transfer set forth above is given. Until such notice of transfer is given, the transferring Party shall (for the purpose of this OEA only) be the transferee's agent. Once the notice of transfer is given, the transferring Party shall be released from all obligations pertaining to the portion of the Parcel transferred arising subsequent to the notice of transfer. For the purpose of this Section 1.28 only, if the notice of transfer is given pursuant to the provisions of Section 7.7 hereof, the effective date of such notice shall be the date such notice is sent.

If a Parcel is owned by more than one (1) Party, the Party or Parties holding at least fifty-one percent (51%) of the ownership interest in such Parcel shall designate in writing one (1) Person to represent all owners of the Parcel and such designated Person shall be deemed the Person authorized to give consents and/or approvals pursuant to this OEA for such Parcel.

Nothing contained herein to the contrary shall affect the existence, priority, validity or enforceability of any lien which is recorded against a Parcel prior to the other Parties'

receipt of the notice of transfer by the Party that is transferring its interest in the applicable Parcel.

1.29. Permittee.

"Permittee" shall mean each Party and the members, officers, directors, employees, agents, contractors, customers, vendors, suppliers, visitors, invitees, licensees, tenants, subtenants, and concessionaires of each Party; provided, however, that a Person shall not be a Permittee for purposes hereof if such Person (a) fails to follow regulations established by the Parties relating to the use and operation of the Site, (b) uses any portion of the Site for an illegal purpose, or (c) engages at the Site (or the applicable portion thereof) in civic, public, charitable or political activities, including, without limitation, the activities of (i) exhibiting any placard, sign or notice, (ii) distributing any circular, handbill, placard or booklet, (iii) soliciting memberships or contributions for private, civic, public charitable or political purposes, or (iv) parading, picketing or demonstrating.

1.30. Person.

"Person" shall mean any individual, partnership, firm, association, corporation, limited liability company, trust, or any other form of entity or any Governmental Authority.

1.31. Plans.

"Plans" shall have the meaning set forth in the Development Agreement.

1.32. Primary Floor Area.

"Primary Floor Area" shall mean the Floor Area for each of the Building Areas as designated on the Site Plan.

1.33. Project

"Project" shall have the meaning set forth in the Development Agreement.

1.34. Restaurant.

"Restaurant" shall mean any operation or business which requires a governmental permit, license and/or authorization to prepare and/or serve food for either on or off-site consumption; provided, however, that a supermarket, grocery store or similar operation shall not be deemed a Restaurant.

1.35. Substantial Completion.

"Substantial Completion" or words of similar import shall mean that the applicable work has been substantially completed in accordance with the applicable plans and specifications, if any, it being agreed that such work shall be deemed substantially complete

notwithstanding the fact that minor or insubstantial details of construction or demolition, mechanical adjustment or decorative items remain to be performed.

1.36. Taxes.

"Taxes" shall mean, with respect to each Parcel, the aggregate amount of real estate taxes and any general or special assessments that in each case are imposed upon such Parcel.

1.37. Target Parcel.

"Target Parcel shall have the meaning set forth in the Development Agreement.

1.38. Target Parcel Owner.

"Target Parcel Owner" shall mean Target, in its capacity as the owner of the fee interest in the Initial Target Parcel and the Additional Parcel after the Additional Parcel Conveyance Date.

1.39. Utility Lines.

"Utility Lines" shall mean those facilities and systems for the transmission of utility services, including the drainage and storage of surface water. "Common Utility Lines" shall mean those Utility Lines which are installed to provide the applicable service to both the Target Parcel and the Kingsbridge Site. "Separate Utility Lines" shall mean those Utility Lines which are installed to provide the applicable service to either the Target Parcel or the Kingsbridge Site. For the purpose of this OEA, the portion of a Utility Line extending between a Common Utility Line and a Building shall be considered a Separate Utility Line. Utility Lines installed pursuant to this OEA shall only provide service necessary for the development and/or operation of the Site.

1.40. Zoning Documents.

"Zoning Documents" shall have the meaning set forth in the Development Agreement.

2. Pre-Development Easements.

2.1. The Additional Parcel Easement.

(A) Grant of the Additional Parcel Easement to the Initial Target Parcel Owner.

Subject to the terms of this Section 2.1, the Initial Kingsbridge Parcel Owner hereby grants to the Initial Target Parcel Owner a perpetual easement to erect on the portion of the Initial Kingsbridge Parcel as shown on Exhibit "E" attached hereto and made a part hereof (the "Additional Parcel Area") improvements that are attached to and comprise a part of the improvements that the Initial Target Parcel Owner erects from time to time on the Initial Target

Parcel (the perpetual easement granted by the Initial Kingsbridge Parcel Owner to the Initial Target Parcel Owner is referred to herein as the "<u>Additional Parcel Easement</u>"). The Initial Target Parcel Owner shall have the right to remove improvements that otherwise exist in the Additional Parcel Area to the extent reasonably required in connection with the Initial Target Parcel Owner's construction of improvements in the Additional Parcel Area as contemplated by this Section 2.1. The Additional Parcel Easement shall be perpetual, regardless of the earlier termination of the Term.

(B) Limitations on the Additional Parcel Easement.

The Initial Target Parcel Owner shall only have the right to use the Additional Parcel Area as set forth in this Section 2.1 if Kingsbridge fails to convey the Additional Parcel to Target in accordance with the terms of the Development Agreement. Nothing contained in this Section 2.1(B) limits Target's rights against Kingsbridge if Kingsbridge defaults in respect of Kingsbridge's obligations to Target under the Development Agreement.

3. Post-Development Easements.

3.1. Access and Parking Easements.

(A) Reciprocal Easements for the Term.

During the Term, each Party hereby grants and conveys to each other Party for the use of its Permittees, in common with others entitled to use the same, a non-exclusive easement for the passage and parking of vehicles over and across the parking and driveway areas of the grantor's Parcel, as the same may from time to time be constructed and maintained for such use, and for the passage and accommodation of pedestrians over and across the parking, driveways and sidewalk areas of the grantor's Parcel, as the same may from time to time be constructed and maintained for such use. Target and Kingsbridge acknowledge that upon the Substantial Completion of the Project, the New Parking Facility and the Adjacent Common Area Improvements shall constitute the portions of the Site that are subject to the easement described in this Section 3.1(A). The easement herein established shall be appurtenant to and for the benefit of each grantee's Parcel, and shall be binding on, enforceable against and burden each grantor's Parcel. Such easement rights shall be subject to the following reservations as well as the other applicable provisions contained in this OEA:

(a) Each Party reserves the right to close-off any portion of its Parcel for such reasonable period of time as may be legally necessary, in the opinion of such Party's counsel, to prevent the acquisition of prescriptive rights by anyone; provided, however, that prior to closing-off any portion of its Parcel, such Party shall give notice to each other Party of its intention to do so, and shall attempt to coordinate such closing-off with each other Party so that no unreasonable interference with the passage of pedestrians or vehicles shall occur;

(b) Each Party reserves the right at any time and from time to time to exclude and restrain any Person who is not a Permittee from using its Parcel; and

(c) Each Party reserves the right to temporarily erect or place barriers in and around areas on its Parcel which are being constructed and/or repaired in order to insure either safety of Persons or protection of property.

(B) Driveway Easements that Extends Beyond the Term.

In addition to the general easement specified in Section 3.1(A) hereof, the Kingsbridge Site Owner hereby grants and conveys to the Target Parcel Owner, and the Target Parcel Owner hereby grants to the Kingsbridge Site Owner, in either case for the use of its Permittees, in common with others entitled to use the same, and subject to the reservations set forth in Section 3.1(A)(a) hereof and Section 3.1(A)(b) hereof, a non-exclusive, perpetual easement for the passage and accommodation of pedestrians and vehicles (but not for parking purposes) upon, over and across (x) the portion of the Adjacent Common Area Improvements that constitutes a drive and not a parking area, and (y) a portion of the New Parking Facility comprised of a two-lane drive that extends to the intersection of Kingsbridge Road and Exterior Street (such portion of the Adjacent Common Area Improvements and the New Parking Facility being referred to herein as the "Common Driveway"). Kingsbridge and Target acknowledge that the Common Driveway shall be identified on the Plans. Such easement shall be appurtenant to and for the benefit of the Target Parcel and the Kingsbridge Site, and shall be binding on, enforceable against and burden the Target Parcel and the Kingsbridge Site. During the term of this OEA, each portion of the Common Driveway shall be maintained in accordance with Section 5.2 hereof, and the Common Driveway shall not be relocated without the approval of the Approving Parties.

After the termination of the Term, each Party that owns a Parcel in the Site may, at its expense, relocate the Common Driveway so long as the relocated portion remains reasonably direct and ties into/connects with the remainder of the Common Driveway and the Target Parcel or the Kingsbridge Site, as the case may be. Notice of such relocation shall be provided to the Target Parcel Owner at least thirty (30) days prior to relocation of the Common Driveway (or the applicable portion thereof).

After the termination of the Term, each portion of the Common Driveway shall be maintained in a safe, clean and good state of repair and condition by the Party on whose Parcel such portion of the Common Driveway is located, at its sole cost and expense. In the event any such Party shall fail to perform the required maintenance, any other Party, after at least thirty (30) days prior notice to such Party, shall have the right, but not the obligation, to cause such maintenance to be performed. If such curative measures are taken, such defaulting Party shall, upon demand, immediately pay to the performing Party all costs and expenses incurred with respect to such curative action. In addition, the performing Party shall have the right to create a lien upon the Parcel owned by such defaulting Party in order to secure payment of the amount expended by the performing Party to perform such maintenance, plus Interest at the rate set forth in Section 7.2 hereof; provided, however, that if (a) a mortgage that is held by a Mortgagee then encumbers such Parcel, and (b) the Mortgagee is an institutional lender that is not an Affiliate of the Party that owns such Parcel, then such lien shall be subordinate to the lien of such mortgage.

(C) Parking Easement for the Kingsbridge Site that Extends Beyond the Term.

In addition to the general easement specified in Section 3.1(A) hereof, the Target Parcel Owner hereby grants and conveys to the Kingsbridge Site Owner for its exclusive use and for the exclusive use of its Permittees, a portion of the Target Parcel on which are located a number of parking spaces equal to the excess of (x) the number of parking spaces that the Kingsbridge Site requires under applicable Governmental Requirements that are in effect as of the date hereof for the Primary Floor Area that is located on the Kingsbridge Site (assuming that the Buildings on the Kingsbridge Site are used only for general retail purposes), over (y) the number of parking spaces that are to be constructed on the Kingsbridge Site as reflected on the Site Plan (such parking spaces to be provided to the Kingsbridge Site Owner being referred to herein as the "Kingsbridge Parking Spaces"). The Kingsbridge Parking Spaces shall be contiguous to each other and to the Kingsbridge Parcel. The Target Parcel Owner shall designate the Kingsbridge Parking Spaces not later than the last day of the Term in a notice that the Target Parcel Owner gives to the Kingsbridge Site Owner. Each Party shall have the right to submit to an Expedited Arbitration Proceeding a dispute between the Parties under this Section 3.1(C). The Kingsbridge Site Owner shall maintain the Kingsbridge Parking Spaces after the termination of the Term at the sole cost and expense of the Kingsbridge Site Owner. Either the Kingsbridge Site Owner or the Target Parcel Owner shall have the right, after the termination of the Term, to erect a fence or wall or other similar means of separating the Kingsbridge Parking Spaces from the remainder of the parking area on the Target Parcel (with the understanding that any such fence or wall or other means shall be subject to the approval of the other Party, which approval the other Party shall not unreasonably withhold, condition or delay).

(D) Air and Light Easement for the Kingsbridge Site.

In addition to the general easement specified in Section 3.1(A) hereof, the Target Parcel Owner hereby grants and conveys to the Kingsbridge Site Owner a perpetual easement for light and air over and above the New Target Building and for this purpose Target covenants and agrees that any new building or structure hereafter erected on the Target Parcel, and any replacement thereof, and any alteration, reconstruction or rebuilding of the New Target Building, shall be altered, reconstructed or rebuilt in accordance with the terms of the Zoning Documents.

3.2. Utility Easements.

(A) In General.

Each Party hereby grants and conveys to each other Party non-exclusive, perpetual easements in, to, over, under, along and across those portions of the grantor's Parcel (exclusive of any portion located within Building Areas) necessary for the installation, operation, flow, passage, use, maintenance, connection, repair, relocation, and removal of Utility Lines serving the grantee's Parcel. The initial location of any Utility Line shall be subject to the prior written approval of the Party whose Parcel is to be burdened thereby. Target and Kingsbridge acknowledge that any Utility Line that constitutes part of the Project shall be constructed in accordance with the terms of the Development Agreement. Such easement area shall be no wider than necessary to reasonably satisfy the requirements of a private or public utility company, or five (5) feet on each side of the centerline if the easement is granted to a Party. The grantee shall

provide to the grantor a copy of an as-built survey showing the location of such Utility Line. All Utility Lines shall be underground except:

(a) Ground mounted electrical transformers;

(b) As may be necessary during periods of construction, reconstruction, repair or temporary service;

(c) As may be required by Governmental Authorities;

(d) As may be required by the provider of such utility service; and

(e) Fire hydrants.

At least thirty (30) days prior to utilizing the easement granted herein, the grantee shall provide the grantor with a written statement describing the need for such easement, shall identify the proposed location of the Utility Line, the nature of the service to be provided, and the anticipated commencement and completion dates for the work. Prior to commencing any work on a grantor's Parcel, including any emergency work, the grantee shall provide to the grantor evidence of insurance coverage as required by Section 6.4(C) hereof.

(B) Separate Utility Lines.

Any Party electing to install a Separate Utility Line shall obtain all permits and approvals and shall pay all costs and expenses with respect to the initial construction and all subsequent maintenance, relocation or abandonment of the Separate Utility Line. The Separate Utility Line shall be maintained in a safe, clean and good state of repair and condition. The grantee shall perform such work in compliance with all Governmental Requirements, as quickly as possible and after normal business hours whenever possible. Except in the case of a maintenance emergency where such work may be initiated after reasonable notice, the grantee shall provide the grantor with at least fifteen (15) days prior notice before commencement of any work. The grantee of any Separate Utility Line agrees to defend, protect, indemnify and hold harmless the grantor from and against all claims or demands, including any action or proceeding brought thereon, and all costs, losses, expenses and liabilities of any kind relating thereto, including reasonable attorneys' fees and cost of suit, arising out of or resulting from the exercise of the right to install, maintain and operate the Separate Utility Line; provided, however, the foregoing obligation shall not apply to claims or demands based on the negligence or the willful act or omission of the grantor.

(C) Common Utility Lines.

Except as may otherwise be agreed, the Parties (the "Cooperating Parties") electing to install a Common Utility Line shall obtain all permits and approvals and shall pay all costs and expenses with respect to the initial construction thereof pursuant to the terms of the Development Agreement (to the extent the installation of such Common Utility Line occurs in connection with the construction of the Project). Once constructed, Operator shall maintain, replace and/or relocate the Common Utility Line in a safe, clean and good state of repair and

condition, and in compliance with all Governmental Requirements, as quickly as possible and after normal business hours whenever possible.  If there is no Operator, then any Cooperating Party shall have the right to maintain, repair or replace the Common Utility Line without submission of a Budget or estimate of expenditures, except as hereinafter provided.  If a Cooperating Party, in performing maintenance, repair or replacement of a Common Utility Line, is likely to incur costs of more than Twenty Thousand Dollars ($20,000) in Constant Dollars for such work in any one instance (or series of related or repeated circumstances), such Cooperating Party shall first notify the other Cooperating Parties required to pay a portion of such costs, in which case the Cooperating Parties shall prepare a list of qualified bidders, shall seek competitive bids from the list of qualified bidders before performing the work and shall select the lowest, responsive qualified bidder to perform the work.  If a list of bidders is not jointly prepared within fifteen (15) days of the request for bidders, the Cooperating Party desiring to perform the work may prepare the list (containing not less than three bidders) for such other Cooperating Parties' approval, which approval shall not be unreasonably withheld, from which bids will be solicited.  After a Cooperating Party has incurred any costs for maintaining, repairing or replacing a Common Utility Line, it may send a statement of such costs, increased by an amount equal to the Administrative Fee , together with a copy of any invoice reflecting a charge exceeding $500.00 to each Cooperating Party benefiting from such Common Utility Line.  Each Cooperating Party shall pay within thirty (30) days after receipt of the statement of costs either its allocable share of such costs as agreed upon when the Common Utility Line was installed, or if no separate cost sharing agreement was made, then in accordance with the sharing of Common Area Maintenance Costs that are not associated with the New Parking Facility.  Except in the case of a maintenance emergency where such work may be initiated after reasonable notice, the grantor shall be provided with at least fifteen (15) days prior notice before commencement of any work.

(D) Surface Water

Each Party hereby grants and conveys to each other Party owning an adjacent Parcel the perpetual right and easement to discharge surface storm water drainage and/or runoff from the grantee's Parcel over, upon and across the portion of the grantor's Parcel on which are located no Buildings, upon the following conditions and terms:

(a) The grades and the surface water drainage/retention system for the Site shall be initially constructed in strict conformance with the plans and specifications approved by Kingsbridge and Target in accordance with the terms of the Development Agreement; and

(b) No Party shall alter or permit to be altered the surface its Parcel or the drainage/retention system constructed on its Parcel if such alteration would materially increase the flow of surface water onto an adjacent Parcel either within the aggregate or by directing the flow of surface water to a limited area.  All surface water collection, retention and distribution facilities shall be deemed a Common Utility Line.

(E) Default.

In the event a Party fails to perform its obligations under this Section 3.2, any grantor shall have the right to claim a default pursuant to Section 7.1 hereof and avail itself of all the provisions therein contained, including the right to lien a Defaulting Party's Parcel, and receive Interest on all sums expended to cure such default.

(F) Relocation of Utility Lines.

The grantor shall have the right to relocate a Utility Line on its Parcel upon thirty (30) days prior notice to the grantees, provided that such relocation:

(a) Shall not be commenced during the months of November, December or January;

(b) Shall not interfere with or diminish the utility service to the grantee during the grantee's business hours; and if an electrical line/computer line is being relocated, then the grantor and grantee shall coordinate such interruption to eliminate any detrimental effects;

(c) Shall not reduce or unreasonably impair the usefulness or function of such Utility Line;

(d) Shall be performed without cost or expense to the grantee;

(e) Shall be completed using materials and design standards which equal or exceed those originally used; and

(f) Shall have been approved by the provider of such utility service and the appropriate Governmental Authorities.

Documentation of the relocated easement area, including the furnishing of an "as-built" survey to all grantees, shall be at the grantor's expense and shall be accomplished as soon as possible following completion of such relocation.

3.3. Easements for Construction, Maintenance and Reconstruction.

(A) Reciprocal Easements for Minor Building Encroachments.

In order to accommodate any Building improvements which may be inadvertently beyond a Parcel's boundary line, each Party grants to each other Party owning an adjacent Parcel, an easement, not to exceed a maximum lateral distance of six (6) inches, in, to, over, under, and across that portion of the grantor's Parcel adjacent to such common boundary line for the maintenance and replacement of such encroaching Building improvements.

(B) Subsurface Construction Elements

In the event a constructing Party (the "Constructing Party") determines that it is necessary to place underground piers, footings and/or foundations (collectively, "Subsurface

15

Construction Elements") across the boundary line of its Parcel, the Constructing Party shall advise the Party owning the adjacent Parcel (the "Adjacent Party") of the Constructing Party's construction requirements and shall provide plans and specifications relating thereto to the Adjacent Party, including proposed construction techniques for the Subsurface Construction Elements. Each Adjacent Party hereby grants and conveys to each Constructing Party for the benefit of its Parcel an easement, not to exceed a maximum lateral distance of five (5) feet, in, to, under, and across that portion of the Adjacent Party's Parcel not theretofore occupied by any then existing structure, for the installation, maintenance and replacement of such Subsurface Construction Elements; provided, however, that the Constructing Party shall have no right to use such easement if the Adjacent Party is able to provide the Constructing Party a reasonable alternative construction method for the placement of the Subsurface Construction Elements entirely on the Constructing Party's Parcel.

The Adjacent Party reserves the right to require the Constructing Party to modify the design specifications for the Subsurface Construction Elements in order to permit the Adjacent Party the opportunity to utilize the same in connection with the construction of its Building so that each Party shall be able to place its Building immediately adjacent to the common boundary line. If a common Subsurface Construction Element is used by the Constructing Party and the Adjacent Party, each shall assume and pay its reasonable share of the cost and expense of the design and construction thereof. In the event any Building utilizing a common Subsurface Construction Element is destroyed and not replaced or is removed, the common Subsurface Construction Element shall remain in place for the benefit of the other Building utilizing the same.

(C) Duration.

The easements established under Section 3.3(A) hereof and Section 3.3(B) hereof shall be appurtenant to and for the benefit of each grantee's Parcel, and shall be binding on, enforceable against and burden each grantor's Parcel. Notwithstanding such easement grant, nothing herein shall diminish or waive the right of a grantor to recover damages resulting from a grantee's failure to construct its Building within its Parcel in the case of Section 3.3(A) hereof or Section 3.3(B) hereof, or within the easement area limits in the case of Section 3.3(B) hereof. Such easements in each instance shall:

(a) Continue in effect for the Term and thereafter for so long as the Building utilizing the easement area exists (including a reasonable period to permit reconstruction or replacement of such Building if the same shall be destroyed, damaged or demolished).

(b) Include the reasonable right of access necessary to exercise and enjoy such grant upon terms and with the limitations described in Section 4.1(D) hereof.

(D) No Party Wall Rights; No Support Easement.

With respect to Buildings constructed along the common boundary line between Parcels, nothing herein shall be deemed to create or establish:

(a) A "common" or "party" wall to be shared with the adjacent Building.

(b) The right for a Building to receive support from or apply pressure to the adjacent Building.

3.4. Reciprocal Sign Easements

(A) Sign Easement for the Target Parcel Owner.

Subject to the terms of this Section 3.4(A), the Kingsbridge Parcel Owner hereby grants and conveys to the Target Parcel Owner an easement during the Term for the construction, reconstruction, replacement, operation, maintenance and repair of a sign structure, including the right and privilege to place thereon or affix thereto identification panels (all such attachments shall hereafter be called "Target Panels"), over, under, upon and across the Target Sign Area. The Target Parcel Owner shall have the right to use the Target Panels only for the purpose of displaying the name (or the name and logo) of Occupants of the Target Parcel. The Target Parcel Owner shall have the right to obtain electricity for the Target Panels, without charge, from the electric service for the Building that is located on the Kingsbridge Parcel. The foregoing easement, together with the rights included therewith, shall be for the benefit of and appurtenant to the Target Parcel and shall be binding on, enforceable against and burden the Kingsbridge Parcel. The Target Parcel Owner shall have the right to release such easement, and upon such release (or the termination of the Term) the Target Parcel Owner shall remove the Target Panels and thereafter have no further rights, duties or responsibilities with respect to the Target Sign Area and/or the sign structure. The "Target Sign Area" shall be locations that are on the façade of either the New Kingsbridge Building or the portion of the New Parking Facility that is located on the Kingsbridge Parcel and that are designated by Target and Kingsbridge during the development of the Plans for the Project, with the understanding that (x) approximately eighty percent (80%) of each façade of the New Kingsbridge Building or the portion of the New Parking Facility that is located on the Kingsbridge Parcel will be reserved for the Occupant of the New Kingsbridge Building, and (y) either Party shall have the right to submit to an Expedited Arbitration Proceeding a dispute between the Parties regarding the Target Sign Area. During the Term, the Target Parcel Owner, at the Target Parcel Owner's sole cost and expense, shall keep the Target Panels in good condition and repair.

(B) Sign Easement for the Kingsbridge Parcel Owner.

Subject to the terms of this Section 3.4(B), the Target Parcel Owner hereby grants and conveys to the Kingsbridge Parcel Owner an easement during the Term for the construction, reconstruction, replacement, operation, maintenance and repair of a sign structure, including the right and privilege to place thereon or affix thereto identification panels (all such attachments shall hereafter be called "Kingsbridge Panels"), over, under, upon and across the Kingsbridge Sign Area. The Kingsbridge Parcel Owner shall have the right to use the Kingsbridge Panels only for the purpose of displaying the name (or the name and logo) of Occupants of the Kingsbridge Parcel. The Kingsbridge Parcel Owner shall have the right to obtain electricity for the Kingsbridge Panels, without charge, from the electric service for the Building that is located on the Target Parcel. The foregoing easement, together with the rights included therewith, shall

17

be for the benefit of and appurtenant to the Kingsbridge Parcel and shall be binding on, enforceable against and burden the Target Parcel. The Kingsbridge Parcel Owner shall have the right to release such easement, and upon such release (or the termination of the Term) the Kingsbridge Parcel Owner shall remove the Kingsbridge Panels and thereafter have no further rights, duties or responsibilities with respect to the Kingsbridge Sign Area and/or the sign structure. The "Kingsbridge Sign Area" shall be locations that are on the façade of either the New Target Building or the portion of the New Parking Facility that is located on the Target Parcel and that are designated by Target and Kingsbridge during the development of the Plans for the Project, with the understanding that (x) approximately eighty percent (80%) of each façade of the New Target Building or the portion of the New Parking Facility that is located on the Target Parcel will be reserved for the Occupant of the Target Parcel, and (y) either Party shall have the right to submit to an Expedited Arbitration Proceeding a dispute between the Parties regarding the Kingsbridge Sign Area. During the Term, the Kingsbridge Parcel Owner, at the Kingsbridge Parcel Owner's sole cost and expense, shall keep the Kingsbridge Panels in good condition and repair.

(C) Pylon Sign on the Western Parcel.

The Western Parcel Owner, during the period that Target is constructing the Project pursuant to the Development Agreement, shall use commercially reasonable efforts to have approved by the appropriate Governmental Authority a pylon sign for the entrance to the Adjacent Common Area Improvements from West 225th Street (which pylon sign, if approved, shall be constructed as part of the Adjacent Common Area Improvements in the initial construction of the Project). If the Western Parcel Owner succeeds in having a pylon sign approved for the entrance to the Adjacent Common Area Improvements, then the Western Parcel Owner hereby grants and conveys to the Target Parcel Owner an easement for the Term to place or affix an identification panel(s) in at least one (1) position thereon (on both sides of such pylon sign). Such easement grant shall include reasonable access over, across and upon the Western Parcel to permit such panel to be installed, replaced, maintained and operated. The Western Parcel Owner reserves the right to grant additional panel easements for the remaining panel areas of any such pylon sign, and each such additional grant shall recognize the easement right and privileges granted herein to the Target Parcel Owner, and shall specify which panel space on the pylon sign structure is the subject of the easement grant. A copy of the recorded easement shall be delivered to the Target Parcel Owner and each other Person holding a prior panel easement with respect to such sign structure. The foregoing easement, together with all rights and privileges specified, shall be for the benefit of the Target Parcel and shall be binding on, enforceable against and burden the Western Parcel. The Target Parcel Owner shall have the right to release the easement, and upon such release (or the termination of the Term) the Target Parcel Owner shall remove its panel from such pylon sign and thereafter have no further rights, duties or responsibilities with respect to the sign structure. The Parties acknowledge that the electricity for any such pylon sign shall be registered on the meter for the Common Area (and, accordingly, the cost of such electricity shall constitute a Common Area Maintenance Cost for purposes hereof).

3.5. Easements not to Benefit Other Property.

No Party shall grant, for the benefit of any real property that is not located in the Site, any easement to use the Common Area; provided, however, that the foregoing shall not prohibit the granting or dedicating of easements by a Party on its Parcel to Governmental Authorities or to public utility companies.

4. Construction

4.1. General Requirements

(A) Performance of Construction.

Each Party agrees that all construction activities performed or authorized by it on its Parcel shall be performed in compliance with all Governmental Requirements. All construction shall utilize new materials and shall be performed in a good, safe, workman-like manner. Each Party further agrees that any construction activities performed or authorized by it shall not:

(a) Cause any unreasonable increase in the cost of constructing improvements upon another Party's Parcel.

(b) Unreasonably interfere with construction work being performed on any other part of the Site.

(c) Unreasonably interfere with the use, occupancy or enjoyment of any part of the remainder of the Site by any Permittees of a Party.

(d) Cause any Building located on another Parcel to be in violation of any Governmental Requirements.

Nothing contained in this Section 4.1(A) limits the respective rights and obligations of Target and Kingsbridge under the Development Agreement.

(B) Indemnity.

Each Party agrees to defend, protect, indemnify and hold harmless each other Party from and against all claims and demands, including any action or proceeding brought thereon, and all costs, losses, expenses and liabilities of any kind relating thereto, including reasonable attorneys fees and cost of suit, arising out of or resulting from any construction activities performed or authorized by such indemnifying Party; provided, however, that the foregoing shall not be applicable to either events or circumstances caused by the negligence or willful act or omission of such indemnified Party, its licensees, concessionaires, agents, servants, employees, or anyone claiming by, through, or under any of them, or claims covered by the release set forth in Section 6.4(D) hereof.

(C) Temporary Staging and Storage.

19

In connection with any construction, reconstruction, repair or maintenance on its Parcel, each Party reserves the right, at its expense, to create a temporary staging and/or storage area on its Parcel at such location as will not unreasonably interfere with access between such Parcel and the other areas of the Site. Prior to the commencement of any work which requires the establishment of a staging and/or storage area on its Parcel, a Party shall give at least thirty (30) days prior notice to the Approving Parties, for their approval, of the proposed location of such staging and/or storage area. If substantial work is to be performed, the constructing Party shall, at the request of any Approving Party, fence such staging and/or storage area. If the Approving Parties do not approve the proposed location of the staging and/or storage area, the requesting Party shall modify the proposed location of the staging and/or storage area to satisfy the reasonable requirements of the Approving Parties. All storage of materials and the parking of construction vehicles, including vehicles of workers, shall occur only on the constructing Party's Parcel and all laborers, suppliers, contractors and others connected with such construction activities shall use only the access points located upon the constructing Party's Parcel. Upon completion of such work, the constructing Party shall, at its expense, restore any damaged Common Area to a condition equal to or better than that existing prior to commencement of such work. The provisions of this Section 4.1(C) shall not apply until the Project is Substantially Completed (it being the parties' intention that the Development Agreement shall govern the respective rights and obligations of the parties regarding the initial construction of the Project).

(D) License.

Each Party, during the Term, hereby grants and conveys to each other Party and to such Party's contractors, materialmen and laborers a temporary license for access and/or use over and across the Common Area of the grantor's Parcel as shall be reasonably necessary for the grantee to construct and/or maintain improvements upon the grantee's Parcel; provided, however, that such license shall be in effect only during such periods of time when actual construction and/or maintenance is being performed and provided further that the use of such license shall not unreasonably interfere with the use and operation of the Common Area by the other Parties or their Permittees. Prior to exercising the rights granted herein, the grantee shall first provide the grantor with a written statement describing the need for such license and shall identify the area of use. Each grantee physically using a portion of the grantor's Parcel in connection with the construction and/or maintenance of the grantee's Parcel shall furnish a certificate of insurance showing that its contractor has obtained the minimum insurance coverage required by Section 6.4(C) hereof, shall promptly pay all costs and expenses associated with such work, shall diligently complete such work as quickly as possible, and shall promptly clean the area, and restore and/or repair the affected portion of the grantor's Parcel to a condition which is equal to or better than the condition which existed prior to the commencement of such work. Notwithstanding the foregoing, in the event a dispute exists between the contractors, laborers, suppliers and/or others connected with such construction activities, each Party shall have the right to prohibit the contractors, laborers, suppliers and/or others working for another Party from using the Common Area on its Parcel.

4.2. Common Area

(A) Initial Construction of the Common Area.

Kingsbridge and Target acknowledge that the portion of the Common Area consisting of the New Parking Facility and the Adjacent Common Area Improvements are being constructed initially by Target as part of the Project pursuant to the Development Agreement. Kingsbridge and Target also acknowledge that the parking spaces being constructed as part of the New Parking Facility and the Adjacent Common Area Improvements shall be sufficient to service the Primary Floor Areas on the Site, assuming that the Primary Floor Areas are used for general retail purposes.

(B) Construction Beyond the Primary Floor Area.

If the Kingsbridge Site Owner constructs Buildings in the Building Areas on the Kingsbridge Site that are comprised of a Floor Area that exceeds the Primary Floor Area, then the Kingsbridge Site Owner shall satisfy Governmental Requirements for parking for such excess Floor Area only with additional parking spaces that the Kingsbridge Site Owner constructs on the Kingsbridge Site (or that the Kingsbridge Site Owner otherwise makes available on other real property to the extent permitted by applicable Governmental Requirements and approved by the Approving Parties). Subject to the terms of the Zoning Documents, if the Target Site Owner constructs a Building in the Building Area on the Target Parcel that is comprised of a Floor Area that exceeds the Primary Floor Area, then the Target Owner shall satisfy Governmental Requirements for parking for such excess Floor Area only with additional parking spaces that the Target Parcel Owner constructs on the Target Parcel (or that the Target Parcel Owner otherwise makes available on other real property to the extent permitted by applicable Governmental Requirements and approved by the Approving Parties).

(C) Parking Requirements for Special Uses.

If the Kingsbridge Site Owner uses any portion of the Kingsbridge Site, or the Target Parcel Owner uses any portion of the Target Parcel, in either case for a purpose set forth below in this Section 4.2(C), then such Party shall satisfy the parking that is required for such use as set forth below, or as may be required by applicable Governmental Requirements (whichever is greater) (to the extent the parking so required exceeds the parking that would be required for the applicable Floor Area if such Floor Area was used for general retail purposes) with parking spaces that the applicable Party constructs on the Kingsbridge Site or the Target Parcel, as the case may be (or that the applicable Party otherwise makes available on other real property that is not part of the Site to the extent approved by the Approving Parties).

(a) If a business use contains a drive-up unit (such as a remote banking teller or food ordering/dispensing facility), then there shall also be created space for stacking not less than five (5) automobiles for each drive-up unit.

(b) For each single Restaurant that is located on the Kingsbridge Parcel or the Target Parcel and which in either case has more than three thousand five hundred (3,500) square feet of Floor Area, one (1) parking space for each eighty (80) square feet of Floor Area devoted to such use.

If an Occupant operates a Restaurant incidental to its primary business purpose, then so long as such incidental operation continues, the portion of the Floor Area occupied by such Restaurant shall be excluded from the application of clause (b) above. For the purpose of this clause only, a Restaurant shall be an "incidental operation" if it occupies less than seven percent (7%) of the Occupant's Floor Area and does not have a separate customer entry/exit door to the outside of the Building. In the event an Occupant utilizes Floor Area for Restaurant and other purposes, only the portion of Floor Area allocated for Restaurant purposes shall be subject to the increased parking requirements set forth above.

In the event of a condemnation of part of a Parcel or a sale or transfer in lieu thereof that reduces the number of usable parking spaces on such Parcel below that which is required herein, the Party whose Parcel is so affected shall use its best efforts (including using proceeds from the condemnation award or settlement) to restore and/or substitute ground-level parking spaces in order to comply with the parking requirements set forth in this OEA. If such compliance is not reasonably possible, such Party shall not be deemed in default hereunder, but such Party shall not be permitted to expand the amount of Floor Area located on its Parcel. If such Floor Area is thereafter reduced other than by casualty, then the Floor Area on such Parcel may not subsequently be increased unless the parking requirements set forth above are satisfied.

Temporary unavailability of parking spaces caused by uses or promotions that are approved by the Approving Parties shall not result in or be deemed a violation of this Section 4.2.

(D) Changes to the Common Area.

Subject to the terms of Section 4.2(E) hereof, no Party shall make changes to the improved Common Area on its Parcel without the approval of the Approving Parties, except that each Party hereby reserves the right, from time to time without obtaining the consent or approval of any other Party, to make at its own expense any insignificant change, modification or alteration in the portion of such Common Area on its Parcel, including the installation of convenience facilities such as mailboxes, public telephones, cart corrals, benches, bike racks, directional and/or parking information signs, provided that:

(a) The accessibility of such Common Area for pedestrian and vehicular traffic (as it relates to the remainder of the Site) is not unreasonably restricted or hindered, and all parking stalls and rows and vehicular traffic lanes shall remain generally as shown on the Site Plan (it being understood that in no event shall any fence or other barrier that prevents or unreasonably obstructs the passage of pedestrian or vehicular travel be erected or permitted within or across the Common Area, exclusive of the limited curing and other forms of traffic control that are constructed pursuant to the Development Agreement as part of the Project, and staging and/or storage areas as otherwise permitted hereunder).

(b) There shall be maintained at all times within such Common Area a sufficient number of vehicular parking spaces to meet the parking requirements set forth in this Section 4.2; provided, however, that no more than two percent (2%) of the parking spaces in the New Parking Facility and the Adjacent Common Area Improvements shall be eliminated.

22

(c) No Governmental Requirements shall be violated as a result of such action; any and all Governmental Requirements applicable to such modifications shall be satisfied by the Party performing the same; and such action shall not result in any other Party being in violation of any Governmental Requirements.

(d) No change shall be made in the access points between such Common Area and the adjacent public streets; provided, however, that additional access points may be created with the approval of the Approving Parties.

(e) At least thirty (30) days prior to making any such change, modification or alteration, the Party desiring to do such work shall deliver to each Approving Party copies of the plans therefor, and provided further that such work shall not occur during the months of October, November, December or January.

The provisions of this Section 4.2(D) do not apply to any changes, modifications or alterations of Common Area located within Building Areas which result from or arise out of the construction, expansion or maintenance of Buildings.

(E) Billboards.

Subject to the terms of this Section 4.2(E), each Party shall have the right to erect billboard signage structures along the southernmost boundary of the Site, in each case in a manner and in locations that are approved reasonably by the Approving Parties. A Party shall have the right to erect and operate such signage structures solely to the extent permitted by applicable Governmental Requirements. A Party shall erect any such billboard signage structures at its sole cost and expense. Any such billboard signage structures shall be erected only in locations that have no material and adverse effect on any of the Buildings theretofore constructed on the Site, the New Parking Facility or the Adjacent Common Area Improvements. Any such billboard signage structures shall not constitute Common Area for purposes hereof. Such Party shall maintain such billboard signage structures in good condition, and operate such billboard signage structure only in a manner that conforms with the standards of a first-class retail center in the New York metropolitan area.

4.3. Buildings.

(A) Building Areas.

Buildings shall only be located within the Building Areas designated on the Site Plan. Subject to the terms of the Development Agreement, each Party agrees that once it has commenced construction of a Building, such Building shall be completed within a reasonable time.

(B) Common Boundary Lines.

The Parties hereby specifically consent to the placement of Buildings along their respective common boundary lines, and each Party agrees to support any request by another Party for a side-yard or setback variance if the same is required in order to accommodate such

construction (with the understanding, however, that nothing contained in this Section 4.3(B) limits the provisions of the Development Agreement regarding the development of the Plans for the Project in a manner that does not required discretionary approvals from Governmental Authorities). The second Party to construct a Building along a common boundary line shall:

(a) Cause such construction to be completed in such a manner that the improvements on the adjoining Parcel are not damaged, and so that the wall, roof, foundation or other structure portion of one Building does not receive support from, nor apply pressure to the other Building.

(b) Undertake and assume the obligation of completing and maintaining the nominal attachment (flashing and seal) of its Building to that of the existing Building on the adjoining Parcel, it being the intent of the Parties to establish and maintain the appearance of one (1) continuous Building complex.

Along the common boundary line between the Kingsbridge Parcel and the Target Parcel, the separation of Building walls shall be no less than one (1) inch. The Target Parcel Owner agrees to use reasonable efforts to locate its Building wall at least one (1) inch from the common boundary line, but in no event more than two (2) inches therefrom. The Kingsbridge Parcel Owner agrees to use reasonable efforts to locate its Building wall at least one (1) inch from the common boundary line, but in no event more than two (2) inches therefrom. Nothing contained in this Section 4.3(B) limits the terms of the Development Agreement.

(C) Height.

No Building on the Target Parcel or the Kingsbridge Parcel shall exceed one (1) story (without taking into account the New Parking Facility or any parking additions thereto).

4.4. Liens

In the event any mechanic's lien is recorded against the Parcel of one Party as a result of services performed or materials furnished for the use of another Party, the Party permitting or causing such lien to be so recorded agrees to cause such lien to be discharged within fifteen (15) days after the entry of a final judgment (after all appeals) for the foreclosure of such lien. Notwithstanding the foregoing, upon request of the Party whose Parcel is subject to such lien, the Party permitting or causing such lien to be recorded agrees to cause such lien to be released and discharged of record within twenty-five (25) days of such request, either by paying the indebtedness which gave rise to such lien or by posting bond or other security as shall be required by law to obtain such release and discharge. Nothing herein shall prevent the Party permitting or causing such lien to be recorded from contesting the validity thereof in any manner such Party chooses so long as such contest is pursued with reasonable diligence (except that such Party shall nevertheless be required to cause such lien to be released or discharged of record during the pendency of such contest as provided in this Section 4.4). In the event such contest is determined adversely (allowing for appeal to the highest appellate court), such Party shall promptly pay in full the required amount, together with any interest, penalties, costs, or other charges necessary to release such lien of record (unless such Party has already been required by

another Party to cause such lien to be released or discharged as provided in this Section 4.4). The Party permitting or causing such lien agrees to defend, protect, indemnify and hold harmless the other Party and its Parcel from and against all claims and demands, including any action or proceeding brought thereon, and all costs, losses, expenses and liabilities of any kind relating thereto, including reasonable attorneys' fees and cost of suit, arising out of or resulting from such lien.

5. Maintenance and Repair.

    5.1. Utility Lines.

        Utility Lines shall be maintained as provided in Section 3.2 hereof.

    5.2. Common Area

        (A) Scope of Maintenance Obligations.

        Subject to the joint maintenance provision set forth in Section 5.2(B) hereof, each Party shall maintain, or cause to be maintained, at its sole cost and expense, the Common Area on its Parcel in a sightly, safe condition and good state of repair. The unimproved Common Area (if any) shall be mowed and kept litter-free. The minimum standard of maintenance for the improved Common Area shall be comparable to the standard of maintenance followed in other first class retail developments of comparable size in the New York metropolitan area; notwithstanding the foregoing, however, the Common Area shall be operated and maintained in compliance with all applicable Governmental Requirements, and the provisions of this OEA. All Common Area improvements shall be repaired or replaced with materials at least equal to the quality of the materials being repaired or replaced. Such operation, maintenance and repair obligation shall include but not be limited to the following:

        (a) Drive and Parking Areas.

        Maintaining all paved surfaces and curbs in a smooth and evenly covered condition, including, without limitation, replacement of base, skin patch, resurfacing and, when necessary to restripe the parking area and resealing. (For the purpose of this Section, an overlay of the drives and parking areas shall be considered a maintenance item.)

        (b) Debris and Refuse.

        Periodically removing papers, debris, filth, refuse, ice and snow (2" on surface), including daily vacuuming and broom-sweeping, and the removal of graffiti from the Common Areas, in each case to the extent necessary to keep the Common Area in a first-class, clean and orderly condition; provided, however, that trash and/or garbage removal from a Party's Building shall not be considered a Common Area Maintenance Cost since such removal obligation is covered by Section 5.3 hereof. All sweeping shall be at appropriate intervals during such times as shall not interfere with the conduct of business or use of the Common Area by Permittees.

        (c) Directional Signs and Markers.

Maintaining, cleaning and replacing any appropriate directional, stop or handicapped parking signs or markers; restriping parking lots and drive lanes as necessary to maintain parking space designation and traffic direction; and keeping clearly marked fire lanes, loading zones, no parking areas and pedestrian cross-walks.

### (d) Lighting.

Maintaining, cleaning and replacing Common Area lighting facilities, including light standards, wires, conduits, lamps, ballasts and lenses, time clocks and circuit breakers, illuminating the Common Area pursuant to Section 6.2 hereof; provided however, exterior Building lighting fixtures, including any lighting fixtures associated with a canopy or other architectural feature forming a part of such Building, shall be considered a part of such Building, and the maintenance and replacement of such fixtures, and the cost of illumination, shall be the obligation of the Party upon whose Parcel such fixtures are located.

### (e) Landscaping.

Maintaining and replacing all landscape plantings, trees and shrubs (if any) in an attractive and thriving condition, trimmed and weed-free; maintaining and replacing landscape planters (if any), including those adjacent to exterior walls of Buildings; and providing water for landscape irrigation through a properly maintained system, including performing any modifications to such system to satisfy governmental water allocation or emergency requirements. If any Party or Occupant requires "special" landscaping (i.e. flowers, shrubs, trees, etc.) beyond the standard landscaping requirements for the remainder of the Site, or if landscaping additions/modifications are required as a result of a Building addition, expansion or remodel, the cost of installation, replacement and maintenance of such special or required landscaping shall be borne solely by such Party or Occupant, as the case may be, and shall not be included in Common Area Maintenance Costs.

### (f) Obstructions.

Keeping the Common Area free from any obstructions, including those caused by the sale or display of merchandise, unless such obstruction is permitted under the provisions of this OEA.

### (g) Sidewalks.

Maintaining, cleaning and replacing sidewalks, including those adjacent and contiguous to Buildings located within the Site. Sidewalks shall be steam-cleaned at least monthly, shall be swept at appropriate intervals during such time as shall not interfere with the conduct of business or use of the Common Area and shall be cleared of ice or snow (after each snow fall of 2" or more).

### (h) Traffic.

Supervising traffic at entrances and exits to the Site and within the Site as conditions reasonably require in order to maintain an orderly and proper traffic flow.

Notwithstanding anything contained herein to the contrary, each Party shall have the obligation to operate, maintain, and repair, at its sole cost and expense, in a clean, sightly and safe condition, the following items (if any) located on its Parcel: any exterior shipping/receiving dock area; any truck ramp or truck parking area; any recycling center or similarly designated area for the collection of items intended for recycling; and any refuse, compactor or dumpster area.

(B) Management by the Operator.

Commencing on the date that the Project is Substantially Completed, Operator shall operate and maintain the Common Area in accordance with the requirements of Section 5.2(A) hereof. Operator shall expend only such funds as are reasonably necessary for the operation and maintenance of the Common Area, including premiums for insurance required by Section 6.4(A) and the performance of other obligations imposed on Operator pursuant to Section 5.2(B) hereof, and shall promptly pay such costs ("Common Area Maintenance Costs") when incurred. Within thirty (30) days following the commencement of such maintenance and operation, Operator shall provide the Approving Parties an estimated budget for the balance of the current calendar year containing the information required by Section 5.2(C) hereof, and each Party agrees to pay its share of Common Area Maintenance Costs incurred for the balance of such year, plus the Administration Fee, in accordance with Section 5.2(D) hereof. Operator may hire companies affiliated with it to perform the maintenance and operation of the Common Area, but only if the rates charged by such companies are competitive with those of other companies furnishing similar services in the metropolitan area in which the Site is located, it being agreed that this provision shall be construed strictly against Operator. Each Party hereby grants to Operator, its agents, contractors and employees, a license to enter upon such Party's Parcel to discharge Operator's duties to operate, maintain and repair the Common Area. For the purpose of this OEA, Common Area Maintenance Costs shall not include:

(a) Any late charges or fees; any cost, fee, fine, penalty or similar charge arising out of or resulting from any violation by Operator or anyone else relating to the Site.

(b) Any charge for electricity for Building accent lighting or Building security lighting.

(c) With respect to any Party that separately pays the cost of water for irrigating the landscaping upon its Parcel, any charge for the cost of water for irrigating any portion of landscaping on the balance of the Site.

(d) Any costs for promotional, marketing, seasonal or holiday events of any type (including, without limitation, costs of promotional equipment, banners, decorations and/or lighting).

(e) Any costs to clean up or repair the Common Area resulting from any promotional, marketing, seasonal or holiday activities, or from construction, maintenance or replacement of a Party's Buildings.

(f) Any costs resulting from or arising out of the repair or replacement of items covered by warranties or guaranties including, but not limited to, site improvements, signs, trees, plants or other landscaping.

(g) Taxes on the Common Area.

(h) Operator's profit, administrative and overhead costs including, but not limited to costs for: office space, equipment and utilities; legal, accounting and administrative service; Operator's personnel who are not permanently located at the Site; and premiums relating to bonding over mechanic's liens.

(i) Any fee or charge relating to the management and/or supervision of the operation of the Common Area, or any part thereof, paid to a third party, commercial management company or similar provider.

(j) Entertainment, transportation, meals and lodging of anyone.

In lieu of Operator's profit, administrative and overhead costs, Operator shall be permitted to charge an amount ("Administration Fee") computed by multiplying the Common Area Maintenance Costs (exclusive of insurance premiums, the portion of single purpose expenditures that exceed $25,000 and utility charges) by five percent (5%). If any of Operator's personnel at the Site perform services, functions or tasks in addition to Common Area duties, then the cost of such personnel shall be equitably allocated according to time spent performing such duties.

(C) Budget.

Operator shall, at least ninety (90) days prior to the beginning of each calendar year during the term of this OEA, submit to the Approving Parties an estimated budget ("Budget") for the Common Area Maintenance Costs and the Administration Fee for operating and maintaining the Common Area for the ensuing calendar year. The Budget shall be in a form and content reasonably acceptable to the Approving Parties and shall identify separate cost estimates for at least the categories specified under Section 5.2(A) hereof, plus:

(a) Premiums for Commercial General Liability Insurance covering the Common Area as required by Section 6.4(A) hereof; provided, however, such premiums shall not exceed the current filed Insurance Services Offices (ISO) rate for premises operations, adjusted by the increased limits factor, and if a blanket policy is utilized by Operator, then there shall be a reasonable allocation of premium between such covered locations, taking into account the amount of Common Area and ISO rates applicable to each location.

(b) Rental or purchase of equipment and supplies used in maintaining or repairing the Common Area.

(c) Depreciation or trade-in allowance applicable to items purchased for Common Area purposes.

(d) Maintenance of Common Utility Lines pursuant to Section 3.2(C) hereof.

(e) The Administration Fee.

If an item of maintenance or replacement is to be accomplished in phases over a period of calendar years during the term of this OEA, such as resurfacing of the drive and/or parking areas, then the Budget shall separately identify the cost attributable to the applicable calendar year (including the portion of the Common Area affected) and shall note the anticipated cost and timing (indicating the portion of the Common Area affected) of such phased work during succeeding calendar years. The cost of approved "phased" work shall be paid by the Parties approving the same, or their successors or assigns, as the case may be, notwithstanding that when such work is performed a Party may not then be participating in the joint maintenance of the Common Area.

If an Approving Party disapproves the proposed Budget, it shall consult with the other Approving Party and Operator to establish a final approved Budget. If a Budget is not approved by December 1st of any calendar year, Operator shall have the right to terminate its maintenance obligation with respect to the Common Area by notice given prior to December 10th of such calendar year to the Approving Parties. If such notice is given, commencing on the following January 1st, such Approving Party that disapproves the proposed Budget shall maintain and operate the Common Area for the current year at a Common Area Maintenance Cost that does not exceed the amount set forth in the proposed Budget that such Approving Party refused to approve. Approval of the Budget, or any of the line items comprising a part thereof, shall not be considered a waiver of a Party's right to audit and/or contest, challenge or dispute the Reconciliation.

Operator shall use its diligent, good faith efforts to operate and maintain the Common Area in accordance with the Budget. Operator shall not have the right to increase to a material extent the level of service contemplated by the Budget without the prior approval of the Approving Parties, except to the extent required by reason of an emergency. Notwithstanding the foregoing, Operator shall have the right to make emergency repairs to the Common Area to prevent injury or damage to Persons or property, it being understood that Operator shall nevertheless advise each Party of such emergency condition as soon as reasonably possible, including the corrective measures taken and the cost thereof. If the cost of the emergency action exceeds $10,000.00 in Constant Dollars, then Operator shall submit a supplemental billing to each Party, together with evidence supporting such cost, and each Party shall pay its share thereof within thirty (30) days after receipt of such billing. If the cost limitation set forth above is not exceeded, then such costs shall be included as part of the Common Area Maintenance Costs for that year.

(D) Allocation of Common Area Maintenance Costs and the Administration Fee.

Subject to the terms of this Section 5.2(D), the Kingsbridge Site Owner's share of Common Area Maintenance Costs and the Administration Fee shall be a fraction (expressed as a percentage), the numerator of which is the number of square feet of Floor Area in the Buildings

on the Kingsbridge Site, and the denominator of which is the number of square feet of Floor Area in all of the Buildings on the Site, except that for the Common Area Maintenance Costs and the Administration Fee that are associated with the maintenance, operation, repair or replacement of the New Parking Facility, the Kingsbridge Site Owner's share thereof shall be a fraction (expressed as a percentage), the numerator of which is the excess (if any) of (A) the number of parking spaces that applicable Governmental Requirements require to service the Primary Floor Area for the Kingsbridge Site (assuming that such Primary Floor Area is used for general retailing), over (B) the number of parking spaces that are available on the grade of the Kingsbridge Site to satisfy the parking spaces that are required by Governmental Requirements as described in clause (A) above, and the denominator of which is the number of parking spaces that is included in the New Parking Facility.

In the event an existing Parcel is divided, the Party causing such division shall, at its expense, prorate the allocation of Common Area Maintenance Costs and the Administration Fee attributable to the original Parcel between the newly created Parcels, file a recorded declaration confirming such allocation and deliver a copy of such declaration to Operator and each other Party. Each Party shall pay to the Operator in equal monthly payments, in advance, the share of the Common Area Maintenance Costs and the Administration Fee attributable to such Party's Parcel based either upon the amount set forth in the approved Budget or, if a Budget is not approved, then the lesser of the amount set forth in the unapproved Budget or the monthly payment established for such Party for the prior year. Within sixty (60) days after the end of each calendar year, Operator shall provide each Party with a statement certified by an authorized Person, together with supporting invoices and other materials setting forth the actual Common Area Maintenance Costs paid by Operator for the operation and maintenance of the Common Area (such statement and supporting data are collectively called the "Reconciliation"), the Administration Fee, and the share of the aggregate thereof that is attributable to each Party's Parcel. The Reconciliation shall separately identify cost categories specified in Section 5.2(A) hereof and Section 5.2(C) hereof, and shall be in a form reasonably acceptable to the Approving Parties. If the amount paid with respect to a Parcel for such calendar year shall have exceeded the share allocable to such Parcel, Operator shall refund by check the excess to the Party owning such Parcel at the time the Reconciliation is delivered, or if the amount paid with respect to a Parcel for such calendar year shall be less than the share allocable to such Parcel, the Party owning such Parcel at the time such Reconciliation is delivered shall pay the balance of such Party's share to Operator within thirty (30) days after receipt of such Reconciliation, less any amounts disputed in writing. If Operator does not refund amounts shown by the Reconciliation to be owed a Party, then such Party may offset the refund owed, plus Interest, against payments for Common Area Maintenance Costs and Administration Fee due for any future period. Notwithstanding anything contained herein to the contrary, if during a calendar year the Operator resigns or is replaced, the replacement Operator shall be responsible for the Reconciliation adjustments, including any reimbursement due to a Party for such calendar year.

Within three (3) years after the date of receipt of a Reconciliation, each Party shall have the right to audit Operator's books and records pertaining to the operation and maintenance of the Common Area for the calendar year covered by such Reconciliation. A Party shall notify Operator of such Party's intent to audit at least fifteen (15) days prior to the designated audit date. If such audit shall disclose any error in the determination of the Common Area

Maintenance Costs, the Administration Fee or any allocation thereof to a particular Parcel, the auditing Party shall provide Operator with a copy of the audit, and an appropriate adjustment shall be made forthwith. The cost of any audit shall be assumed by the auditing Party unless such Party shall be entitled to a refund in excess of three percent (3%) of the amount calculated by Operator as such Party's share for the applicable calendar year, in which case Operator shall pay the cost of such audit. If Operator does not respond to the results of such audit within ninety (90) days after receipt of the audit, then the auditing Party shall have the right to offset the refund claimed, plus Interest, from the date Operator receives the audit, plus costs of the audit if appropriate, against subsequent payments due Operator; provided, however, Operator shall retain the right to dispute the results of such audit for a period of eighteen (18) months following receipt of such audit.

(E) Liens.

Operator agrees to defend, indemnify and hold each Party harmless from and against any mechanic's, materialmen's and/or laborer's liens, and all costs, expenses and liabilities in connection therewith, including reasonable attorney's fees and court costs, arising out of the maintenance and operation by Operator of the Common Area, and if any Parcel shall become subject to any such lien, Operator shall promptly cause such lien to be released and discharged of record, either by paying the indebtedness which gave rise to such lien or by posting such bond or other security as shall be required by law to obtain such release and discharge.

(F) Casualty to the Common Area.

Subject to the provisions of Section 3.2(C) hereof regarding Common Utility Lines, if any portion of the Common Area is damaged or destroyed by any cause whatsoever, whether insured or uninsured, during the term of this OEA (including, without limitation, the structural supports for the Common Area that constitutes the New Parking Facility), other than damage caused by ordinary use or wear and tear, the Party upon whose Parcel such Common Area is located shall repair or restore such Common Area at its sole cost and expense with all due diligence; provided, however, that no Party shall be required to expend more than $250,000 in Constant Dollars in excess of insurance proceeds which may be available (or which would have been available except for such Party's election of deductibles or self-insurance, which amount such the Party shall be responsible to contribute) for such repair or restoration. Notwithstanding the limitation set forth in the preceding sentence, a Party may require another Party to do such restoration work if the requiring Party has agreed in writing to pay the costs in excess of $250,000.00. Except to the extent limited by Section 6.4(D) hereof, if such damage or destruction of Common Area on its Parcel is caused in whole or in part by another Party or a third Person, the Party obligated to make such repair or restoration reserves and retains the right to proceed against such other Party or third Person for indemnity, contribution and/or damages.

5.3. Building Maintenance and Restoration.

(A) Maintenance.

After the Project is Substantially Completed, each Party covenants and agrees to maintain and keep the exterior portion of the Buildings, if any, located on its Parcel in first-class condition and state of repair, in compliance with all Governmental Requirements, and in compliance with the provisions of this OEA. Each Party further agrees to store all trash and garbage on its Parcel in adequate containers, to locate such containers so that they are not readily visible from the parking area, and to arrange for regular removal of such trash or garbage.

(B) Casualty.

In the event any of the Buildings in the Site are damaged by fire or other casualty (whether insured or not), the Party upon whose Parcel such Building is located shall, subject to Governmental Requirements and/or insurance adjustment delays, immediately remove the debris resulting from such casualty and provide a sightly barrier, and within a reasonable time thereafter shall either (i) repair or restore the Building so damaged to a complete unit, such repair or restoration to be performed in accordance with all provisions of this OEA, or (ii) erect another Building in such location, such construction to be performed in accordance with all provisions of this OEA, or (iii) demolish the damaged portion and/or the balance of such Building and restore the cleared area to either a hard surface condition or a landscaped condition in which event the area shall be Common Area until a replacement Building is erected. Such Party shall have the option to choose which of the foregoing alternatives to perform, but such Party shall be obligated to perform one (1) of such alternatives. Such Party shall give notice to each other Party within ninety (90) days from the date of such casualty of which alternative such Party elects. A Party's election to proceed under clause (iii) above shall not permit a Party to remove the structural supports for the New Parking Facility (it being understood that the applicable Party shall in any case restore such structural supports as part of the restoration of the Common Area in the New Parking Facility pursuant to Section 5.2(F) hereof).

6. Operation of the Site.

6.1. Uses.

(A) In General.

The Target Parcel, during the Term, may be used only for retail sales, Restaurant and/or office purposes. The Kingsbridge Parcel, during the Term, may be used only for retail sales, Restaurant and/or office purposes. The Western Parcel, during the Term, may be used only for retail sales, Restaurant, office, educational, religious, medical, or storage purposes. Nothing contained in this Section 6.1(A) limits the terms of Section 6.1(B) hereof or Section 6.1(C) hereof.

(B) Limitations for the Kingsbridge Parcel and the Target Parcel.

The following uses shall not be permitted on the Kingsbridge Parcel or the Target Parcel during the Term (from and after the date that the existing improvements on the Site are demolished as contemplated by the Development Agreement):

(a) Any use which emits an odor, noise or sound which (i) can be heard or smelled outside of any Building, and (ii) violates the community standards of the Riverdale area.

(b) An operation primarily used for an assembling, manufacturing, distilling, refining, smelting, agricultural or mining operation.

(c) Any "second hand" store (such as a thrift shop for The Salvation Army or Goodwill Industries), army-navy "surplus" store, or pawn shop.

(d) Any mobile home park, trailer court, labor camp, junkyard, or stockyard; provided, however, this prohibition shall not be applicable to the temporary use of construction trailers during periods of construction, reconstruction or maintenance.

(e) Any dumping, disposing, incineration or reduction of garbage; provided, however, this prohibition shall not be applicable to garbage compactors located near the rear of any Building.

(f) Any fire sale, bankruptcy sale (unless pursuant to a court order) or auction house operation.

(g) Any central laundry, dry cleaning plant or laundromat; provided, however, this prohibition shall not be applicable to nominal supportive facilities for on-site service oriented to pickup and delivery by the ultimate consumer as the same may be found in retail Sites in the New York metropolitan area.

(h) Any automobile, truck, trailer or recreational vehicle sales, leasing, display or body shop repair operation which stores vehicles outside of any Building (it being understood that an automobile showroom operation that displays vehicles inside of a Building shall not violate this clause (h)).

(i) Any bowling alley or skating rink.

(j) Any movie theater or live performance theater.

(k) Any hotel, motel, short or long term residential use, including but not limited to: single family dwellings, townhouses, condominiums, other multi-family units, and other forms of living quarters, sleeping apartments or lodging rooms.

(l) Any veterinary hospital or animal raising or boarding facility; provided, however, this prohibition shall not be applicable to pet shops. Notwithstanding the forgoing exception, any veterinary or boarding services provided in connection with the operation of a pet shop shall only be incidental to such operation; the boarding of pets as a separate customer service shall be prohibited; all kennels, runs and pens shall be located inside the Building; and the combined incidental veterinary and boarding facilities shall occupy no more than fifteen percent (15%) of the Floor Area of the pet shop.

(m) Any mortuary or funeral home.

(n) Any establishment selling or exhibiting pornographic materials or which sells drug-related paraphernalia or which exhibits either live or by other means to any degree, nude or partially clothed dancers or wait staff and/or any massage parlors or similar establishments (it being understood that a reputable first-class bookstore such as Barnes & Noble shall not violate the provisions of this clause merely because such bookstore stocks an insignificant amount of material that, viewed alone, may constitute pornography, provided that such bookstore, as a whole, is a reputable first-class establishment).

(o) Any bar, tavern, Restaurant or other establishment whose reasonably projected annual gross revenues from the sale of alcoholic beverages for on-premises consumption exceeds thirty percent (30%) of the gross revenues of such business.

(p) Any health spa, fitness center or workout facility.

(q) Any flea market, amusement or video arcade, pool or billiard hall, car wash or dance hall.

(r) Any training or educational facility, including but not limited to: beauty schools, barber colleges, reading rooms, places of instruction or other operations catering primarily to students or trainees rather than to customers; provided, however, this prohibition shall not be applicable to on-site employee training by an Occupant incidental to the conduct of its business at the Site.

(s) Any gambling facility or operation, including but not limited to: off-track or sports betting parlor; table games such as blackjack or poker; slot machines, video poker/blackjack/keno machines or similar devices; or bingo hall. Notwithstanding the foregoing, this prohibition shall not be applicable to government sponsored gambling activities or charitable gambling activities, so long as such activities are incidental to the business operation being conducted by the Occupant.

(t) Any Restaurant that occupies more than ten thousand (10,000) square feet of Floor Area.

(C) Limitations for the Western Parcel.

The uses described in clauses (a), (b), (c), (d), (e), (f), (h), (i), (j), (n), and (q) of Section 6.1(B) hereof shall not be permitted on the Western Parcel.

(D) Hazardous Materials.

No Party shall use, or permit the use of, Hazardous Materials on, about, under or in its Parcel, except in the ordinary course of its usual business operations conducted therein, and any such use shall at all times be in compliance with all Environmental Laws. Each Party agrees to defend, protect, indemnify and hold harmless each other Party from and against all claims or demands, including any action or proceeding brought thereon, and all costs, losses, expenses and liabilities of any kind relating thereto, including but not limited to costs of investigation, remedial or removal response, and reasonable attorneys' fees and cost of suit, arising out of or resulting

from any Hazardous Material used or permitted to be used by such Party, whether or not in the ordinary course of business.

For the purpose of this Section 6.1(D), the term (i) "Hazardous Materials" shall mean and refer to the following: petroleum products and fractions thereof, asbestos, asbestos containing materials, urea formaldehyde, polychlorinated biphenyls, radioactive materials and all other dangerous, toxic or hazardous pollutants, contaminants, chemicals, materials, substances and wastes listed or identified in, or regulated by, any Environmental Law, and (ii) "Environmental Laws" shall mean and refer to the following: all Governmental Requirements which relate to or deal with human health or the environment, all as may be amended from time to time.

(E) Common Area.

No merchandise, equipment or services, including but not limited to vending machines, promotional devices and similar items, shall be displayed, offered for sale or lease, or stored within the Common Area; provided, however, the foregoing prohibition shall not be applicable to (i) the storage of shopping carts or the installation of an "ATM" banking facility; (ii) the seasonal display and sale of bedding plants on the sidewalk in front of any Building, (iii) temporary promotions, except that no promotional activities will be allowed in the Common Area without the prior written approval of the Approving Parties, or (iv) any recycling center required by law, the location of which shall be subject to the approval of the Approving Parties. Except to the extent required by Governmental Requirements, no Permittee shall be charged for the right to use the Common Area (unless the Approving Parties otherwise agree); provided, however, that for the purposes of this provision, a tax assessment or other form of charge applicable to parking spaces or parking lots shall be deemed approved by the Approving Parties as an imposition required by Governmental Requirements.

(F) Site Name.

The names "Target", "Greatland", "SuperTarget" or any variation using the name "Target" shall not be used to identify the Site or any business or trade conducted on the Kingsbridge Site.

(G) No Operating Covenants.

This OEA is not intended to, and does not, create or impose any obligation on a Party to operate, continuously operate, or cause to be operated a business or any particular business at the Site or on any Parcel.

6.2. Lighting.

(A) In General.

After completion of the Common Area lighting system on its Parcel, each Party hereby covenants and agrees to cause the Operator to keep such Common Area fully illuminated from dusk to at least 11:00 P.M. unless the Approving Parties agree upon a different time.

35

Kingsbridge and Target acknowledge that the Common Area lighting system for the New Parking Facility and the Adjacent Common Area Improvements shall be constructed as part of the Project in accordance with the terms of the Development Agreement. During the term of this OEA, each Party grants an irrevocable license to each other Party for the purpose of permitting the lighting from one Parcel to incidentally shine on the adjoining Parcel.

(B) Overtime Lighting.

It is recognized that Occupants in the Site may be open for business at different hours, and that a Party may wish to have the Common Area lights on another Parcel be illuminated before or after the required time period. Accordingly, a Party ("Requesting Party") shall have the right, at any time, to require the Operator to keep the Common Area lights it controls operating as stipulated by the Requesting Party, provided that the Requesting Party notifies the Operator of such request not less than fifteen (15) days in advance. The Requesting Party shall state the period during which it wishes such Common Area lights to be kept operating and shall pay to the Operator a prepayment as follows:

(a) If the period is less than thirty (30) days, then the prepayment shall be one hundred ten percent (110%) of the reasonable cost for such additional operation (including electrical power, bulbs and manpower), as estimated by the Operator; and

(b) If the period is thirty (30) days or longer, then the prepayment shall be one hundred ten percent (110%) of the reasonable cost for such additional operation (including electrical power, bulbs and manpower) for thirty (30) days, as estimated by the Operator, and the Requesting Party shall renew such prepayment at the end of each thirty (30) day period.

If the Requesting Party is of the opinion that the estimated prepayment established by the Operator is greater than one hundred ten percent (110%) of such additional operation, the Parties shall attempt to agree upon the cost of such additional operation but if they cannot do so, then the amount the Requesting Party is obligated to pay shall be estimated by the electrical utility company furnishing such power, or if the electrical utility company elects not to do so, by a reputable electrical engineer. The Requesting Party or the Operator shall have the right to institute an Expedited Arbitration Proceeding for the purpose of designating such electrical engineer. Upon the failure of a Requesting Party to pay the estimated amount or renew a prepayment as required hereby, the Operator shall have the right to discontinue such additional lighting and to exercise any other remedies herein provided. Any such request for additional lighting may be withdrawn or terminated at any time by notice from the Requesting Party, and a new request or requests for changed hours of additional operation may be made from time to time.

6.3. Signs.

(A) General Limitations.

Subject to Section 4.2(E) hereof, no identification sign attached to the exterior of a Building shall be:

(a) Placed on canopy roofs extending above the Building roof, placed on penthouse walls, or placed so as to project above the parapet, canopy or top of the wall upon which it is mounted.

(b) Placed at any angle to the Building; provided, however, the foregoing shall not apply to any sign located under a sidewalk canopy if such sign is at least eight (8) feet above the sidewalk.

(c) Painted on the surface of any Building.

(d) Flashing, moving or audible.

(e) Made utilizing exposed raceways, exposed neon tubes, exposed ballast boxes, or exposed transformers.

(f) Made of paper or cardboard, or be temporary in nature (except as otherwise provided in this Section 6.3), or be a sticker or decal; provided, however, the foregoing shall not prohibit the placement at the entrance of each Occupant's space of a small sticker or decal indicating hours of business, emergency telephone numbers, acceptance of credit cards and other similar items of information.

(B) Temporary Leasing and Contractor's Signs

Notwithstanding anything contained herein to the contrary, each Party shall be permitted to place within the Common Area located on its Parcel the temporary display of leasing information and the temporary erection of one (1) sign identifying each contractor working on a construction job on its Parcel. Each Party shall have the obligation to operate, maintain and repair, in a clean, sightly and safe condition, all signs, including components thereof, that are located upon its Parcel.

(C) Other Temporary Signs

No Party shall have the right to install temporary banners on any Building unless (x) any such banner remains installed for less than thirty (30) days, and (y) any such banner is professionally prepared and consistent with the nature of the Kingsbridge Parcel and Target Parcel as a first-class retail center.

6.4. Insurance

(A) Insurance to be Obtained by the Operator.

During the period that the Operator is maintaining the Common Area, Operator shall maintain or cause to be maintained in full force and effect at least the minimum insurance coverages in Constant Dollars set forth below:

(a) Commercial General Liability Insurance covering the Common Area with a combined single limit of liability of Ten Million Dollars ($10,000,000.00) for bodily

injury, personal injury and property damage, arising out of any one occurrence; each Party shall be a "named insured" under such policy. Each Indemnitee of each Party shall be named as an "additional insured" under such policy. The Parties agree that the insurance maintained by Operator shall be primary insurance and not contributory with the insurance maintained by each of the Parties pursuant to Section 6.4(B) hereof, or any other insurance maintained by any of the Parties.

(b) Workers' Compensation and Employer's Liability Insurance:

(1) Worker's compensation insurance as required by any applicable law or regulation.

(2) Employer's liability insurance in the amount of $1,000,000 for each accident for bodily injury, $1,000,000 policy limit for bodily injury by disease and $1,000,000 each employee for bodily injury by disease.

(c) Automobile Liability Insurance for owned, hired and non-owned automobiles. The limits of liability shall not be less than $1,000,000 combined single limit each accident for bodily injury and property damage.

Operator agrees to defend, protect, indemnify and hold harmless each Party from and against all claims or demands, including any action or proceeding brought thereon, and all costs, losses, expenses and liabilities of any kind, including reasonable attorneys' fees and cost of suit, asserted or incurred in connection with or arising out of the performance, or failure to perform, by Operator of its duties or obligations under this OEA with respect to the maintenance and operation of the Common Area; provided, however, the foregoing obligation shall not apply to claims or demands based on the negligence or the willful act or omission of the Party to be indemnified. In the event it is determined that such Party was not at fault, then the Operator shall reimburse such other Party for all reasonable expenses and/or costs incurred by such Party defending against such claim or demand.

(B) Insurance to be Obtained by the Parties.

Each of the Target Parcel Owner and the Kingsbridge Parcel Owner (in either case as to its Parcel only) shall maintain or cause to be maintained in full force and effect at least the minimum insurance coverages in Constant Dollars set forth below:

(a) Commercial General Liability Insurance with a combined single limit of liability of Ten Million Dollars ($10,000,000.00) in Constant Dollars for bodily injury, personal injury and property damage, arising out of any one occurrence; the other Parties shall be "additional insureds" under such policy as it applies to the insuring Party's Parcel. Each Party agrees to look first to the insurance coverage obtained by Operator pursuant to Section 6.4(A) hereof, and to exhaust all limits thereof before making any claim, other than to preserve rights if coverage under Section 6.4(A) is inadequate, under the insurance carried by another Party hereunder.

(b) Workers' compensation and employer's liability insurance:

38

(1) Worker's compensation insurance as required by any applicable law or regulation.

(2) Employer's liability insurance in the amount of $1,000,000 each accident for bodily injury, $1,000,000 policy limit for bodily injury by disease and $1,000,000 each employee for bodily injury by disease.

(c) Automobile Liability Insurance for owned, hired and non-owned automobiles. The limits of liability shall not be less than $1,000,000 combined single limit each accident for bodily injury and property damage.

Each Party agrees to defend, protect, indemnify and hold harmless each other Party from and against all claims or demands, including any action or proceedings brought thereon, and all costs, losses, expenses and liability of any kind relating thereto, including reasonable attorneys' fees and cost of suit, arising out of or resulting from the injury to or death of any Person, or damage to the property of any Person located on the Parcel owned by each indemnifying Party; provided, however, the foregoing obligation shall not apply to claims or demands based on the negligence or willful act or omission of such other Party, its licensees, concessionaires, agents, servants, or employees, or the agents, servants, or employees of any licensee or concessionaire thereof. In the event it is determined that such other Party was not at fault, then the indemnifying Party shall reimburse such other Party for all reasonable costs and/or expenses incurred by it defending against such claim or demand.

(C) Insurance for Construction.

Prior to commencing any construction activities within the Target Parcel or the Kingsbridge Parcel, the applicable Party and Operator shall obtain or require its contractor to obtain and thereafter maintain so long as such construction activity is occurring, at least the minimum insurance coverages in Constant Dollars set forth below (it being understood that Kingsbridge and Target intend to require the Construction Company to obtain the insurance coverage described below in connection with the construction of the Project):

(a) Workers' compensation and employer's liability insurance:

(b) Worker's compensation insurance as required by any applicable law or regulation.

(c) Employer's liability insurance in the amount of $1,000,000 each accident for bodily injury, $1,000,000 policy limit for bodily injury by disease and $1,000,000 each employee for bodily injury by disease.

(d) Commercial General Liability insurance covering all operations by or on behalf of the contractor, which shall include the following minimum limits of liability and coverages:

(1) Required coverages:

39

(a) Premises and Operations.

(b) Products and Completed Operations.

(c) Contractual Liability, insuring the indemnity obligations assumed by contractor under the contract documents.

(d) Broad Form Property Damage (including Completed Operations).

(e) Explosion, Collapse and Underground Hazards.

(f) Personal Injury Liability.

(2) Minimum limits of liability:

(a) $1,000,000 each occurrence (for bodily injury and property damage).

(b) $1,000,000 for Personal Injury Liability.

(c) $2,000,000 aggregate for Products and Completed Operations.

(d) $2,000,000 general aggregate applying separately to this project.

(e) Automobile liability insurance including coverage for owned, hired and non-owned automobiles. The limits of liability shall not be less than $1,000,000 combined single limit each accident for bodily injury and property damage. The contractor shall require each of his subcontractors to include in their liability insurance policies coverage for automobile contractual liability.

(f) The contractor shall also carry umbrella/excess liability insurance in the amount of $5,000,000. If there is no per project aggregate under the Commercial General Liability policy, the limit shall be $10,000,000.

If the construction activities involve the use of another Parcel, then the constructing Party shall cause (x) the owner of such other Parcel to be an additional insured on each policy (for the Commercial General Liability policy pursuant to a CG 2010 11-85 version Form B endorsement, or equivalent), and (y) each such policy to provide that the same shall not be cancelled, allowed to expire, nor reduced in amount or coverage below the requirements set forth above without at least thirty (30) days prior notice to each insured. If any of the insurance policies are cancelled, expire or the amount or coverage thereof is reduced below the level

40

required, then the constructing Party shall immediately stop all work on and use of the other Parcel until either the required insurance is reinstated, or replacement insurance is obtained, and evidence thereof is given to the Party that owns such other Parcel.

(D) Property Insurance.

Effective upon the Substantial Completion of the Project and so long as such Building exists, a Party shall carry, or cause to be carried, property insurance with "Special Form" coverage, in the amount of one hundred percent (100%) of full replacement cost thereof (excluding footings, foundations and excavations). Kingsbridge and Target intend that during the construction of the Project, the Construction Company will carry builder's risk insurance for the Project as determined by the Parties in accordance with the terms of the Development Agreement.

Each Party (the "<u>Releasing Party</u>") hereby releases and waives for itself, and each Person claiming by, through or under it, each other Party (the "<u>Released Party</u>") from any liability for any loss or damage to all property of such Releasing Party located upon any portion of the Site, which loss or damage is of the type covered by the insurance required to be maintained under this Section 6.4(D), irrespective of the amount of such insurance required or actually carried, including any deductible or self insurance reserve. Each Releasing Party agrees to use its reasonable efforts to obtain, if needed, appropriate endorsements to its policies of insurance, and to the policies of insurance carried by its Occupants, with respect to the foregoing release; provided, however, that failure to obtain such endorsements shall not affect the release and waiver hereinabove given.

Each Party agrees to defend, protect, indemnify and hold harmless each other Party from and against all claims or demands, including any action or proceeding brought thereon, and all costs, losses, expenses and liabilities of any kind relating thereto, including reasonable attorneys' fees and cost of suit asserted by or through any Occupant of the indemnifying Party's Parcel for any loss or damage to the property of such Occupant located upon the indemnifying Party's Parcel, which loss or damage would have been covered by the insurance required to be maintained under Section 6.4(D).

(E) General Insurance Requirements.

All insurance required by this Section 6.4 shall be written on an occurrence basis and procured from companies rated by Best's Rating Guide not less than A-/X which are authorized to do business in New York State. All insurance may be provided under (i) an individual policy covering the Site, (ii) a blanket policy or policies which includes other liabilities, properties and locations of such Party; provided, however, that if such blanket commercial general liability insurance policy or policies contain a general policy aggregate of less than $20,000,000 in Constant Dollars, then such insuring Party shall also maintain excess liability coverage necessary to establish a total liability insurance limit of $20,000,000 in Constant Dollars, (iii) a plan of self-insurance, provided that any Party so self-insuring notifies the other Parties of its intent to self-insure and agrees that upon request it shall deliver to such other Parties each calendar year a copy of its annual report that is audited by an independent

41

certified public accountant which discloses that such Party has $250,000,000 in Constant Dollars of both tangible net worth and net current assets (determined in either case in accordance with generally accepted accounting principles), or (iv) a combination of any of the foregoing insurance programs. To the extent any deductible is permitted or allowed as a part of any insurance policy carried by a Party in compliance with Section 6.4, such Party shall be deemed to be covering the amount thereof under an informal plan of self-insurance; provided, however, that in no event shall any deductible exceed $50,000.00 in Constant Dollars unless such Party complies with the requirements regarding self-insurance pursuant to clause (iii) above. Each Party and Operator, if any, agree to furnish to any Party requesting the same, a certificate(s) of insurance, or statement of self-insurance, as the case may be, or the Web address where such insurance information is contained, evidencing that the insurance required to be carried by such Party or Operator, as the case may be, is in full force and effect.

The insurance required pursuant to Section 6.4(A) hereof and Section 6.4(B) hereof shall include the following provisions:

(a) Shall provide that the policy shall not be canceled or reduced in amount or coverage below the requirements of this OEA, nor shall such policy be allowed to expire without at least thirty (30) days prior written notice by the insurer to each insured and to each additional insured.

(b) Shall provide for severability of interests.

(c) Shall provide that an act or omission of one (1) of the insureds or additional insureds which would void or otherwise reduce coverage, shall not reduce or void the coverage as to the other insureds.

(d) Shall provide for contractual liability coverage with respect to the indemnity obligation set forth in Section 6.4(A) hereof for the Operator and Section 6.4(B) hereof for a Party.

6.5. Taxes and Assessments

Each Party shall pay, or cause to be paid prior to delinquency, all Taxes with respect to its Parcel, the Building, and other improvements located thereon, and any personal property owned or leased by such Party at the Site, provided that if such taxes or assessments or any part thereof may be paid in installments, each Party may pay each such installment as and when the same becomes due and payable. Nothing contained herein shall prevent any Party from contesting at its cost and expense any taxes and assessments with respect to its Parcel in any manner such Party elects, so long as such contest is maintained with reasonable diligence and in good faith. At the time such contest is concluded (allowing for appeal to the highest appellate court), the contesting Party shall promptly pay all taxes and assessments determined to be owing, together with all interest, penalties and costs thereon. Nothing contained in this Section 6.5 limits the provisions of the Development Agreement.

7. Additional Provisions.

    7.1. Default

        (A) In General.

        Subject to Section 7.12 hereof, the occurrence of any one or more of the following events shall constitute a material default and breach of this OEA by the non-performing Party (the "Defaulting Party"):

           (a) The failure to make any payment required to be made hereunder within ten (10) days after the due date.

           (b) The failure to observe or perform any of the covenants, conditions or obligations of this OEA, other than as described in (i) above, within thirty (30) days after the issuance of a notice by another Party or Operator, as the case may be (the "Non-Defaulting Party") specifying the nature of the default claimed.

        (B) Self-Help Remedy.

        With respect to any default under Section 6.1(A), any Non-Defaulting Party shall have the right following the expiration of any applicable cure period, if any, but not the obligation, to cure such default by the payment of money or the performance of some other action for the account of and at the expense of the Defaulting Party; provided, however, that in the event such default shall constitute an emergency condition, the Non-Defaulting Party, acting in good faith, shall have the right to cure such default upon such advance notice as is reasonably possible under the circumstances or, if necessary, without advance notice, so long as notice is given as soon as possible thereafter.  To effectuate any such cure, the Non-Defaulting Party shall have the right to enter upon the Parcel of the Defaulting Party (but not into any Building) to perform any necessary work or furnish any necessary materials or services to cure the default of the Defaulting Party.  Each Party shall be responsible for the default of its Occupants.  In the event any Non-Defaulting Party shall cure a default, the Defaulting Party shall reimburse the Non-Defaulting Party for all costs and expenses incurred in connection with such curative action, plus Interest as provided herein, within ten (10) days after receipt of demand therefor, together with reasonable documentation supporting the expenditures made.

        The right to cure the default of another Party shall not be deemed to:

           (a) Impose any obligation on a Non-Defaulting Party to do so.

           (b) Render the Non-Defaulting Party liable to the Defaulting Party or any third party for an election not to do so.

           (c) Relieve the Defaulting Party from any performance obligation hereunder.

(d) Relieve the Defaulting Party from any indemnity obligation as provided in this OEA.

(C) Lien.

Costs, expenses and interest accruing and/or assessed pursuant to Section 7.1(A)(a) hereof and/or Section 7.1(B) hereof shall constitute a lien against the Defaulting Party's Parcel; provided, however, that if (a) a mortgage that is held by a Mortgagee then encumbers such Parcel, and (b) the Mortgagee is an institutional lender that is not an Affiliate of the Party that owns such Parcel, then such lien shall be subordinate to the lien of such mortgage. Such lien shall attach and take effect only upon recordation of a claim of lien in the office of the Register of The City of New York by the Party making such claim. The claim of lien shall include the following:

(a) The name of the lien claimant.

(b) A statement concerning the basis for the claim of lien and identifying the lien claimant as a Non-Defaulting Party.

(c) An identification of the owner or reputed owner of the Parcel or interest therein against which the lien is claimed.

(d) A description of the Parcel against which the lien is claimed.

(e) A description of the work performed which has given rise to the claim of lien and a statement itemizing the amount thereof.

(f) A statement that the lien is claimed pursuant to the provisions of this OEA, reciting the date and document number of recordation hereof. The notice shall be duly verified, acknowledged and contain a certificate that a copy thereof has been sent to the Party against whom the lien is claimed in accordance with Section 7.7 hereof. The lien so claimed shall attach from the date of recordation solely in the amount claimed thereby and may be enforced in any judicial proceedings allowed by law, including without limitation, a suit in the nature of a suit to foreclose a mortgage or mechanic's lien under the applicable provisions of the law of the State of New York.

(D) Other Remedies.

Each Non-Defaulting Party shall have the right to prosecute any proceedings at law or in equity against any Defaulting Party hereto, or any other Person, violating or attempting to violate or defaulting upon any of the provisions contained in this OEA, and to recover damages for any such violation or default. Such proceeding shall include the right to restrain by injunction any violation or threatened violation by another Party or Person of any of the terms, covenants or conditions of this OEA, or to obtain a decree to compel performance of any such terms, covenants or conditions, it being agreed that the remedy at law for a breach of any such term, covenant or condition (except those, if any, requiring the payment of a liquidated sum) is not adequate. All of the remedies permitted or available to a Party under this OEA or at law or in

44

equity shall be cumulative and not alternative, and the invocation of any such right or remedy shall not constitute a waiver or election of remedies with respect to any other permitted or available right or remedy.

### 7.2. Interest

Any time a Party or Operator, if any, shall not pay any sum payable hereunder to another Party within five (5) days of the due date, such delinquent Party or Operator shall pay interest ("Interest") on such amount from the due date to and including the date such payment is received by the Party entitled thereto, at the lesser of:

(a) The highest rate permitted by law to be either paid on such type of obligation by the Party obligated to make such payment or charged by the Party to whom such payment is due, whichever is less.

(b) The Prime Rate, plus three percent (3%). As used herein, "Prime Rate" shall mean the rate of interest published from time to time as the "Prime Rate" in the Wall Street Journal under the heading "Money Rates"; provided, however, that (i) if more than one such rate is published therein the prime rate shall be the highest such rate and (ii) if such rate is no longer published in the Wall Street Journal or is otherwise unavailable, the prime rate shall be a substantially comparable index of short term loan interest rates charged by U.S. banks to corporate borrowers selected by the Approving Parties.

### 7.3. Estoppel Certificate

Each Party and Operator, if any, agree that upon written request (which shall not be more frequent than three (3) times during any calendar year) of any other Party or Operator, it will issue within thirty (30) days after receipt of such request to such Party, or its prospective mortgagee, lessee or successor, an estoppel certificate stating to the best of the issuer's knowledge as of such date:

(a) Whether it knows of any default under this OEA by the requesting Party, and if there are known defaults, specifying the nature thereof in reasonable detail.

(b) Whether this OEA has been assigned, modified or amended in any way by it and if so, then stating the nature thereof in reasonable detail.

(c) Whether this OEA is in full force and effect.

Such estoppel certificate shall act to estop the issuer from asserting a claim or defense against a bona fide encumbrancer or purchaser for value to the extent that such claim or defense is based upon facts known to the issuer as of the date of the estoppel certificate which are contrary to the facts contained therein, and such bona fide purchaser or encumbrancer has acted in reasonable reliance upon such estoppel certificate without knowledge of facts to the contrary. The issuance of an estoppel certificate shall in no event subject the issuer to any liability for the negligent or inadvertent failure of the issuer to disclose correct and/or relevant information, nor shall such issuance be construed to waive any rights of the issuer to perform an audit or obtain an

adjustment with respect to Common Area Maintenance Costs for any year it is entitled to do so, or to challenge acts committed by other Parties for which approval by the Approving Parties was required but not sought or obtained.

### 7.4. Approval Rights

#### (A) Sole Discretion.

Except as otherwise expressly provided herein, with respect to any matter as to which a Party has specifically been granted an approval right under this OEA, nothing contained in this OEA shall limit the right of a Party to exercise its business judgment, or act in a subjective manner, or act in its sole discretion or sole judgment, whether or not "objectively" reasonable under the circumstances, and any such decision shall not be deemed inconsistent with any covenant of good faith and fair dealing which may be implied by law to be part of this OEA. The Parties intend by this OEA to set forth their entire understanding with respect to the terms, covenants, conditions and standards pursuant to which their obligations are to be judged and their performance measured.

#### (B) Response Period.

Unless provision is made for a specific time period, each response to a request for an approval or consent required to be considered pursuant to this OEA shall be given by the Party to whom directed within thirty (30) days after receipt thereof. Each disapproval shall be in writing and, subject to Section 7.4(A) hereof, the reasons therefor shall be clearly stated. If a response is not given within the required time period, the requested Party shall be deemed to have given its approval if the original notice stated in capitalized letters that failure to respond within the applicable time period will be deemed an approval. Notwithstanding anything contained herein to the contrary, the provisions of this Section 7.4(B) do not apply in any manner or fashion to any request which requires an amendment to this OEA, such requests being governed solely by the provisions of Section 7.9(E) hereof.

#### (C) Approving Parties.

If the Approving Parties' approval is requested, unanimous approval must be given.

### 7.5. Condemnation

In the event any portion of the Site shall be condemned, or conveyed under threat of condemnation, the award shall be paid to the Party owning the Parcel or the improvements taken, and the other Parties hereby waive and release any right to recover any value attributable to the property interest so taken, except that (i) if the taking includes improvements belonging to more than one (1) Party, such as Utility Lines or signs, the portion of the award allocable thereto shall be used to relocate, replace or restore such jointly owned improvements to a useful condition, and (ii) if the taking includes easement rights which are intended to extend beyond the term of this OEA, the portion of the award allocable to each such easement right shall be paid to the respective grantees thereof. In addition to the foregoing, if a separate claim can be filed for

46

the taking of any other property interest existing pursuant to this OEA which does not reduce or diminish the amount paid to the Party owning the Parcel or the improvement taken, then the owner of such other property interest shall have the right to seek an award for the taking thereof. Except to the extent they burden the land taken, no easement or license set forth in this OEA shall expire or terminate based solely upon such taking.

7.6. Mortgagee Protections.

Subject to the terms of this Section 7.6, each Party shall (i) give to the Mortgagee of a Defaulting Party a copy of any notice that such Party gives to such Defaulting Party regarding the default of such Defaulting Party hereunder, and (ii) accept from such Mortgagee a cure of the applicable default (to the extent that the applicable Defaulting Party has the right to cure such default hereunder). Nothing contained in this Section 7.6 limits the provisions of Section 7.13 hereof.

7.7. Notices.

Any notice that a Party desires or is required to give to another Party hereunder shall be in writing, and delivered personally (against a signed receipt), or sent by certified United States Express Mail for overnight delivery, return receipt requested, or by reputable overnight delivery service (such as Federal Express) for overnight delivery, addressed in each case as follows:

If to Target:

Target Corporation
Property Development
Attn:  Property Administration
1000 Nicollet Mall TPN-12E
Minneapolis, Minnesota  55403

With a copy to:

Target Corporation
Law Department
1000 Nicollet Mall, TPS-31
Minneapolis, Minnesota  55403
Attn:  Robert L. Nys, Esq.

If to Kingsbridge:

Kingsbridge Associates, LLC
99 Powerhouse Road, Suite 102
Roslyn Heights, New York   11577
Attn:  Mr. James Levin

REEL 2 4    Image 2 2 8 2

With a copy to:

Kingsbridge Associates, LLC
c/o Washington Square Partners
850 Third Avenue
New York, New York   10022
Attn:  Mr. Paul Travis

And with a copy to:

Proskauer Rose LLP
1585 Broadway
New York, New York   10036
Attn:  Ronald D. Sernau, Esq.

Any such notice given as aforesaid shall be deemed to be given on the date that such notice is received or rejected by the addressee.  Either Party shall have the right to change its address for purposes of this Section 7.7 from time to time by giving at least ten (10) days of advance notice thereof to the other Party.

### 7.8. Binding Effect

The terms of this OEA and all easements granted hereunder shall constitute covenants running with the land and shall bind the Parcels described herein and inure to the benefit of and be binding upon each Party.  This OEA is not intended to supersede, modify, amend or otherwise change the provisions of any prior instrument affecting the land burdened hereby.

### 7.9. Construction and Interpretation

(A) Merger.

This OEA and the Exhibits hereto contain all the representations and the entire agreement between the Parties with respect to the subject matter hereof.  Any prior negotiations, correspondence, memoranda or agreements are superseded in total by this OEA and the Exhibits attached hereto.  This OEA has been fully negotiated at arms length between the signatories hereto, and after advice by counsel and other representatives chosen by such Parties, and such Parties are fully informed with respect thereto; no such Party shall be deemed the scrivener of this OEA; and, based on the foregoing, the provisions of this OEA and the Exhibits hereto shall be construed as a whole according to their common meaning and not strictly for or against any Party.

(B) Usage.

Whenever required by the context of this OEA, (i) the singular shall include the plural, and vice versa, and the masculine shall include the feminine and neuter genders, and vice versa, and (ii) use of the words "including", "such as", or words of similar import, when

following any general term, statement or matter shall not be construed to limit such statement, term or matter to specific items, whether or not language of non-limitation, such as "without limitation", or "but not limited to", are used with reference thereto, but rather shall be deemed to refer to all other items or matters that could reasonably fall within the broadest scope of such statement, term or matter.

(C) Captions.

The captions preceding the text of each article and section of this OEA are included only for convenience of reference. Captions shall be disregarded in the construction and interpretation of this OEA. Capitalized terms are also selected only for convenience of reference and do not necessarily have any connection to the meaning that might otherwise be attached to such term in a context outside of this OEA.

(D) Partial Invalidity.

Invalidation of any of the provisions contained in this OEA, or of the application thereof to any Person by judgment or court order, shall in no way affect any of the other provisions hereof or the application thereof to any other Person and the same shall remain in full force and effect.

(E) Amendments

This OEA may be amended by, and only by, a written agreement signed by all of the then current Approving Parties and shall be effective only when recorded in the county and state where the Site is located; provided, however, that no such amendment shall impose any materially greater obligation on, or materially impair any right of, a Party or its Parcel without the consent of such Party. No agreement to any amendment of this OEA shall ever be required of any Occupant or Person other than the Parties, nor shall any Occupant or Person other than the Parties have any right to enforce any of the provisions hereof. Since the submission of a proposed amendment to the Parties is not an item of "consent" or "approval", each Party may consider any proposed amendment to this OEA in its sole and absolute discretion without regard to reasonableness or timeliness.

(F) Counterparts.

This OEA may be executed in several counterparts, each of which shall be deemed an original. The signatures to this OEA may be executed and notarized on separate pages, and when attached to this OEA shall constitute one (1) complete document.

7.10. Negation of Partnership

None of the terms or provisions of this OEA shall be deemed to create a partnership between or among the Parties in their respective businesses or otherwise, nor shall it cause them to be considered joint venturers or members of any joint enterprise. Each Party shall be considered a separate owner, and no Party shall have the right to act as an agent for another

Party, unless expressly authorized to do so herein or by separate written instrument signed by the Party to be charged.

### 7.11. Not a Public Dedication

Nothing herein contained shall be deemed to be a gift or dedication of any portion of the Site or of any Parcel or portion thereof to the general public, or for any public use or purpose whatsoever. Except as herein specifically provided, no right, privileges or immunities of any Party hereto shall inure to the benefit of any third-party Person, nor shall any third-party Person be deemed to be a beneficiary of any of the provisions contained herein.

### 7.12. Excusable Delays

Whenever performance is required of any Party hereunder, such Party shall use all due diligence to perform and take all necessary measures in good faith to perform; provided, however, that if completion of performance shall be delayed at any time by reason of acts of God, war, civil commotion, riots, strikes, picketing or other labor disputes, unavailability of labor or materials, damage to work in progress by reason of fire or other casualty, or any cause beyond the reasonable control of such Party, then the time for performance as herein specified shall be appropriately extended by the amount of the delay actually so caused. The provisions of this Section shall not operate to excuse any Party from the prompt payment of any monies required by this OEA.

### 7.13. OEA Shall Continue Notwithstanding Breach

It is expressly agreed that no breach of this OEA shall (i) entitle any Party to cancel, rescind, or otherwise terminate this OEA, or (ii) defeat or render invalid the lien of any mortgage or trust deed made in good faith and for value as to any part of the Site. However, such limitation shall not affect in any manner any other rights or remedies which a Party may have hereunder by reason of any such breach.

### 7.14. Time

Time is of the essence of this OEA.

### 7.15. No Waiver

The failure of any Party to insist upon strict performance of any of the terms, covenants or conditions hereof shall not be deemed a waiver of any rights or remedies which that Party may have hereunder, at law or in equity, and shall not be deemed a waiver of any subsequent breach or default in any of such terms, covenants or conditions. No waiver by any Party of any default under this OEA shall be effective or binding on such Party unless made in writing by such Party and no such waiver shall be implied from any omission by a Party to take action in respect to such default. No express written waiver of any default shall affect any other default or cover any other period of time other than any default and/or period of time specified in such express waiver. One (1) or more written waivers of any default under any provision of this OEA shall not be deemed to be a waiver of any subsequent default in the performance of the

same provision or any other term or provision contained in this OEA. The failure of a Party to provide a Reconciliation or statement for amounts owed within a specified time shall not act as a waiver of such Party's right to collect such amount upon the later issuance of the required reconciliation or statement.

7.16. Governing Law.

This OEA shall be governed by and construed in accordance with the laws of the State of New York (without giving effect to New York principles of conflicts of law).

7.17. Authority.

(A) Target's Authority.

Target hereby represents and warrants to Kingsbridge that (i) Target is duly organized and validly existing in good standing under the laws of the State of Minnesota, and possesses all licenses and authorizations necessary to carry on its business, (ii) Target has full power and authority to carry on its business, enter into this OEA and consummate the transaction contemplated hereby, (iii) the individual executing and delivering this OEA on Target's behalf has been duly authorized to do so, (iv) this OEA has been duly executed and delivered by Target, (v) this OEA constitutes a valid, legal, binding and enforceable obligation of Target (subject to bankruptcy, insolvency or creditor rights laws generally, and principles of equity generally), (vi) the execution, delivery and performance of this OEA by Target will not cause or constitute a default under, or conflict with, the organizational documents of Target or any agreement to which Target is a party, (vii) the execution, delivery and performance of this OEA by Target will not violate any Requirement, and (viii) all consents, approvals, authorizations, orders or filings of or with any court or governmental agency or body, if any, required on the part of Target for the execution, delivery and performance of this OEA have been obtained or made.

(B) Kingsbridge's Authority.

Kingsbridge hereby represents and warrants to Target that (i) Kingsbridge is duly organized and validly existing in good standing under the laws of the State of New York, and possesses all licenses and authorizations necessary to carry on its business, (ii) Kingsbridge has full power and authority to carry on its business, enter into this OEA and consummate the transaction contemplated hereby, (iii) the individual executing and delivering this OEA on Kingsbridge's behalf has been duly authorized to do so, (iv) this OEA has been duly executed and delivered by Kingsbridge, (v) this OEA constitutes a valid, legal, binding and enforceable obligation of Kingsbridge (subject to bankruptcy, insolvency or creditor rights laws generally, and principles of equity generally), (vi) the execution, delivery and performance of this OEA by Kingsbridge will not cause or constitute a default under, or conflict with, the organizational documents of Kingsbridge or any agreement to which Kingsbridge is a party, (vii) the execution, delivery and performance of this OEA by Kingsbridge does not violate any Requirement, and (viii) all consents, approvals, authorizations, orders or filings of or with any court or governmental agency or body, if any, required on the part of Kingsbridge for the execution, delivery and performance of this OEA have been obtained or made.

7.18. Subordination of Other Interests to this OEA.

On the Additional Parcel Conveyance Date, Kingsbridge shall cause any mortgagee of Kingsbridge's interest in the Kingsbridge Parcel and any mortgagee of Kingsbridge's interest in the Western Parcel to subordinate such mortgagee's interest to this OEA and the terms hereof, pursuant to an instrument that Target approves, which approval Target shall not unreasonably withhold, condition or delay. On the Additional Parcel Conveyance Date, Target shall cause any mortgagee of Target's interest in the Target Parcel to subordinate such mortgagee's interest to this OEA and the terms hereof, pursuant to an instrument that Kingsbridge approves, which approval Kingsbridge shall not unreasonably withhold, condition or delay. Either party shall have the right to submit to an Expedited Arbitration Proceeding a dispute between the parties regarding such instrument.

8. Term.

The term of this OEA (the "Term") shall be from the date first above written and shall continue in full force and effect until 11:59 p.m. on December 31, 2077; provided, however, that the easements referred to herein which are specified as being perpetual or as continuing beyond the term of this OEA shall continue in full force and effect as provided herein. Upon the termination of this OEA, all rights and privileges derived from and all duties and obligations created and imposed by the provisions of this OEA, except as relates to the easements mentioned above, shall terminate and have no further force or effect; provided, however, that the termination of this OEA shall not limit or affect any remedy at law or in equity that a Party may have against any other Party with respect to any liability or obligation arising or to be performed under this OEA prior to the date of such termination.

9. Exculpation.

None of the Persons comprising a Party (whether partners, shareholders, officers, directors, members, trustees, employees, beneficiaries or otherwise) shall ever be personally liable for any judgment obtained against a Party. Each Party agrees to look solely to the interest in the applicable Parcel of a defaulting Party for recovery of damages for any breach of this OEA; provided, however, the foregoing shall not in any way impair, limit or prejudice the right of a Party:

(a) Casualty Insurance and Condemnation Proceeds. To recover from another Party all damages and costs on account of, or in connection with, casualty insurance or condemnation proceeds which are not applied or used in accordance with the terms of this OEA.

(b) Hazardous Substances. To recover from another Party all damages and costs arising out of or in connection with, or on account of, a breach by such Party of its obligations under Section 6.1(D) hereof.

(c) Liability Insurance. To recover from another Party all damages and costs arising out of or in connection with, or on account of, a breach by such Party of its obligations under Section 6.4(B) hereof.

(d) <u>Taxes, Assessments and Liens</u>.  To recover from a Party all damages and costs arising out of or in connection with, or on account of, the failure by such Party to pay when due any tax, assessment or lien as specified in Section 6.5 hereof.

(e) <u>Fraud or Misrepresentation</u>.  To recover from another Party all damages and costs as a result of any fraud or misrepresentation by such Party in connection with any term, covenant or condition in this OEA.

(f) <u>Equitable Relief; Costs</u>.  To pursue equitable relief in connection with any term, covenant or condition of this OEA, including a proceeding for temporary restraining order, preliminary injunction, permanent injunction or specific performance, and recover all costs, including Interest thereon, relating to such enforcement action.

IN WITNESS WHEREOF, Target and Kingsbridge have duly executed and delivered this OEA as of the day and year first above written.

TARGET CORPORATION

By: _____

Name:   Robert L. Nys
Title: Assistant Secretary & Authorized Signatory

KINGSBRIDGE ASSOCIATES, LLC

By: _____

Name:   JAMES LEVIN
Title:   MEMBER

STATE OF NEW YORK          )
                           ) ss.
COUNTY OF _NEW YORK_       )

On the _5th_ day of February in the year 2002, before me, the undersigned, personally appeared _JAMES LEVIN_ , personally known to me or proved to me on the basis of satisfactory evidence to be the individual whose name is subscribed to the within instrument and acknowledged to me that he/she executed the same in his/her capacity, and that by his/her signature on the instrument, the individual, or the person upon behalf of which the individual acted, executed the instrument.

7-31-02

Signature and Office of individual
taking acknowledgment

My commission expires: _____

STATE OF MINNESOTA         )
                           ) ss.
COUNTY OF HENNEPIN         )

On the _1st_ day of February in the year 2002, before me, the undersigned, personally appeared _Robert L. Nys_ , personally known to me or proved to me on the basis of satisfactory evidence to be the individual whose name is subscribed to the within instrument and acknowledged to me that he/she executed the same in his/her capacity, that by his/her signature on the instrument, the individual, or the person upon behalf of which the individual acted, executed the instrument, and that such individual made such appearance before the undersigned in the _Minneapolis, Minnesota_ . (Insert the city or other political subdivision and the State or county or other place the acknowledgment was taken).

Signature and Office of individual
taking acknowledgment

My commission expires: KAREN SEGLEM
NOTARY PUBLIC-MINNESOTA
COMMISSION EXPIRES 1-31-2005

Exhibit "A"

Initial Target Parcel

[See attached]

REC 1 1 5 862211



# *First American Title Insurance Company of New York*

Title No. NY-00005147-NYNY

### SCHEDULE "A"

ALL that certain plot, piece or parcel of land, situate, lying and being partly in the Borough of Bronx, and partly in the Borough of Manhattan, County of New York, City and State of New York, bounded and described as follows:

BEGINNING at a point on the southerly side of West 225th Street, distant 395.03 feet easterly from the corner formed by the intersection of the said southerly side of West 225th Street with the easterly side of Broadway (as widened on 8/5/1960);

RUNNING THENCE southerly at right angles to said southerly side of West 225th Street, 120 feet;

THENCE westerly at right angles to the last course, 71.03 feet;

THENCE southerly at right angles to the last course, 66.20 feet;

THENCE in a southeasterly direction along a line which forms an angle of 107 degrees 56 minutes 10 seconds on its northerly side with the last course, 485.18 feet;

THENCE continuing in a southeasterly direction along a line which forms an angle of 194 degrees 13 minutes 11 seconds on its easterly side with the last course, 172.02 feet;

THENCE easterly along a line which forms an angle of 122 degrees 53 minutes 36 seconds on its northerly side with the last course, 202.24 feet;

THENCE northerly at right angles to the last course, 24.19 feet;

THENCE easterly at right angles to the last course, 55 feet to the easterly side of Exterior Street (now closed and discontinued);

THENCE northerly at right angles to the last course and along said easterly side of Exterior Street (now closed and discontinued) 598.51 feet to a point of tangency;

Continued.....



# *First American Title Insurance Company of New York*

Title No. NY-00005147-NYNY

### SCHEDULE "A" CONTINUED

**THENCE** continuing northerly along said easterly line of Exterior Street (now closed and discontinued), on a line curving to the left having a radius of 3975 feet, 35.68 feet to the southerly side of West Kingsbridge Road;

**THENCE** westerly along the said southerly side of West Kingsbridge Road and along the said southerly side of West 225th Street, 326.43 feet;

**THENCE** southerly along a line which forms an angle of 90 degrees 20 minutes 30 seconds on its westerly side with the said southerly side of West 225th Street, 42.50 feet;

**THENCE** continuing southerly along a line which forms an angle of 165 degrees 31 minutes 30 seconds on its westerly side with the last course, 17.50 feet;

**THENCE** in a southwesterly direction along a line which forms an angle of 159 degrees 54 minutes 54 seconds on its westerly side with the last course, 73.20 feet to a point, in a line 120 feet south of and parallel with the southerly side of West 225th Street;

**THENCE** westerly along a line which forms an angle of 124 degrees 13 minutes 06 seconds on its northerly side with the last course and parallel with said southerly side of West 225th Street, 198.52 feet;

**THENCE** in a northeasterly direction along a line which forms an angle of 59 degrees 46 minutes 02 seconds on its easterly side with the last course, 138.89 feet to the said southerly side of West 225th Street; and

**THENCE** westerly along said southerly side of West 225th Street, 65 feet to the point or place of **BEGINNING.**

**TOGETHER** with the benefit of the Grant of Easement (for purposes of emergency egress only) recorded in Liber 4867 Cp. 361 (New York County) and Liber 2056 Cp. 167 (Bronx County), and subject to the provisions of said agreement.

**THE** policy to be issued under this report will insure the title to such buildings and improvements erected on the premises which by law constitute real property.

**FOR CONVEYANCING ONLY:  TOGETHER** with all the right, title and interest of the party of the first part, of in and to the land lying in the street in front of and adjoining said premises.

Exhibit "B"

Initial Kingsbridge Parcel

[See attached]

.01/14/2002  12:55    .6-7450844        W WALZER

PAGE  06



## First American Title Insurance Company of New York

*Title No. NY-00006504-NYNY-4001 and 4005*                    *Policy No. Y 212385*

### SCHEDULE "C" CONTINUED

#### BLOCK 2215 LOT 715

*ALL that certain plot, piece or parcel of land, situate, lying and being in the Borough of Manhattan, County, City and State of New York, bounded and described as follows:*

*BEGINNING at a point on the southerly side of West 225th Street, distant 486.03 feet easterly from the corner formed by the intersection of the said southerly side of West 225th Street with the easterly side of Broadway, as same existed before the widening thereof, and distant 460.03 as now exists on the present street lines as measured along said southerly side of West 225th Street;*

*RUNNING THENCE southerly along a line which forms an angle of 120 degrees 13 minutes 58 seconds on its easterly side with the said southerly side of West 225th Street, 138.89 feet to a point in a line drawn parallel with said southerly side of West 225th Street and distant 120 feet southerly therefrom;*

*THENCE easterly along a line which forms an angle of 59 degrees 46 minutes 02 seconds on its northerly side with the last mentioned course and parallel with said southerly side of West 225th Street, 198.52 feet;*

*THENCE northeasterly along a line which forms an angle of 124 degrees 13 minutes 06 seconds on its westerly side with the last mentioned course 73.20 feet;*

*THENCE northerly along a line which forms an angle of 159 degrees 54 minutes 54 seconds on its westerly side with the last mentioned course, 17.50 feet;*

*THENCE still northerly along a line which forms an angle 165 degrees 31 minutes 30 seconds on its westerly side with the last mentioned course, 42.50 feet to the southerly side of West 225th Street;*

*THENCE westerly along the southerly side of West 225th Street, 173.77 feet to the point or place of BEGINNING.*

www.FirstAmNY.com www.FirstAmNY.com www.FirstAmNY.com www.FirstAmNY.com www.FirstAmNY.com

Exhibit "C"

Western Parcel

[See attached]

01/14/2002  12:55    516-7450844              W WALZER                    PAGE  07



## First American Title Insurance Company of New York

*Title No. NY-00006504-NYNY-4003*                          *Policy No. Y210993*

### *SCHEDULE "C"*
### *(DESCRIPTION)*

*ALL that certain plot, piece or parcel of land, situate, lying and being in the Borough and County of Manhattan, City and State of New York, known and designated as Lot 665, Block 2215, Section 8 on Tax Map of the County of Manhattan, for the Borough of Manhattan, as said Tax Map was on 5/25/64, bounded and described as follows:*

*BEGINNING at the corner of the easterly side of Broadway, with the southerly side of West 225th Street;*

*RUNNING THENCE easterly along the southerly side of West 225th Street, 74 feet;*

*THENCE southerly at right angles to the southerly side of West 225th Street, 120 feet,*

*THENCE westerly at right angles to the preceding course 83.07 feet to the easterly side of Broadway;*

*THENCE along the easterly side of Broadway in a northerly direction on a curve to the left having a radius of 62.23 feet for a distance of 34.02 feet to a point in said side of Broadway;*

*THENCE continuing along said side of Broadway, northerly 87.64 feet to the corner at the point or place of BEGINNING.*

01/14/2002  12:55    516-7450844        W WALZER        PAGE  05



## *First American Title Insurance Company of New York*

Title No. NY-00006504-NYNY-4001

Policy No. Y 212385

### *SCHEDULE "C"*
### *(DESCRIPTION)*

**BLOCK 2215 LOT 657**

ALL that certain plot, piece or parcel of land, situate, lying and being in the Borough of Manhattan City, County and State of New York, bounded and described as follows:

BEGINNING at a point on the southerly side of West 225th Street, as legally opened, distant 100 feet easterly from the corner formed by the intersection of the southerly side of West 225th Street with the easterly side of Broadway, as legally opened prior to 7/21/60; said distance is 74 feet east of the present easterly side of Broadway;

RUNNING THENCE southerly parallel with Broadway, 120 feet;

THENCE easterly parallel with West 225th Street, 100 feet;

THENCE northerly parallel with Broadway, 120 feet to the southerly side of West 225th Street;

THENCE westerly along the southerly side of West 225th Street, 100 feet to the point or place of BEGINNING.

01/14/2002  12:55   216-7450844                 W WALZER      455 22 18      PAGE  03



# First American Title Insurance Company of New York

Title No. 135NYNY31657
AMENDED 1/17/01

## SCHEDULE "A"

ALL that certain plot, piece or parcel of land, situate, lying and being in the borough of Manhattan, County, City and State of new York, bounded and described as follows:

BEGINNING at a point on the southerly side of West 225th Street, distant 250 feet easterly from the corner formed by the intersection of the southerly side of West 225th Street with the easterly side of Broadway, as same existed prior to the widening thereof, and distant 224 feet east of the present street lines as measured along the southerly side of West 225th Street;

RUNNING THENCE southerly, and parallel with the easterly side of Broadway, 120 feet;

THENCE easterly, and parallel with the southerly side of West 225th Street, 171.03 feet;

THENCE northerly, and parallel with the easterly side of Broadway, 120 feet to the southerly side of West 225th Street;

THENCE westerly, along the southerly side of West 225th Street, 171.03 feet to the point or place of BEGINNING.

EXCEPTING  THEREFROM  THE  PORTION  OF  PREMISES  TAKEN  BY CONDEMNATION PROCEEDINGS UNDER ACTION #40975/60 BEING KNOWN AS BLOCK 2215 LOT 653.

THE policy to be issued under this report will insure the title to such buildings and improvements erected on the premises which by law constitute real property.

FOR CONVEYANCING ONLY:  TOGETHER with all the right, title and interest of the party of the first part, of in and to the land lying in the street in front of and adjoining said premises

www.FirstAmNY.com www.FirstAmNY.com www.FirstAmNY.com www.FirstAmNY.com
www.FirstAmNY.com www.FirstAmNY.com

.01/14/2002 12:55    .6-7458844    W WALZER ⁜   3 4 1 5 ⁓3 2 2 1 9    PAGE  09



# First American Title Insurance Company of New York

*Title No. NY 00006504-NYNY-4002*                    *Policy No. Y 212807*

### SCHEDULE "C"
### (DESCRIPTION)

### BLOCK 2215 LOT 671

*ALL that certain plot, piece or parcel of land, situate, lying and being in the Borough of Manhattan, City, County and State of New York, bounded and described as follows:*

*BEGINNING at the most easterly corner of that parcel of land secondly described in deed from The New York Central Railroad Company to Seeman Brothers, Inc., dated November 19, 1953, recorded in the Office of the Register of the City of New York, in the County of New York, in Liber 4860 of Conveyances, at Page 460, and in the County of Bronx in Liber 2046 of Conveyances, at page 20, in which parcel a permanent and perpetual right and easement of egress and ingress was granted to Seeman Brothers, Inc. in common with the Grantor therein and others, said point of the beginning being the southwesterly line of West 225th Street distant South 74 degrees 43 minutes and 02 seconds East, 224.00 feet measured along the same from its intersection with the easterly line of Broadway as widened;*

*RUNNING THENCE south 15 degrees 16 minutes 58 seconds west, along the southeasterly line of said parcel of land secondly described in deed dated and recorded as aforesaid, 164.34 feet to a corner or angle in said southeasterly line;*

*THENCE south 56 degrees 46 minutes 52 seconds East, continuing along the line of said parcel of land secondly described in deed dated and recorded as aforesaid 90.69 feet to a corner or angle in said line;*

*THENCE north 81 degrees 25 minutes 03 seconds East continuing along the line of said parcel of land secondly described in deed dated and recorded an aforesaid 15.00 feet to the most westerly corner of that parcel of land conveyed to Seeman Brothers, Inc. and firstly described in deed dated and recorded as aforesaid;*

*THENCE south 56 degrees 46 minutes 52 seconds east, along the southwesterly line of that parcel of land conveyed to Seeman Brothers, Inc. and firstly described in deed dated and recorded as aforesaid 146.65 feet to a point;*

·01/14/2002 12:55    ᴊ16-7450044          W WALZER                    PAGE 10



## *First American Title Insurance Company of New York*

*Title No. NY-00006504-NYNY-4002*                                              *Policy No. Y 212807*

### SCHEDULE "C" CONTINUED

#### BLOCK 2215 LOT 671 CONTINUED

*THENCE through land of the Grantor, the following coursed and distances:*

*South 33 degrees 13 minutes 08 seconds west, 39.19 feet; North 6 degrees 23 minutes 32 seconds west, 64.50 feet, and south 27 degrees 23 minutes 52 seconds west, 3.00 feet to a point of curvature of the mean edge of a wooden station platform the radial line drawn from this point bears south 27 degrees 23 minutes 52 seconds west;*

*THENCE northwesterly, along said mean edge of wooden station platform by a curve to the left drawn with a radius of 1646.15 feet having a central angle of 9 degrees 52 minutes 19 seconds and a length of 283.63 feet;*

*THENCE continuing through lands of the Grantor the following courses and distances:*

*North 17 degrees 15 minutes 08 seconds east, 23.76 feet; North 72 degrees 44 minutes 52 seconds west, 33.45 feet; South 17 degrees 15 minutes 08 seconds west, 23.85 feet; and North 73 degrees 50 minutes and 52 seconds west, 99.83 feet to a point in the easterly line of Broadway as formerly laid unit;*

*THENCE north 15 degrees 16 minutes 02 seconds east, along said easterly line of Broadway as formerly laid out, 51.82 feet to a point;*

*THENCE south 74 degrees 43 minutes 58 seconds east, along the easterly line of Broadway as widened, 2.33 feet to a point;*

*THENCE north 15 degrees 16 minutes 58 seconds east, continuing along said westerly line of Broadway as widened, 21.83 feet to a point;*

*THENCE north 46 degrees 36 minutes 41 seconds east, still along said easterly line of Broadway as widened, 22.81 feet to a point;*

01/14/2002  12:55   :   -7450844            W WALZER  3   5  5 03 2 2 2 1          PAGE  02



### First American Title Insurance Company of New York

*Title No. NY-00006504-NYNY-4002*                                    *Policy No. Y 212807*

### SCHEDULE "C" CONTINUED

#### BLOCK 2215 LOT 671 CONTINUED

*THENCE along the northeasterly line of the lands of the Grantor the following courses and distances:*

*South 74 degrees 43 minutes 02 seconds east, 50.31 feet;  North 15 degrees 16 minutes 58 seconds east 4.50 feet;  and south 74 degrees 49 minutes 02 seconds east, 135.50 feet to a point;*

*THENCE north 15 degrees 16 minutes 58 seconds east, 120.00 feet to its intersection with the southwesterly line of West 225th Street;*

*THENCE south 74 degrees 43 minutes 02 seconds east, along the southwesterly line of West 225th Street, 50.00 feet to the point and place of BEGINNING.*

Exhibit "D"

Site Plan

[See attached]



GROUND LEVEL RETAIL FLOOR PLAN

PROPOSED RIVERDALE PLAZA RETAIL DEVELOPMENT ■ BRONX, NEW YORK

TARGET

Exhibit "E"

Additional Parcel Area

[The Additional Parcel Area is the property so identified on the plan attached hereto.  The Parties intend to attach a description of the metes and bounds thereof prior to the execution and delivery of this OEA.]

METES AND BOUNDS DESCRIPTION
PROPOSED LOT "B"
PORTION OF LOT 715, BLOCK 2215
BOROUGH OF MANHATTAN, NEW YORK COUNTY, NEW YORK

BEGINNING AT A POINT ON THE SOUTHERLY SIDELINE OF WEST KINGSBRIDGE ROAD (100 FOOT WIDE RIGHT OF WAY), SAID POINT BEING THE FOLLOWING TWO (2) COURSES FROM A POINT FORMED BY THE INTERSECTION OF THE SOUTHERLY SIDELINE OF WEST 225th STREET (F.K.A. MUSCOOTA STREET—100 FOOT WIDE RIGHT OF WAY) WITH THE EASTERLY SIDELINE OF BROADWAY (A.K.A. KINGSBRIDGE ROAD—100 FOOT WIDE RIGHT OF WAY):

A) ALONG THE SOUTHERLY SIDELINE OF WEST 225th STREET, SOUTH 74 DEGREES – 43 MINUTES – 02 SECONDS EAST, A DISTANCE OF 395.03 FEET TO AN ANGLE POINT, THENCE:

B) ALONG THE SOUTHERLY SIDELINE OF WEST KINGSBRIDGE ROAD, NORTH 75 DEGREES – 03 MINUTES – 00 SECONDS EAST, A DISTANCE OF 209.09 FEET TO THE POINT OF BEGINNING, AND FROM SAID BEGINNING POINT RUNNING, THENCE:

1. ALONG THE SOUTHERLY SIDELINE OF WEST KINGSBRIDGE ROAD, NORTH 75 DEGREES – 03 MINUTES – 00 SECONDS EAST, A DISTANCE OF 29.68 FEET TO A POINT, THENCE:

2. ALONG THE DIVIDING LINE BETWEEN LOT 700 AND LOT 715, BLOCK 2215, THE FOLLOWING THREE (3) COURSES: SOUTH 15 DEGREES – 17 MINUTES – 30 SECONDS EAST, A DISTANCE OF 42.50 FEET TO A POINT, THENCE:

3. SOUTH 00 DEGREES – 49 MINUTES – 00 SECONDS EAST, A DISTANCE OF 17.50 FEET TO A POINT, THENCE:

4. SOUTH 19 DEGREES – 16 MINUTES – 06 SECONDS EAST, A DISTANCE OF 64.13 FEET TO A POINT, THENCE:

5. ALONG A PROPOSED NEW LINE THROUGH LOT 715, BLOCK 2215, NORTH 09 DEGREES – 40 MINUTES – 05 SECONDS WEST, A DISTANCE OF 112.98 FEET TO THE POINT AND PLACE OF BEGINNING.

CONTAINING 2,728 SQUARE FEET OR 0.063 ACRE

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
----------------------------------X

THELMA FELIPE,

                    Plaintiff,

          -against-

TARGET CORPORATION and KINGSBRIDGE
ASSOCIATES, LLC,

                    Defendants.

----------------------------------X

Civil Action No:
08 CIV 4317

Judges Assigned:
Holwell, J
Pitman, M

**AFFIDAVIT**

STATE OF NEW YORK    )
                     ) ss.:
COUNTY OF BRONX      )

COSMIN BARBU, being duly sworn, deposes and states as follows:

1.  I am currently employed by TARGET CORPORATION ("TARGET") and have been employed by Target since April 2007.

2.  Presently, I am the Store Facility Technician ("SFT") at the Target store located at 40 W. 225th Street, Bronx, New York 10463.

3.  On September 9, 2007, I was employed in the same position but under a different title, Store Building Specialist ("SBS"). Although my title was different, my duties and responsibilities were the same.

4.  As the SBS and SFT, I am responsible for overseeing all preventative maintenance and equipment repairs at the store

and I am therefore familiar with Target's maintenance responsibilities at the Target store located at 40 W. 225th Street, Bronx, New York 10463.

5. I have been informed by Target's attorneys that plaintiff, Thelma Felipe, alleges that she slipped and fell by reason of a slippery substance on the floor inside of the Target store located at 40 W. 225th Street, Bronx, New York 10463 on September 9, 2007.

6. I have also been informed that plaintiff alleges that Kingsbridge Associates, LLC was responsible for maintaining, inspecting and managing the inside of the Target store located at 40 W. 225th Street, Bronx, New York 10463.

7. Plaintiff's allegation is incorrect.

8. On September 9, 2007, Kingsbridge Associates, LLC did not have any maintenance responsibilities for the interior of the Target store located at 40 W. 225th Street, Bronx, New York 10463.

9. On September 9, 2007, Kingsbridge Associates, LLC did not have any duty to sweep, clean, mop, repair or otherwise maintain the Target store located at 40 W. 225th Street, Bronx, New York 10463.

10. On September 9, 2007, Kingsbridge Associates, LLC did not manage or inspect the Target store located at 40 W. 225th Street, Bronx, New York 10463.

11.  It was the responsibility of Target to maintain, inspect and manage its sales floor.

12.  In fact, Target maintained a contract with Prestige Maintenance to sweep, mop, clean and otherwise maintain the floor inside the Target store.

13.  In addition, it is the responsibility of each Target Team Member to continuously patrol the aisles for anything which may pose a danger to Target's customers.

Cosmin Barbu

Sworn to before me on this
19th day of June, 2008


NOTARY PUBLIC

MELISSA A. McGARRY
Notary Public, State of New York
No. 01MC6155688
Qualified in Nassau County
Commission Expires November 13, 20 10

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------X
THELMA FELIPE,

                      Plaintiffs,

         - against -

TARGET CORPORATION and KINGSBRIDGE
ASSOCIATES, LLC,

                     Defendant.
----------------------------------------X
STATE OF MINNESOTA  )
                )  ss.:
CITY OF HENNEPIN    )

Civil Action No.:
08 CV 4317

**AFFIDAVIT IN
OPPOSITION**

Holwell, J.
Pitman, M.

Jason Walbourn, being duly sworn, deposes and says:

1.  I am presently employed as Senior Corporate Counsel for defendant Target Corporation ("Target"). My office is located in Minneapolis, Minnesota.

2.  As Senior Corporate Counsel, I am knowledgeable about Target's corporate legal status and its corporate operations.

3.  Target is incorporated in the state of Minnesota and maintains its principal place of business in Minneapolis, Minnesota.

4.  Target's corporate headquarters offices are located in Minnesota. Its Board of Directors meets in Minnesota and is scheduled to meet four times in Minnesota during the 2008 fiscal year.

5.  Minnesota is where the corporate executive officers maintain their offices and run the day-to-day operations of the corporation.

6.   The corporate executive officers direct, coordinate and control the activities of the corporation from Minnesota, including but not limited to, human resources, merchandising, marketing, property development, finance and store operations.

7.   Executive level policymaking and substantive decisions are made by corporate executive officers in Minnesota.

8.   Each individual store manager must operate his/her store in conformity with policies and procedures that are ultimately approved or formulated in Minnesota.

9.   Target's principal place of business is in Minneapolis, Minnesota <u>not</u> New York.

**WHEREFORE,** I respectfully submit that the plaintiff's motion to remand should be denied.

_____
Jason Walbourn

STATE OF MINNESOTA    )
                      ) ss:
COUNTY OF HENNEPIN    )

The undersigned, does hereby certify that s/he is a notary public duly licensed within the State of Minnesota, and that the acknowledgment executed by Jason Walbourn on the 20th day of June, 2008 to this affidavit was taken in the manner prescribed by and in conformity with the laws of the State of Minnesota, which is the place where the acknowledgment was taken.

IN WITNESS WHEREOF, I have hereunto set my hand this 20th day of June, 2008.

_____
Notary Public

TERESA D. MORGAN
NOTARY PUBLIC-MINNESOTA
MY COMMISSION EXPIRES 1-31-2010

# NYS Department of State

## Division of Corporations

## Entity Information

Selected Entity Name: TARGET STORES

Selected Entity Status Information

**Current Entity Name:** TARGET CORPORATION
**Initial DOS Filing Date:** JANUARY 19, 1995
**County:** NEW YORK
**Jurisdiction:** MINNESOTA
**Entity Type:** FOREIGN BUSINESS CORPORATION
**Current Entity Status:** ACTIVE

Selected Entity Address Information

**DOS Process (Address to which DOS will mail process if accepted on behalf of the entity)**
TARGET STORES
1000 NICOLLET MALL, TPN-0945
MINNEAPOLIS, MINNESOTA, 55403
**Chairman or Chief Executive Officer**
ROBERT J. ULRICH
1000 NICOLLET MALL
MINNEAPOLIS, MINNESOTA, 55403
**Principal Executive Office**
TARGET STORES
1000 NICOLLET MALL, TPN-0945
MINNEAPOLIS, MINNESOTA, 55403
**Registered Agent**
C T CORPORATION SYSTEM
111 EIGHTH AVENUE
NEW YORK, NEW YORK, 10011

NOTE: New York State does not issue organizational identification numbers.

Search Results          New Search

Division of Corporations, State Records and UCC Home Page    NYS Department of State Home Page