# SIMMONS, JANNACE & STAGG, L.L.P.

KEVIN P. SIMMONS
STEVEN D. JANNACE
THOMAS E. STAGG*◊
DEBRA LYNNE WABNIK*
DANIEL P. GREGORY*
ANDREW KAZIN
SAL F. DELUCAΔ

JASON W. CREECH
JACQUELINE DELLA CHIESA
GEORGE C. FONTANA
STEPHEN C. GIAMETTAΔ
MICHAEL D. KERNΔ
ALLISON C. LEIBOWITZ
ADAM M. LEVY
HALEY E. OLAMΔ
COREY J. PUGLIESE
MARVIN N. ROMERO*
MICHELLE E. TARSON*

ATTORNEYS AT LAW
**75 JACKSON AVENUE**
SYOSSET, NEW YORK 11791-3139
(516) 357-8100
FAX (516) 357-8111

381 BROADWAY, SUITE 300
WESTWOOD, NEW JERSEY 07675

700 CANAL STREET
STAMFORD, CONNECTICUT 06902

COUNSEL

SUSAN B. JANNACE
ROSS M. CHINITZΔ
KRISTEN RENZULLI*

*ALSO ADMITTED NJ
ΔALSO ADMITTED CT
◊ALSO ADMITTED DC

June 30, 2008

**VIA ECF**

Honorable Richard J. Holwell
U.S. District Court
Southern District of New York
500 Pearl Street
New York, New York  10007-1312

      Re:  Thelma Felipe v. Target Corporation and
           Kingsbridge Associates, LLC
           Civil Action No.:  08 CIV 4317(JH)(MP)
           J. Holwell
           M. Pitman
           Our File No.:  TAR 5558

Dear Honorable Judge Holwell:

As your Honor is aware, this office represents defendant Target Corporation in regards to the above-referenced matter.

I respectfully submit this correspondence in regards to plaintiff's Reply Affirmation and Memorandum of Law. In said documents, plaintiff asserts an argument which was not previously raised in her motion to remand. In particular, plaintiff alleges, for the first time, that the alleged principal place of business of a non-party would destroy diversity in this matter, if the Complaint is amended to include said party as a defendant. It is respectfully submitted that the Court should not consider plaintiff's new argument "as

Honorable Richard J. Holwell
U.S. District Court
Southern District of New York
June 30, 2008
Page 2


arguments cannot be made for the first time in reply papers". See Knipe v. Skinner, 999 F.2d 708, 26 Fed.R.Serv. 3d 441 (2d Cir., 1993).

In the alternative, it is respectfully requested that defendant Target Corporation be permitted to submit a sur-reply in order to address plaintiff's new and erroneous argument. Plaintiff has incorrectly asserted that the company retained by Target, Prestige Maintenance USA, is a New York Corporation when it is a company with its principal place of business in Texas. Attached herein is a copy of the Service Agreement between Target and Prestige Maintenance USA for the court's consideration. Target believes that a sur reply would assist the Court in determining the present motion and plaintiff's newest argument.

Thank you for the opportunity to address the court in connection with this matter.

Very truly yours,

/s/Marvin N. Romero

Marvin N. Romero

Attachment
MNR:

crt ltr 02-request sur reply-ecf

**AMENDED AND RESTATED
TARGET CORPORATION BUILDING SERVICES
SERVICE AGREEMENT**

This Target Corporation Building Services Service Agreement (the **Agreement**) is made by and between Target Corporation (**Target**) and the supplier identified in Section 1 below (**Supplier**).   All references to **Services** shall mean the tasks or projects to be performed for Target.   Supplier has also agreed to Target's Vendor Non-Disclosure Agreement (**NDA**).

Effective as of March 24, 2006, this Amended and Restated Agreement replaces the agreement previously signed by Target Corporation and Prestige Maintenance., dated September 2, 2005.

1.    **SUPPLIER.**
The Supplier that has agreed to perform the Services for Target pursuant to this Agreement is the following person or entity:

| | |
|---|---|
| Name of Business: | Prestige Maintenance |
| Type of Business Entity (corporation, LLC, sole proprietor, etc...): | Limited Partnership |
| Principal Address and Phone Number: | 1808 10th Street Suite #300 Plano, TX 75074 972-578-9801 |
| e-mail Address: | |
| Principal Officer: | Marie Dinverno |
| Employer Tax I.D. Number: | 75-2664036 |

2.    **SERVICES.**
2.1.    **Type of Services.**
During the term of this Agreement, Supplier agrees to perform the following Services: (check applicable box)

| | | |
|---|---|---|
| ☐ Landscaping | ☐ Snow and Ice Control | ☐ Vertical Maintenance |
| ☐ Pest Control | x  Housekeeping | ☐ HVAC Maintenance |
| ☐ Lot Sweeping | ☐ Re-lamping | ☐ Alarm Maintenance |

*Housekeeping Services at Target store locations*

2.2.    **Tools, Equipment, Supplies.**
The Services are described in further detail in the Scope of Work.   Supplier agrees to provide all tools, equipment, labor, supervision and supplies necessary to perform the Services (except for any tools, equipment and supplies specifically required to be provided by Target pursuant to the Scope of Work).   In the event that Supplier requests to borrow tools, equipment or supplies from Target, Supplier does so solely at Supplier's own risk and agrees to  inspect such tools, equipment or supplies and to exercise its own independent judgment in determining whether such tools, equipment or supplies are fit, sufficient and safe for Supplier's intended use. Further, Target makes no warranties or representations with regard to any such borrowed tools, equipment or supplies.

2.3.    **Scope of Work.**
The Scope of Work is incorporated by reference into this Agreement and may be updated by Target from time to time.   Any changes made by Target to the Scope of Work shall be effective thirty days after notice to Supplier unless during this thirty day period Supplier gives Target written notice setting forth its reasonable objections to specific changes.   Target and Supplier shall endeavor to resolve Supplier's objections to the satisfaction of both parties, or Target may terminate this Agreement as provided in this Agreement.

3. **TERMINATION.**

   3.1. **Term.**

   Unless sooner terminated in accordance with this Agreement, this Agreement shall have an initial term beginning on February 1, 2006 and ending on September 2, 2008 (11 a.m.) (the **Initial Term**). Unless otherwise terminated during the Initial Term, upon the conclusion of the Initial Term, this Agreement shall thereafter be extended until terminated as provided herein.

   3.2. **Termination.**

   Following the Initial Term, this Agreement may be terminated by either party by giving written notice to the other party not less than thirty calendar days prior to the effective date of the termination. The foregoing notwithstanding, Target may terminate this Agreement without cause at any time even during the Initial Term by giving written notice to Supplier not less than thirty calendar days prior to the effective date of the termination. If this Agreement relates to more than one Target location, the party terminating this Agreement pursuant to this paragraph shall specify in its notice the particular locations to which the notice of termination relates and this Agreement shall terminate as to those locations and continue as to the remaining locations.

   3.3. **For Cause.**

   Target may also terminate this Agreement for cause at any time in the event Supplier, if in Target's sole reasonable opinion, fails to perform or otherwise breaches this Agreement. Such failure or breach may include, but not be limited to, any failure by Supplier to provide any of the Services when scheduled, any failure by Supplier to provide a sufficient number of adequately trained (and licensed or certified, if applicable) personnel to perform Services when scheduled, or any failure by the employees or agents of Supplier to observe applicable Target regulations. Such termination for cause shall be effective upon the earlier of the date of receipt by Supplier of the notice of termination or a date which is three (3) business days from and after the date of mailing of said notice of termination. If this Agreement relates to more than one Target location, Target may, at Target's option, terminate this Agreement for cause as provided in this paragraph either in its entirety as to all locations, or only as to those locations for which a default or breach has occurred as designated in the notice of termination. Target shall specify in its notice the locations to which the notice of termination relates, and this Agreement shall terminate as to those locations and continue as to the remaining locations.

   3.4. **Target's Sole Obligation.**

   Target's sole obligation to Supplier upon termination of this Agreement shall be to pay Supplier for such Services as Supplier can document, to the satisfaction of Target, were actually provided prior to the date of termination in accordance with this Agreement, less any amounts due and payable by Supplier to Target hereunder.

4. **PAYMENT.**

   4.1. **Rates and Locations.**

   Target shall pay Supplier for the Services provided at the Locations indicated below at the following rate(s):

| T Loc ID | Monthly Price multiplied by applicable factor | Monthly Charged Amount | Name | Address | City | State | Zip Code |
|---|---|---|---|---|---|---|---|
| 5 | $11,448.83 | $908.53 | Bloomington | 2555 West 79th Street | Bloomington | MN | 55431 |
| 47 | $11,448.83 | $1,021.51 | Southdale | 7000 York Avenue South | Edina | MN | 55435 |
| 220 | $11,448.83 | $984.13 | Eden Prairie | 8225 Flying Cloud Drive | Eden Prairie | MN | 55344 |
| 260 | $10,818.09 | $775.11 | St. Louis Park | 3601 South Highway 100 | St. Louis Park | MN | 55416 |
| 862 | $10,818.09 | $816.41 | Chanhassen | 851 W. 78th Street | Chanhassen | MN | 55317 |
| 1272 | $10,818.09 | $808.57 | Shakopee | 1685 17th Avenue East | Shakopee | MN | 55379 |

| 1356 | $16,539.48 | $1,473.36 | Minnetonka | 4802 Highway 101 | Minnetonka | MN | 55345 |
|---|---|---|---|---|---|---|---|
| 52 | $10,818.09 | $799.82 | Lake Street | 2500 East Lake Street | Minneapolis | MN | 55406 |
| 56 | $10,818.09 | $898.59 | Burnsville | 810 West County Road 42 | Burnsville | MN | 55337 |
| 68 | $10,818.09 | $756.42 | East St. Paul | 1744 Suburban Avenue | St. Paul | MN | 55106 |
| 360 | $10,818.09 | $800.03 | Eagan | 2000 Cliff Lake Road | Eagan | MN | 55122 |
| 643 | $18,988.93 | $1,594.04 | Apple Valley | 15150 Cedar Avenue | Apple Valley | MN | 55124 |
| 662 | $10,818.09 | $723.03 | Cottage Grove | 8655 East Point Douglas Rd S | Cottage Grove | MN | 55016 |
| 694 | $11,448.83 | $991.55 | Woodbury | 7200 Valley Creek Plaza | Woodbury | MN | 55125 |
| 1484 | $16,539.48 | $1,437.17 | Lakeville | 18275 Kenrick Avenue | Lakeville | MN | 55044 |
| 1245 | $9,593.37 | $708.54 | Hastings | 875 General Sieben Drive | Hastings | MN | 55033 |
| 215 | $10,818.09 | $735.63 | St. Cloud | 4201 West Division Street | St. Cloud | MN | 56301 |
| 657 | $10,818.09 | $669.20 | Bemidji | 2100 Paul Bunyan Drive NW | Bemidji | MN | 56601 |
| 659 | $9,593.37 | $742.84 | Brainerd | 700 Dellwood Drive North | Baxter | MN | 56425 |
| 821 | $10,818.09 | $559.72 | Alexandria | 4404 Highway 29 South | Alexandria | MN | 56308 |
| 847 | $9,593.37 | $627.13 | Virginia | 1001 13th Street South | Virginia | MN | 55792 |
| 904 | $9,593.37 | $509.25 | Grand Rapids | 2140 S Pokegama Ave | Grand Rapids | MN | 55744 |
| 930 | $10,818.09 | $612.08 | St Cloud East | 125 Lincoln Avenue SE | St Cloud | MN | 56304 |
| 3 | $10,818.09 | $780.71 | Crystal | 5537 W. Broadway | Crystal | MN | 55428 |
| 100 | $11,448.83 | $1,028.23 | Ridgedale | 13201 Ridgedale Dr. | Minnetonka | MN | 55305 |
| 240 | $10,818.09 | $749.14 | Brooklyn Center | 6100 Shingle Creek Parkway | Brooklyn Center | MN | 55430 |
| 664 | $18,988.93 | $1,498.00 | Plymouth | 4175 Vinewood Lane North | Plymouth | MN | 55441 |
| 693 | $10,818.09 | $752.08 | Brooklyn Park | 7535 West Broadway | Brooklyn Park | MN | 55428 |
| 820 | $9,593.37 | $760.34 | Northtown | 8600 Springbrook Dr | Coon Rapids | MN | 55433 |
| 1095 | $10,818.09 | $926.52 | Minneapolis-NE | 1650 New Brighton Blvd | Minneapolis | MN | 55413 |
| 2025 | $10,818.09 | $888.59 | Andover | 2000 Bunker Lake Blvd. NW | Andover | MN | 55304 |
| 931 | $9,593.37 | $781.83 | Stillwater | 2021 Market Drive | Stillwater | MN | 55082 |
| 1185 | $11,448.33 | $952.63 | N. St.Paul | 2199 East Highway 36 | North St.Paul | MN | 55109 |
| 661 | $9,593.37 | $541.73 | Willmar | 2505 SW 1st Street | Willmar | MN | 56201 |
| 861 | $9,593.37 | $586.53 | Buffalo | 1300 State Hwy 55 E | Buffalo | MN | 55313 |
| 1144 | $11,448.83 | $1,028.37 | Coon Rapids | 3300 124th Avenue | Coon Rapids | MN | 55433 |
| 1145 | $10,818.09 | $838.95 | Maple Grove | 9450 Dunkirk Lane | Maple Grove | MN | 55311 |
| 1210 | $9,593.37 | $694.89 | Hutchinson | 1370 Highway 15 S. | Hutchinson | MN | 55350 |
| 1244 | $9,593.37 | $800.73 | Forest Lake | 356 12th Street SW | Forest Lake | MN | 55025 |
| 732 | $10,521.28 | $679.77 | CHI-Cicero | 2901 South Cicero Ave | Cicero | IL | 60804 |
| 841 | $10,717.94 | $681.94 | Bedford Park | 7100 S Cicero Ave | Bedford Park | IL | 60629 |
| 942 | $20,138.16 | $1,827.56 | CHI-Chicago Near North | 2656 N. Elston | Chicago | IL | 60647 |
| 1437 | $15,284.39 | $1,531.11 | Chicago Mid North | Addison Rd & Sacramento St | Chicago | IL | 60618 |
| 1488 | $10,129.54 | $902.30 | Chicago South | 8560 South Cottage Grove Ave | Chicago | IL | 60619 |
| 1889 | $15,284.39 | $1,211.49 | Chicago South Loop | 1154 S Clark St | Chicago | IL | 60605 |
| 2078 | $10,521.28 | $769.86 | Chicago McKinley Park | 1940 W 33RD ST | Chicago McKinley Park | IL | 60608-6107 |
| 842 | $10,521.28 | $787.29 | Orland Park | 15850 S 94th Ave | Orland Park | IL | 60462 |
| 866 | $10,129.54 | $658.49 | Woodridge | 2333 63rd Street | Woodridge | IL | 60517 |
| 867 | $10,129.54 | $654.71 | Bolingbrook | 1188 West Boughton Rd | Bolingbrook | IL | 60440 |
| 1213 | $10,129.54 | $654.29 | CHI-Lemont | 13460 Archer Avenue | Lemont | IL | 60439 |
| 1403 | $10,129.54 | $653.10 | Plainfield | 12800 S Route 59 | Plainfield | IL | 60544 |
| 1881 | $10,129.54 | $655.76 | Shorewood | 1111 Brook Forest Ave | Shorewood | IL | 60431 |
| 1882 | $10,129.54 | $671.23 | Willowbrook | 7601 Kingery Hwy | Willowbrook | IL | 60527-5538 |

| 2028 | $8,987.01 | $639.34 | New Lenox | 2370 East Lincoln Highway | New Lenox | IL | 60451-9533 |
|------|-----------|---------|-----------|---------------------------|-----------|----|----|
| 837 | $10,717.94 | $733.25 | Melrose Park | 850 West North Ave | Melrose Park | IL | 60160 |
| 927 | $10,717.94 | $775.25 | CHI-Evanston | 2209 W Howard Street | Evanston | IL | 60202 |
| 928 | $10,129.54 | $757.33 | CHI-Niles | 6150 Touhy Avenue | Niles | IL | 60714 |
| 1342 | $10,129.54 | $708.68 | Rosemont | 7000 N Manhiem Rod | Rosemont | IL | 60018 |
| 1924 | $10,717.94 | $668.15 | Chicago Brickyard | 6525 W Diversey Ave | Chicago | IL | 60707 |
| 731 | $9,833.57 | $862.61 | CHI-Highland | 10451 Indianapolis Blvd | Highland | IN | 46322 |
| 843 | $10,129.54 | $711.06 | Hodgkins | 9250 Joliet Road | Hodgkins | IL | 60525 |
| 846 | $10,129.54 | $657.65 | Calumet City | 1717 East West Road | Calumet City | IL | 60409 |
| 870 | $9,833.57 | $722.12 | Lake County | 2661 E US 30 | Merrillville | IN | 46410 |
| 1286 | $8,724.43 | $806.61 | Valparaiso | 2450 Laporte Avenue | Valparaiso | IN | 46383 |
| 1460 | $8,987.01 | $653.59 | Homewood | 17601 South Halstad Street | Homewood | IL | 60430 |
| 137 | $8,987.01 | $551.39 | Bloomington/Normal | 301 South Veterans Pkwy | Normal | IL | 61761 |
| 670 | $10,129.54 | $684.11 | Springfield | 3445 Freedom Drive | Springfield | IL | 62704 |
| 871 | $10,129.54 | $676.83 | Peoria | 5001 Big Hollow Rd | Peoria | IL | 61615 |
| 26 | $9,882.76 | $624.75 | Ballwin | 15025 Manchester Road | Ballwin | MO | 63011 |
| 1102 | $10,457.37 | $785.40 | Brentwood | 25 Brentwood Promenade | Brentwood | MO | 63144 |
| 1278 | $8,767.01 | $612.99 | Arnold | 3849 Vogel Road | Arnold | MO | 63010 |
| 1279 | $9,882.76 | $719.95 | Kirkwood | 1042 South Kirkwood Road | Kirkwood | MO | 63122 |
| 1314 | $8,767.01 | $616.63 | Fenton | 197 Gravois Bluff Plaza Drive | Fenton | MO | 63026 |
| 1353 | $9,882.76 | $679.77 | Chesterfield | 40 THF Blvd | Chesterfield | MO | 63005 |
| 1509 | $9,882.76 | $710.08 | St. Louis | 4250 Rusty Road | St. Louis | MO | 63128 |
| 1515 | $10,457.37 | $1,005.00 | Hampton Village | 4255 HAMPTON AVE | Saint Louis | MO | 63109-2120 |
| 12 | $8,767.01 | $553.91 | Bridgeton | 12275 St. Charles Rock Road | Bridgeton | MO | 63044 |
| 78 | $8,987.01 | $531.16 | Alton | 300 E Homer M Adams Pkwy | Alton | IL | 62002 |
| 674 | $8,987.01 | $598.01 | Marion | 3000 West De Young Road | Marion | IL | 62959 |
| 992 | $8,767.01 | $438.48 | Cape Girardeau | 202 Siemers Drive | Cape Girardeau | MO | 63701 |
| 1035 | $8,767.01 | $607.04 | STL-St.Peters | 6241 Mid Rivers Mall Drive | St.Charles | MO | 63304 |
| 1101 | $9,882.76 | $665.49 | Florissant | 2341 North Highway 67 | Florissant | MO | 63033 |
| 1241 | $9,882.76 | $688.17 | O'Fallon | 2300 Highway K | O'Fallon | MO | 63366 |
| 1280 | $8,767.01 | $675.36 | St.Charles | 3881 Mexico Road | St. Charles | MO | 63303 |
| 1539 | $10,129.54 | $751.80 | Shiloh | 3400 Green Mountcrossing Dr | Shiloh | IL | 62269-7277 |
| 239 | $8,767.01 | $572.67 | Columbia | 2400 Bernadette Drive | Columbia | MO | 65203 |
| 1914 | $8,767.01 | $639.03 | Osage Beach | 3880 Highway D | Lake Ozark | MO | 85049-8405 |
| 25 | $9,833.21 | $751.87 | Wauwatosa | 3900 North 124th Street | Wauwatosa | WI | 53222 |
| 82 | $9,833.21 | $698.60 | Waukesha | 2401 Kossow Road | Waukesha | WI | 53186 |
| 1895 | $8,725.60 | $695.31 | West Milwaukee | 1501 Miller Park Way | West Milwaukee | WI | 53214-3654 |
| 1925 | $8,725.60 | $615.60 | Oak Creek | 8989 S. Howell Ave. | Oak Creek | WI | 53154 |
| 753 | $8,987.01 | $639.17 | Palatine | 679 E. Dundee Road | Palatine | IL | 60067 |
| 833 | $15,000.00 | $1,055.00 | Vernon Hills | 313 E Townline Road | Vernon Hills | IL | 60061 |
| 865 | $10,129.54 | $836.15 | Gurnee | 6601 West Grand Ave. | Gurnee | IL | 60031 |
| 1036 | $8,987.01 | $624.68 | Lake Zurich | 555 South Rand Road | Lake Zurich | IL | 60047 |
| 1167 | $10,129.54 | $726.81 | Glenview | 2241 Willow Road | Glenview | IL | 60025 |
| 1168 | $10,129.54 | $717.50 | CHI-Highland Park | 2099 Skokie Valley Road | Highland Park | IL | 60035 |
| 1176 | $10,129.54 | $683.06 | CHI-Arlington Hts | 1700 East Rand Road | Arlington Heights | IL | 60004 |
| 1385 | $10,129.54 | $649.18 | Wheeling | 1400 W Lake Cook Road | Wheeling | IL | 60090 |
| 838 | $10,129.54 | $708.12 | Wheaton | 601 S County Farm Road | Wheaton | IL | 60187 |
| 839 | $10,129.54 | $705.67 | Bativa | 115 N Randall Rd | Bativa | IL | 60510- |

| | | | | | | | | 9209 |
|---|---|---|---|---|---|---|---|---|
| 957 | $9,943.68 | $603.96 | Villa Park | 50 East North Avenue | Villa Park | IL | 60181 | |
| 1024 | $10,129.54 | $696.99 | CHI-Lombard | 60 York Town Center | Lombard | IL | 60148 | |
| 1402 | $10,129.54 | $657.44 | Oswego | 3020 Rte 34 | Oswego | IL | 60543 | |
| 835 | $10,129.54 | $667.73 | West Schaumburg | | West Schaumburg | IL | | |
| 880 | $10,129.54 | $696.08 | Schaumberg | 1235 E. Higgins Road | Schaumburg | IL | 60173 | |
| 1166 | $8,987.01 | $697.27 | Crystal Lake | 5580 Northwest Highway | Crystal Lake | IL | 60014 | |
| 2122 | $9,943.68 | $689.57 | Hoffman Estates | 2800 SUTTON ROAD | Hoffman Estates | IL | 60192 | |
| 807 | $8,725.60 | $599.83 | Oshkosh | 1900 S Koeller St | Oshkosh | WI | 54901 | |
| 808 | $8,725.60 | $594.09 | Fond du Lac | 485 N Rolling Meadow Dr | Fond du Lac | WI | 54937 | |
| 863 | $9,833.21 | $665.35 | Menomonee Falls | N95 W17707 Shady Lane | MenomoneeFalls | WI | 53051 | |
| 1246 | $8,725.60 | $475.58 | Sturgeon Bay | 410 Ashland Ave | Sturgeon Bay | WI | 54235 | |
| 1247 | $9,833.21 | $665.77 | Green Bay West | 1001 Cormier Rd | Ashwaubenon | WI | 54304 | |
| 1248 | $8,725.60 | $626.99 | Appleton East | 1800 South Kensington Drive | Appleton | WI | 54915 | |
| 1483 | $8,725.60 | $628.32 | Bellevue | 2050 Lime Kiln Rd | Bellvue | WI | 54311 | |
| 1880 | $8,725.60 | $579.67 | Kohler | 4085 State Hwy 28 | Kohler | WI | 53085-2848 | |
| 809 | $8,725.60 | $613.69 | Janesville | 2017 Humes Road | Janesville | WI | 53027 | |
| 810 | $10,717.94 | $824.39 | Rockford | 6560 E. State Street | Rockford | IL | 61108 | |
| 1060 | $10,403.64 | $821.52 | Madison-West | 201 Junction Road | Madison | WI | 53717 | |
| 1069 | $9,833.21 | $708.68 | Madison | 4301 Lien Rd | Madison | WI | 53704 | |
| 1799 | $8,987.01 | $648.27 | Machesney Park | 9833 N. Alpine Rd. | Machesney Park | IL | 61115 | |
| 147 | $8,600.63 | $496.72 | Arapahoe | 6767 South Clinton | Englewood | CO | 80112 | |
| 256 | $9,694.51 | $596.75 | Aurora SE | 16910 East Quincy Avenue | Aurora | CO | 80015 | |
| 1413 | $9,694.51 | $658.91 | Aurora West | 1400 S. Havana St. | Aurora | CO | 80012 | |
| 1471 | $15,086.51 | $1,198.54 | Aurora | 14200 E. Ellsworth Ave. | Aurora | CO | 80012 | |
| 1806 | $15,086.51 | $1,298.78 | Glendale | 4301 E. Virginia Avenue | Glendale | CO | 80246 | |
| 41 | $8,600.63 | $431.41 | South Denver | 2155 South Sheridan Blvd | Denver | CO | 80227 | |
| 48 | $9,694.51 | $637.84 | Arvada | 7899 Wadsworth Boulevard | Arvada | CO | 80003 | |
| 216 | $8,600.63 | $378.14 | Lakeside | 5801 44th Avenue West | Denver | CO | 80212 | |
| 951 | $9,694.51 | $567.00 | DEN-Broomfield | 1660 West Midway Blvd | Broomfield | CO | 80020 | |
| 1372 | $15,086.51 | $1,276.03 | Thornton | 1001 E. 120th Ave. | Thornton | CO | 80233 | |
| 1500 | $15,086.51 | $1,119.65 | Denver West | 14500 West Colfax Ave. | Lakewood | CO | 80401 | |
| 1776 | $15,086.51 | $1,260.63 | Denver SW | 9390 W. Cross Dr | Littleton | CO | 80123 | |
| 1928 | $15,086.51 | $1,014.72 | Westminster | 10445 Reed Street | Westminster | CO | 80031 | |
| 2021 | $14,809.69 | $1,520.32 | Arvada South | 5071 Kipling Stree | Arvada | CO | 80002 | |
| 1339 | $16,244.53 | $1,338.12 | Arlington North | 1600 W Arbrook Blvd | Arlington | TX | 76015 | |
| 1763 | $16,244.53 | $1,268.26 | Dallas-Frisco | 3201 Preston Road | Frisco | TX | 75034 | |
| 1764 | $16,244.53 | $1,266.51 | Dallas-Plano West | 2200 Dallas Parkway | Plano | TX | 75092 | |
| 1784 | $16,244.53 | $1,304.38 | Dallas NE | 6419 Skillman Street | Dallas | TX | 75231 | |
| 1114 | $10,820.72 | $731.71 | Little Rock | 12700 Chenal Parkway | Little Rock | AR | 72211 | |
| 1470 | $9,601.87 | $650.23 | Fayetteville | 3545 North Shiloh Drive | Fayetteville | AR | 72703 | |
| 1981 | $9,439.23 | $619.10 | Weatherford | | Weatherford | TX | | |
| 2008 | $9,439.23 | $638.01 | Lake Worth | | Lake Worth | TX | | |
| 1535 | $9,439.00 | $574.14 | Galveston | 6128 Broadway St. | Galveston | TX | 77551-1030 | |
| 824 | $11,465.28 | $802.76 | McAllen | 708 E Expressway 83 | McAllen | TX | 78504 | |
| 1490 | $10,836.53 | $680.61 | McAllen North | 7200 North 10th Street | McAllen | TX | 78504 | |
| 1975 | $10,638.00 | $731.32 | Houston Meyerland | SWC Hwy 610 & Beachnut St | Houston | TX | | |
| 1061 | $10,638.00 | $684.81 | Austin-Southwest | 5300 S. Mopac | Austin | TX | 78749 | |
| 1354 | $16,245.00 | $1,120.14 | San Antonio N | 18255 Blanco Rd | San Antonio North | TX | 78258 | |

| 1523 | $16,245.00 | $1,243.13 | Balcones Heights Crossroads | 4522 Fredricksburg Road | Balcones Hgts | TX | 78201-6521 |
|------|-----------|-----------|------|------|------|----|------|
| 1369 | $15,129.00 | $1,248.94 | Baton Rouge Siegen | 6885 Siegen Lane | Baton Rouge Siegen | LA | 70809 |
| 1449 | $12,842.81 | $1,141.42 | Metairie | 4500 Veterans Blvd | Metairie | LA | 70006 |
| 1450 | $8,792.00 | $600.11 | Houma | 1727 Martin Luther King Blvd | Houma | LA | 70360 |
| 1451 | $8,792.00 | $618.87 | Harvey | 1731 Manhattan Blvd | Harvey | LA | 70058 |
| 1498 | $8,792.00 | $618.31 | Slidell | 61121 Airport Rd. | Slidell | LA | 70460-6838 |
| 1876 | $8,792.00 | $667.66 | Covington | 69320 Hwy 21 | Mandeville | LA | 70433 |
| 2055 | $8,792.00 | $613.77 | Hattiesburg | 6143 U S HIGHWAY 98 Suite 80 | HATTIESBURG | MS | 39402-8533 |
| 2089 | $15,129.00 | $1,075.00 | Baton Rouge East | 2001 MILLERVILLE RD | Baton Rouge | LA | 70816-1408 |
| 1531 | $10,638.00 | $714.98 | Waco | 5401 Bosque Blvd | Waco | TX | 76710-4442 |
| 1817 | $16,245.00 | $1,180.69 | Austin NE | SEC I-35 & Parmer Lane | Austin | TX | 78753 |
| 1982 | $9,439.00 | $679.21 | Georgetown | 1021 W University St B3 | Georgetown | TX | |
| 167 | $8,791.56 | $528.43 | Alexandria | 2206 Memorial Drive | Alexandria | LA | 71301 |
| 1399 | $8,792.00 | $595.77 | Lake Charles | 1720 Prien Lake Rd | Lake Charles | LA | 70601 |
| 1469 | $8,792.00 | $636.51 | Monroe | 4103 Pecanland Mall Drive | Monroe | LA | 71210 |
| 1473 | $15,129.00 | $1,221.08 | Lafayette | 4115 Ambassador Caffery Pkwy | Lafayette | LA | 70501 |
| 1877 | $9,439.00 | $596.96 | Port Arthur | 3100 Highway 365 STE 90 | Port Arthur | TX | 77642-7724 |
| 373 | $9,961.95 | $673.19 | Smyrna | 2201 Cobb Parkway So | Smyrna | GA | 30080 |
| 969 | $8,841.34 | $528.01 | Cartersville | 100 Cherokee Place | Cartersville | GA | 30120 |
| 1165 | $9,779.16 | $744.03 | ATL-West Mariett | 2535 Dallas Highway | Marietta | GA | 30092 |
| 747 | $8,841.34 | $676.76 | Lawrenceville | 875 Lawrenceville-Scewence Rd | Lawrenceville | GA | 30045 |
| 749 | $8,841.34 | $680.19 | Riverwood | 5950 State Bridge Road | Duluth | GA | 30097 |
| 982 | $8,841.34 | $682.43 | Norcross | 3200 Holcomb Bridge Rd | Norcross | GA | 30092 |
| 1197 | $13,189.88 | $1,117.41 | ATL-Buckhead | 3535 Peachtree Road NE | Atlanta | GA | 30326 |
| 1206 | $9,961.95 | $771.96 | Buford | 3205 Woodward Crossing Blvd | Buford | GA | 30519 |
| 1394 | $14,927.86 | $1,227.24 | Cumming | 1525 Marketplace Blvd | Cumming | GA | 30041 |
| 1779 | $14,927.86 | $1,316.56 | Gwinnett GA | 3935 Venture Drive NW | Duluth | GA | 30096 |
| 2036 | $15,206.89 | $1,644.30 | Atlanta Perimeter | 100 PERIMETER CTR PL NE | Atlanta | GA | 30346-1204 |
| 2056 | $15,206.89 | $1,347.57 | John's Creek | 2625 PEACHTREE PKWY | SUWANEE | GA | 30024-1048 |
| 748 | $8,841.34 | $677.25 | Morrow | 1940 Mount Zion Road | Morrow | GA | 30260 |
| 1073 | $8,841.34 | $498.05 | Carrollton | 1129 South Park Street | Carrollton | GA | 30117 |
| 1164 | $8,841.34 | $717.50 | Austell | 4125 Austell Road | Austell | GA | 30106 |
| 1172 | $8,841.34 | $564.69 | Douglasville | 2950 Chapel Hill Road | Douglasville | GA | 30135 |
| 1223 | $8,841.34 | $693.21 | Newnan | 555 Bullsboro Road | Newnan | GA | 30263 |
| 1486 | $9,961.95 | $910.98 | North Druid Hills | 4200 North Druid Hill Road | Atlanta | GA | 30329 |
| 1546 | $8,841.34 | $713.30 | East Point | NWQ Camp Creek Pkwy. & I-285 | Atlanta | GA | 30344 |
| 379 | $9,779.16 | $564.41 | Conyers | 1648 Highway 138 | Conyers | GA | 30013 |
| 917 | $8,841.34 | $729.40 | Snellville | 1905 Scenic Hwy N | Snellville | GA | 30078 |
| 1379 | $8,841.34 | $703.29 | Macon | 4609 Log Cabin Road | Macon | GA | 31206 |
| 1380 | $8,841.34 | $695.38 | Warner Robins | 2929 Watson Blvd. | Warner Robins | GA | 31093 |
| 1453 | $8,841.34 | $768.60 | Athens | SWQ US78 & Epps Rd. | Athens | GA | 30606 |
| 1758 | $14,927.86 | $1,486.59 | Stone Mountain | 2055 West Park Place Blvd | Stone Mountain | GA | 30087 |

| 1964 | $9,961.95 | $1,023.24 | Atlanta Edgewood | 1275 Caroline St NE | Altanta | GA | |
| 1179 | $9,961.95 | $785.68 | Columbus | 1591 Bradley Park Drive | Columbus | GA | 31909 |
| 1090 | $9,961.95 | $827.54 | Augusta | 235 Robert C. Daniel Jr Pkwy | Augusta | GA | 30909 |
| 1182 | $10,025.00 | $690.34 | Greenville | 1112 Woodruff Road | Greenville | SC | 29607 |
| 1198 | $8,894.48 | $595.77 | Anderson | 3519 Clemson Blvd | Anderson | SC | 29621 |
| 1199 | $10,025.00 | $660.17 | Columbia NW | 134 Harbison Blvd. | Columbia | SC | 29212 |
| 1310 | $8,894.48 | $603.12 | Aiken | 2545 Whiskey Road | Aiken | SC | 29803 |
| 1319 | $8,894.48 | $607.81 | Columbia NE | 10204 Two Notch Road | Columbia | SC | 29223 |
| 1349 | $8,894.48 | $607.39 | Spartanburg | 8199 Greenville Hwy | Spartanburg | SC | 29301 |
| 1870 | $8,894.48 | $635.81 | Simpsonville | 694 Fairview Rd | Simpsonville | SC | 29680-6708 |
| 1923 | $8,894.48 | $611.52 | Columbia Garners Ferry | 6090A Garners Ferry Rd | Columbia | SC | 29209 |
| 1937 | $8,894.48 | $611.52 | Greer SC | 6025 Wade Hampton Blvd | Greer | SC | 29687 |
| 2027 | $8,841.34 | $708.10 | Evans | 4223 WASHINGTON RD | Evans | GA | 30809-3069 |
| 963 | $8,894.48 | $485.10 | Myrtle Beach | 1150 Seaboard Street | Myrtle Beach | SC | 29577 |
| 1298 | $8,894.48 | $628.74 | Hilton Head | 1050 Fording Island Road | Bluffton | SC | 29910 |
| 1391 | $8,894.48 | $678.79 | Charleston South | 2070 Sam Rillenberg Blvd | Charleston | SC | 29407 |
| 1452 | $8,894.48 | $621.67 | Florence | 2791 David McLeod Blvd | Florence | SC | 29501 |
| 1493 | $8,894.48 | $577.50 | Summerville | 450 Azalea Square Blvd @ Interstate 26 & US17-A | Summerville | SC | 29483 |
| 1529 | $8,894.48 | $658.00 | Mt. Pleasant | 1300 Long Grove Drive | Mt. Pleasant | SC | 29464-9462 |
| 1829 | $8,894.48 | $648.41 | North Charleston | SEQ Rivers Avenue and Ashley Phosphate Road | North Charleston | SC | 29406 |
| 1910 | $9,961.95 | $744.45 | Savannah | 14045 Abercorn St | Savannah | GA | 31419 |
| 151 | $9,016.55 | $623.14 | Knoxville West | 8040 Ray Mears Boulevard | Knoxville | TN | 37919 |
| 795 | $9,016.55 | $572.18 | Knoxville NW | 6670 Clinton Hwy | Knoxville | TN | 37912 |
| 1250 | $9,016.55 | $643.65 | Maryville | 800 Watkins Road | Maryville | TN | 37803 |
| 387 | $8,767.01 | $504.00 | Gastonia | 197 Old New Hope Road | Gastonia | NC | 28052 |
| 762 | $9,952.79 | $669.97 | CLT-Pineville | 9531 South Boulevard | Charlotte | NC | 28273 |
| 918 | $8,991.41 | $669.41 | Charlotte SE | 1900 Matthews Twp Parkway | Matthews | NC | 28105 |
| 1081 | $9,952.79 | $688.66 | Charlotte | 8120 University City Blvd | Charlotte | NC | 28213 |
| 1371 | $8,894.48 | $593.95 | Rock Hill | 1900 Springsteen Rd | Rock Hill | SC | 29730 |
| 1793 | $8,991.41 | $658.49 | Charlotte East | SEQ Albemarle and Eastern CircumferentialC | Charlotte | NC | 28227 |
| 2074 | $8,991.41 | $626.22 | Monroe | 2901 W HIGHWAY 74 | MONROE | NC | 28110-8435 |
| 2090 | $9,952.79 | $700.21 | Charlotte Far S | 9870 REA RD | CHARLOTTE | NC | 28277-6655 |
| 960 | $9,952.79 | $697.48 | RAL-CAPITAL RETAIL Blvd | 4700 Green Road | Raleigh | NC | 27604 |
| 961 | $10,729.73 | $901.88 | RAL-Cary | 2021 Walnut Street | Cary | NC | 27511 |
| 1080 | $9,952.79 | $752.78 | Raleigh | 4841 Grove Barton Rd | Raleigh | NC | 27612 |
| 1794 | $9,952.79 | $714.21 | Raleigh NW | 8651 Brier Creek Parkway | Raleigh | NC | 27560 |
| 1892 | $9,952.79 | $642.60 | Raleigh Central | 4191 The Circle at North Hills St. | Raleigh | NC | 27609 |
| 2069 | $15,499.59 | $1,358.52 | Durham | 8210 Renaissance Pky | Durham | NC | 27713-6688 |
| 1104 | $8,991.41 | $711.76 | Garner | 2700 Timber Drive | Garner | NC | 27529 |
| 1824 | $10,138.82 | $661.78 | Garner East | SWQ Highway 70 & Interstate 40 - Intersection of White Oak Road and Timber Drive/Greenfield Parkway | Garner | NC | 27529 |

| 1077 | $8,991.41 | $648.69 | Winston-Salem | 5420 University Parkway | Winston-Salem | NC | 27105 |
| 1078 | $9,952.79 | $697.48 | Greensboro | 1212 Bridford Parkway | Greensboro | NC | 27405 |
| 1086 | $10,138.82 | $718.48 | Winston Salem | 1040 Hanes Mall Boulevard | Winston Salem | NC | 27103 |
| 1180 | $9,952.79 | $766.50 | Greensboro N.W. | 2600 Lawndale Drive | Greensboro | NC | 27408 |
| 1181 | $8,991.41 | $693.00 | Hickory | 1910 Catawba Valley Blvd. S.E. | Hickory | NC | 28602 |
| 1807 | $8,991.41 | $728.35 | Asheville | SWQ River Hills Rd and Tunnel Road | Asheville | NC | 28802 |
| 2011 | $8,991.41 | $745.09 | Asheville South | | Arden | NC | |
| 2037 | $8,991.41 | $685.67 | Burlington | | Burlington | NC | |
| 1431 | $13,342.64 | $915.32 | Falls Church | 6100 Arlington Blvd | Falls Church | VA | 22044-2901 |
| 1893 | $13,342.64 | $624.75 | Skyline | 5115 Leesburg Pike | Falls Church | VA | 22041 |
| 2017 | $8,996.75 | $577.00 | Dumfries | 4310 Fortuna Center Plaza | Dumfries | VA | 22026 |
| 1004 | $11,199.96 | $815.43 | Bowie | 4600 Mitchellville Rd | Bowie | MD | 20716 |
| 1897 | $9,562.48 | $661.01 | Forestville | 3101 Donnell Dr | District Heights | MD | 20747 |
| 1234 | $8,996.75 | $643.30 | Winchester | 2340 Legge Blvd | Wionchester | VA | 22601 |
| 1827 | $9,957.54 | $694.96 | Chantilly | SWQ U.S. Route 50 and Route 28 | Chantilly | VA | 20151 |
| 1415 | $14,281.76 | $1,122.52 | Wheaton | 11160 Viers Mill Rd | Wheaton | MD | 20902 |
| 1295 | $11,199.96 | $718.90 | Greenbelt | 6100 Greenbelt Road | Greenbelt | MD | 20770 |
| 772 | $9,957.54 | $700.42 | Fredericksburg | 1180 Carl D. Silver Pkwy | Fredericksburg | VA | 22401 |
| 1857 | $8,996.75 | $632.24 | Stafford | 1090 Stafford Market Pl | Stafford | VA | 22556-4523 |
| 1042 | $10,781.51 | $774.13 | BWI-Ellicott City | 4390 Montgomery Road | Ellicott City | MD | 21043 |

**4.2.    Discount.**
    Supplier agrees to the following **Discount for Early Payment**: (check applicable box)
☐    Option not available
☐    Target may elect to take a discount of _____% for payment made within_____ days of receipt of Supplier's invoice.

**4.3.    Invoices.**
    Target pays from invoice only and no amount shall be payable by Target hereunder until Supplier has complied with the payment procedures set forth in the Scope of Work, or with such other reasonable procedures as Target may designate in writing. Invoices must be submitted during the first week of the month following the month in which the invoiced Services were provided. Invoices shall be submitted to Target's designated billing address and shall be accompanied by such backup documentation as Target may reasonably require. Target shall pay proper invoices within thirty days of receipt. If applicable, Target may deduct from the amount of an invoice the amount of the discount for early payment or any amount due and payable by Supplier to Target hereunder. In no event shall Supplier deliver invoices or shall Target be obligated to pay invoices for Services not actually provided prior to the invoice date.

**4.4.    Inclusive of Applicable Taxes.**
    The amount payable to Supplier listed in this Section shall include any and all taxes of whatever type, including sales and use taxes, based upon Suppliers provision of Services to Target under this Agreement.

**4.5.    Performance Charges.**
    In Target's sole discretion and as may be further described in the Scope of Work, Supplier may be subject to certain charges for failure to perform Services as required by Target. Such charges payable by Supplier shall, in Target's sole and absolute discretion, be paid in cash, credited against other Services, deducted from outstanding invoices or set-off against Supplier's account, or any combination of these.

**5.    INDEPENDENT CONTRACTOR.**

**5.1.    Relationship.**

By this Agreement, Target and Supplier intend to create an independent contractor relationship. As such, Target is interested only in the results of Supplier's performance and not the specific method or manner of performance. Therefore, while Supplier agrees to perform the Services in accordance with and to Target's standards and specifications, Supplier retains sole and exclusive control over the method and manner in which the Services are performed. All Services performed pursuant to this Agreement are subject to Target's right of inspection and must meet with Target's approval.

**5.2.    Employment Law Compliance.**

(a)    The parties agree that Supplier desires to and shall be the sole employer of all persons providing Services under this Agreement and that Target is establishing only an independent contractor relationship with Supplier and all such persons. All persons used by Supplier to provide Services under this Agreement shall be employees only of Supplier and shall not in any way be employed, including directly or jointly, by Target. Supplier shall be exclusively responsible for recruiting, hiring, disciplining, terminating and managing all persons providing Services. Target shall have no authority to hire, terminate, control, supervise or direct such persons. Accordingly, Supplier shall pay all taxes imposed by reason of the employment of such persons, including, but not limited to, any payroll taxes, social security taxes, unemployment compensation taxes and the like; and shall pay to all such persons all earned compensation including any required overtime. Supplier shall also be exclusively responsible with regard to such persons for compliance with all immigration and work authorization laws, and all other federal, state and local laws related to the employment relationship including, but not limited to, compensation, benefits, workers compensation, and wage and hour requirements.

(b)    Supplier shall pay all federal, state and local payroll, social security, unemployment and other taxes, contributions and premiums required to be withheld or paid with respect to its employees, and shall file all returns incident to such taxes, contributions and premiums. Target shall have no obligation to provide Supplier or any of Supplier's employees with any employee benefits provided for employees of Target. Supplier may not claim benefits from Target under applicable workers' compensation laws for injuries sustained by Supplier or its employees while providing Services.

(c)    In addition, Supplier agrees to comply with all federal, state and local laws, regulations and requirements applicable to employment of persons providing Services including, but not limited to, laws regarding immigration compliance, work authorization, compensation, overtime, minimum wage, the provision of meal and break periods, and prohibitions against discrimination and harassment. Supplier understands that it is exclusively responsible for ensuring and shall ensure that such persons take appropriate meal periods and rest breaks as required by law.

**5.3.    Not an Agent.**

Supplier shall have no right to purchase goods or services in the name of Target, execute or make contracts in the name of Target, or obligate Target in any way. Supplier is not an agent or employee of Target and cannot represent itself as such. Expenses incurred by Supplier in the performance of this Agreement shall be reimbursed only if approved by Target in writing prior to being incurred by Supplier.

**5.4.    Indemnification.**

In the event any court or administrative tribunal or agency with appropriate jurisdiction determines that an employment relationship has been or shall be established by the performance of this Agreement, this Agreement shall immediately cease and Supplier shall reimburse and indemnify Target for expenses of any nature, including, but not limited to, tax withholding and insurance claims in the nature of unemployment compensation and/or workers' compensation, imposed by any level of government.

**6.    COMPLIANCE WITH LAW.**

**6.1.    General.**

Supplier shall comply with all federal, state and local government laws, regulations and requirements applicable to Supplier's performance under this Agreement (including, by way of

illustration only and not intending to limit the generality of the foregoing, applicable federal or state OSHA regulations and guidelines, EPA regulations and guidelines and all other applicable regulations governing the use, clean-up and disposal of materials used in providing Services (including requirements relating to the provision of material safety data sheets)). Supplier shall procure and maintain at its sole expense all necessary permits and licenses for the conduct of its business. In the event of an allegation that Supplier has failed to comply with any law, regulation or requirement, or failed to obtain any permit or license, Supplier shall pay any fines or penalties imposed upon Target and shall reimburse Target for any expenses (including attorneys' fees) incurred by Target in responding to such allegation.

**6.2.    Compliance Certification.**

Supplier certifies that all of its employees and agents performing Services pursuant to this Agreement have provided Supplier with proper documentation indicating that they are legally authorized to work in the United States. Supplier shall, from time to time as may be required by Target, provide a written, notarized certification statement to Target that all employees of Supplier, and all agents, servants, independent contractors or anyone else related to Supplier, meet Supplier's obligations under this Agreement and are properly documented to legally work in the United States (the certification statement is sometimes referred to as the "Compliance Certification"). The form of Compliance Certification shall be provided by Target.

7.    **WORKERS PERFORMING SERVICES UNDER THIS AGREEMENT.**    *Complete this Section 7 only if the Services to be provided under this Agreement are Landscaping, Pest Control, Lot Sweeping, Snow and Ice Control, Housekeeping, or Re-lamping Services being provided in the State of California.*

**7.1.    Number of Workers.**

The estimated number of workers to be employed by Supplier to perform Services pursuant to this Agreement is _____.    These workers shall be paid an hourly wage of no less than $_____ per hour and shall be paid twice during each calendar month, unless a shorter interval or earlier pay date is required by law. The total wages to be paid per month under this Agreement is approximately $_____.

**7.2.    Independent Contractors.**

(check applicable box)

☐    Not Applicable.    Supplier shall not use independent contractors and warrants and represents that all persons providing Services under this Agreement shall be Supplier's employees.

☐    The total number of persons who shall be utilized by Supplier as independent contractors shall be _____.    These persons' local, state, and/or federal contractor license identification numbers are as follows:

| Name | Identification Number(s) |
|------|--------------------------|
|      |                          |
|      |                          |
|      |                          |
|      |                          |

8.    **WORKER HOUSING.** (check applicable box) *Complete this Section 8 only if the Services to be provided under this Agreement are Landscaping, Pest Control, Lot Sweeping, Snow and Ice Control, Housekeeping, or Re-lamping Services being provided in the State of California.*

☐    Not Applicable. No real property shall be used to house workers in connection with any Services provided pursuant to this Agreement.

☐    The address of real property used to house workers in connection with any Services provided pursuant to this Agreement is as follows:

| Address: | |
|----------|--|
|          |  |

9.    **SUPPLIER VEHICLES**.  (check applicable box) *Complete this Section 9 only if the Services to be provided under this Agreement are Landscaping, Pest Control, Lot Sweeping, Snow and Ice Control, Housekeeping, or Re-lamping Services being provided in the State of California.*

☐    Not Applicable.  No Supplier owned vehicles shall be used for transportation in connection with any Services provided pursuant to this Agreement other than equipment used to provide the Services.

☐    The vehicle identification information for Supplier owned vehicles that shall be used for transportation in connection with any Services provided pursuant to this Agreement, other than equipment used to provide the Services, is as follows:

| | |
|---|---|
| Vehicle identification number(s): | |
| Insurance policy number(s): | |
| Insurance carrier name, address and telephone number: | |

10.    **WARRANTIES AND GUARANTEES.**

Supplier warrants and guarantees that the Services shall be provided in a professional and worker-like manner; shall be performed by properly-trained and competent personnel who hold current licenses or certifications if required to be so licensed or certified by applicable law or industry standard, all of whom are familiar with Target's operations and expectations; and shall meet all industry standards applicable to the Services.  Supplier further warrants and guarantees that its employees shall conform to any and all reasonable clothing and security regulations of Target.

11.    **INDEMNIFICATION.**

    11.1.    **Obligation.**

Except as provided herein, Supplier agrees to assume responsibility for all injuries or damages to persons or property which relate to or arise out of Supplier's performance of Services, Supplier's failure to perform its obligations under this Agreement, or the negligence or wrongful acts of Supplier or its agents or employees.  Supplier, to include its agents, servants, employees, assigns, independent contractors, or anyone else retained by Supplier for the performance of Supplier's obligations under this Agreement, shall defend, indemnify and hold harmless Target and its agents and employees, from and against (1) any and all claims, suits, losses, damages, judgments or expenses (including attorney's fees incurred in responding to claims or suits) which relate to, arise out of, or are asserted or incurred as a result of, Supplier's performance of Services, Supplier's failure to perform its obligations under this Agreement, or the negligence or wrongful acts of Supplier or its agents or employees; and (2) any claims made by Supplier's employees or agents arising out of the performance of Services; provided, however, that the foregoing indemnity obligations shall not apply to any injury, damage or loss to the extent such injury, damage or loss is caused by the sole negligence of Target.  The obligations under this paragraph shall survive the termination of this Agreement.

    11.2.    **Defense.**

Supplier shall, at its expense, be responsible for the defense of any claims or suits for which it is obligated to indemnify Target and shall, in connection with such defense, provide Target with counsel reasonably satisfactory to Target.  Target shall cooperate with Supplier, as Supplier reasonably requires, in any such defense.  Upon request, Supplier shall advise Target of the current status of any action, claim, demand or suit being defended by Supplier in accordance herewith.  Target shall have the right, at its option and at its own expense, to defend (with or without Supplier) any such actions, claims, demands and suits.

    11.3.    **Withhold Amounts.**

If any claims are made against Target as a result of the Services or as a result of any actions or failures to act by the Supplier, or if Target reasonably believes that such claims shall be made, Target may withhold from the amount otherwise due or to become due under this Agreement such amount as Target reasonably determines may be necessary to cover such claims and to cover any costs which Target reasonably anticipates may be incurred in connection

with defending against such claims.  The foregoing right to withhold payment shall not be Target's exclusive remedy and shall be in addition to any other remedies which Target may have under this Agreement or at law or in equity.

## 12.    LIMITATION OF LIABILITY.

The work to be performed under this Agreement shall be performed at Supplier's risk.  Target shall not be liable for any loss, theft or damage of or to the vehicles, tools, equipment, supplies or other property of Supplier or its employees, or in the possession or custody of Supplier or its employees, nor shall Target be liable for any damage to Supplier's business or other consequences arising out of such loss, theft or damage.

## 13.    INSURANCE REQUIREMENTS.

Supplier shall maintain in full force and effect during the term of this Agreement, insurance of the following kinds and amounts, or in amounts required by law, whichever is greater, and meeting such other requirements as set forth below.

### 13.1.    Workers' Compensation and Employer's Liability Insurance.

Workers' compensation insurance, or similar insurance, affording statutory coverage and containing not less then statutory limits for the state(s) in which Supplier is conducting business related to this Agreement, and employer's liability insurance in the amount of $1,000,000 each accident for bodily injury, $1,000,000 each employee for bodily injury by disease, and $1,000,000 policy limit for bodily injury by disease.

Supplier's Workers' Compensation insurance provider and current policy information is as follows:

| | |
|---|---|
| Current policy number: | W3817352 |
| Insurance carrier name, address and telephone number: | Utica National Insurance Group PO Box 530 Utica, NY 13503 (315) 734-2000 |

### 13.2.    Commercial General Liability Insurance Requirements.

Supplier's Commercial General Liability insurance shall designate Target as an additional insured by endorsement acceptable to Target.  Designation of Target as an additional insured shall include as an insured with respect to third party claims or actions brought directly against Target or against Target and Supplier as co-defendants and arising out of this Agreement. Supplier's insurance shall include products and completed operations liability coverage, contractual liability coverage for liabilities assumed by Supplier under this Agreement, and coverage for property in the care, custody or control of Supplier.  Supplier's insurance shall be primary and required to respond to and pay prior to any other available coverage of Target. Supplier's insurance also shall provide for a severability of interests.

### 13.3.    Commercial General Liability Insurance Limits.

Supplier's commercial general liability insurance shall be written on an occurrence basis in amounts not less than the following limits:

(a)    Bodily Injury.  $1 million per person and $2 million annual aggregate **per project**; and

(b)    Property Damage.  $1 million per occurrence and $2 million annual aggregate **per project**.

### 13.4.    Automobile Liability Insurance.

Supplier's Automobile Liability insurance shall include coverage for owned, hired and non-owned autos, in amounts not less than:

(a)    Bodily Injury.  $1 million per person and $2 million per occurrence; and

(b)    Property Damage.  $1 million per occurrence.

### 13.5.    General Insurance Requirements

(a)    Insurer Stability and Size.  All coverage required under this Section shall be procured from a company or companies possessing an A.M. Best rating of A-:X or better.

(b)    Insurer Qualification.  All coverage required under this Section shall be obtained from a company or companies that are authorized to do business under the laws of the state(s) in which Supplier is conducting business related to this Agreement.

(c)    Occurrence Basis. All coverage required under this Section shall be written on an occurrence basis.

(d)    Certificate of Insurance. Supplier shall provide Target with a certificate(s) of insurance, including all applicable endorsements, evidencing the required coverage concurrently with the execution of this Agreement and upon each renewal of such policies. The Certificates of Insurance shall include a clause that obligates the insurer(s) to give Target at least thirty (30) days prior written notice of any material change or cancellation of such policies.

(e)    Self-Insurance. Supplier shall not self-insure its coverage required under this Section without the prior consent of Target.

**13.6.    Professional Liability.**

If the Services are professional services, Supplier shall have professional liability insurance that covers claims arising from real or alleged errors, omissions or negligent acts committed in the performance of the Services. The limits of liability shall not be less than $5,000,000 per occurrence, $5,000,000 aggregate. Coverage shall be maintained in effect for three (3) years after final completion of Services.

**14.    SAFETY.**

Supplier is responsible for its own safety program in accordance with applicable provisions of the Occupational Safety and Health Act (OSHA). Supplier shall be responsible for payment of all fines and/or claims for damages levied against Target for environmental, health and safety deficiencies relating to conduct of the Supplier's work. Supplier shall comply with all applicable local, State, and Federal environmental, safety, and health regulations and with Target's rules and regulations for safety requirements for all outside contractors and construction crews. Supplier shall comply with all provisions of the Prevailing Right-to-know and Resource Conservation and Recovery Act and shall, in addition, provide Target with the substantiation of the same, including: (1) a copy of all material safety data sheets (MSDS) for each covered chemical and shall have a copy of the same available for employees; (2) documentation of required training for its employees; (3) a copy of its written hazard communication program to Target upon request; (4) identifying one person who is in charge of the program; (5) properly labeling and storing all containers of chemicals on site or used in performance of this Agreement; and (6) disposing of all chemicals used in performance of the contract in a manner prescribed by the Resource Conservation and Recovery Act and/or other applicable laws and regulations.

**15.    NON-DISCLOSURE AGREEMENT.**

Supplier has executed a NDA. Supplier acknowledges and agrees that the NDA is in full force and effect and shall apply to its dealings with Target pursuant to this Agreement. Neither party shall exercise its right under the NDA to terminate the NDA while Supplier is providing Services to Target under this Agreement. The NDA shall not terminate upon termination of this Agreement and may only be terminated in accordance with its terms.

**16.    SECURITY AND BONDS.**

**16.1.    Security Regulations.**

Supplier and its employees and agents shall be subject to all security checks and regulations that Target deems necessary and shall comply with any written security regulations provided by Target. Supplier shall advise each of its employees and agents performing Services that Target shall not tolerate theft or misuse of its moneys, merchandise, property or equipment, violation of its security regulations, or abuse of its customers or employees. Target shall have the right to reject any employee or agent of Supplier assigned to duty at Target, and to require the immediate removal of such employee or agent from Target's premises. Supplier shall cooperate in any investigation of theft, loss, or violation of Target's policies involving any of Supplier's employees or agents.

**16.2.    Losses.**

Supplier shall be responsible for all losses to Target occasioned by the activities of its employees or agents (including, but not limited to, thefts) and shall reimburse Target for all such losses. Such losses shall be reimbursed to Target within ten days after Supplier is presented with evidence of the loss. Losses of merchandise shall be calculated on the basis of the retail value of

the merchandise. A signed statement from an employee or agents of Supplier admitting to the theft or loss shall be conclusive evidence of the loss. If Supplier fails to reimburse Target within ten days, Supplier shall be liable for any expenses incurred by Target to recover such losses. Target may withhold the amount of such losses from any payments owed by Target to Supplier. Target shall provide reasonable assistance to aid Supplier in filing a claim with its bonding company or insurance carrier, but Supplier shall reimburse Target for the loss whether or not Supplier is able to recover from its bonding company or insurance carrier.

**16.3.    Dishonesty Bonds.**

If the Services shall be performed inside any Target location during hours that the store is not open for business to the general public, Supplier shall maintain employee dishonesty bonds on its employees providing such services to Target. Such bonds shall:

(c)    be issued by companies licensed to do business in the state where the Services shall be performed;

(d)    be in amounts not less than $25,000.00 per Supplier employee for Target locations;

(e)    include coverage for loss of money, merchandise or other property through any fraudulent or dishonest act committed by any Supplier employee, whether acting alone or in collusion with others;

(f)    state that Target shall be notified in writing at least thirty days prior to cancellation, material change in, or non renewal of the bond.

**17.    TAXES.**

To the extent any sales, use or service tax is incurred with respect to Services provided by Supplier hereunder, (a) Supplier shall reflect such tax as a separate line item on its invoices, (b) Target shall pay Supplier the amount of such tax incurred as reflected on Supplier's invoice, and (c) Supplier shall be liable for paying such sums to the appropriate taxing authority in a timely fashion.

**18.    NON-EXCLUSIVE.**

Target does not agree to use Supplier exclusively or to provide any minimum amount of work. Supplier is free to contract to perform similar services to others during the term of this Agreement.

**19.    ARBITRATION OF DISPUTES.**

In the event of a third party claim or action against Supplier or Target in which Supplier does not agree to wholly and completely indemnify and hold Target harmless, if the third party agrees with Target to submit their dispute to binding or non-binding arbitration or mediation, Supplier shall be bound to participate in such arbitration and/or mediation.

**20.    DEFAULT.**

**20.1.    Remedies.**

In the event Supplier breaches any of its obligations hereunder, Target may undertake any one or more of the following remedies (provided, however, that Target shall not be allowed to receive double recoveries for any damages): (a) terminate this Agreement, effective either upon three days' prior written notice or immediately upon written notice, if the breach is such that Target believes, in its sole opinion, that it must take immediate steps to cure such a breach; (b) cure or begin to cure such breach and (i) invoice Supplier or (ii) set off from any amounts due to Supplier hereunder for Target's reasonable costs in connection therewith, including, without limitation, the cost of enforcing Supplier's obligations hereunder; (c) if the breach involves an obligation, the breach of which may subject Target to a governmental fine or penalty, fine Supplier an amount not to exceed the greater of $1,000.00 or the amount of any penalty or fine imposed by any governmental body in connection therewith; (d) set off any damages incurred by Target arising from such breach against and from any amounts due to Supplier hereunder; and/or (e) sue Supplier for damages and/or specific performance hereunder, or for any other remedy available at law or in equity

**20.2.    Cumulative.**

All remedies given herein are cumulative and the exercise of one remedy shall not preclude the exercise of any other remedy provided herein or by law.

21.    **BUILDING ALARMS.**

In the event a building alarm is negligently or accidentally triggered by Supplier or its employee or agent, Supplier shall pay all of Target out-of-pocket costs and administrative expenses in connection therewith, including a minimum administrative charge of $100. Supplier understands the foregoing amounts payable to Target have been agreed to in view of the difficulty in determining Target's actual costs and damages, because of difficulties in apportioning the costs of personnel responding to such alarms and the fact that Target's alarm contractors/suppliers and public authorities have different policies, procedures and thresholds in connection with false alarms and with violations of rules and regulations.

22.    **SUBCONTRACTING.**

22.1.    **Prior Approval.**

Supplier shall not subcontract for Services that Supplier is to provide under this Agreement without Target's prior written approval. Any approved Subcontractor must execute an agreement that is substantially similar to this Agreement and that complies with all applicable state and federal requirements. In the event that Target's approval is given, the following provisions apply: A Subcontractor is a person or entity who has a direct contract with the Supplier to perform Services for the locations listed in Section 4 above. Supplier shall not contract with any Subcontractor who is not acceptable to Target. Supplier shall make no substitution for any Subcontractor previously selected without first getting Target's approval. Supplier shall provide such information as Target may require from time to time regarding its Subcontractors.

22.2.    **Contract Requirements.**

By an appropriate written contract, Supplier shall require each Subcontractor, to the extent of the Services to be performed by the Subcontractor, to be bound to Supplier by the terms of this Agreement, and to assume toward Supplier all obligations and responsibilities which the Supplier by the Agreement assumes toward Target. Such contract shall preserve and protect Target's rights under the Agreement with respect to the Services to be performed by the Subcontractor, so that the subcontracting thereof shall not prejudice such rights. Supplier shall make available to each proposed Subcontractor copies of those portions of the Agreement to which Subcontractor shall be bound.

22.3.    **Compliance Certification.**

To the extent that Supplier is obligated to provide its own Compliance Certification to Target, Supplier shall require each Subcontractor to provide Supplier a written, notarized certification statement that Subcontractor shall comply with all applicable federal, state and local laws regarding compensation, eligibility and conditions of employment including all wage and hour, minimum wage and overtime laws, and that all employees of Subcontractor, and all agents, servants, independent contractors or anyone else related to Subcontractor to meet Supplier's obligations under the Agreement are properly documented to legally work in the United States. The form of Subcontractor Compliance Certification shall be provided by Target. Supplier shall provide Target copies of such completed Subcontractor Compliance Certifications received from its Subcontractors from time to time as may be required by Target.

22.4.    **No Contract with Target.**

Nothing in this Agreement shall create any contractual relationship between Target and any Subcontractor.

23.    **REQUIRED NOTIFICATIONS.**

23.1.    **Pending Investigations or Claims.**

Supplier agrees to notify Target of any investigation of Supplier by any state or federal agency within seven (7) days after Supplier becomes aware of such investigation. Supplier further agrees to notify Target of any claims, complaints, or lawsuits filed against Supplier within seven (7) days after Supplier becomes aware of such claim, complaint or lawsuit.

23.2.    **Changes to Information Contained in Agreement.**

Supplier shall immediately notify Target of any updates or changes to information provided by Supplier that is contained in this Agreement

24.    **GENERAL PROVISIONS.**

24.1.    **Ariba Supplier Network.**

If requested by Target, Supplier agrees to facilitate purchase and sale transactions by electronically transmitting and receiving data through the Ariba Supplier Network (**ASN**) and the terms of this Section will apply. Specific requirements for doing business with Target via the ASN will be communicated to Supplier by Target from time to time during the term of this Agreement. Each of Target and Supplier shall be responsible for its own relationship with the ASN, including any and all costs of doing business through the ASN. In addition, each party, at its own expense, shall provide and maintain the equipment, software, services and testing necessary to effectively and reliably transmit and receive information through the ASN. Supplier acknowledges that failure to comply with this subsection may result in loss of business and/or termination of this Agreement.

24.2.    **Governing Law and Venue.**

The laws of the State of Minnesota, without regard to conflicts of law principles, govern all matters arising out of or related to this Agreement, including its interpretation, construction, performance and enforcement. Any party bringing a legal action or proceeding against any other party arising out of or related to this Agreement must be brought exclusively in a state or federal court located in Minnesota and each party irrevocably accepts and submits to the exclusive jurisdiction of such courts.

24.3.    **Use of Target's Name.**

Supplier shall not use Target's name, trademarks, services marks or logos in any advertisements, press release, customer lists (including customer lists on any website) or materials of a promotional nature or in soliciting other clients without first obtaining Target's written permission which may be withheld in Target's sole discretion.

24.4.    **Notice.**

Except as otherwise provided in this Agreement, each party giving any notice or making any demand or communication pursuant to this Agreement shall give the notice in writing and shall use one of the following methods of delivery, each of which for purposes of this Agreement is a writing: (a) nationally-recognized overnight courier, with such notice effective at the time delivery is shown in the courier's records; (b) by email, with such notice effective one (1) business day after sending (unless the sender receives an automatically-generated notice that such message was undeliverable); (c) postage prepaid by registered or certified mail, return receipt requested, addressed as set forth below, with such notice effective upon receipt or upon the date that delivery is attempted and refused; or (d) delivered personally, with such notice effective upon delivery. Either party may designate another notice address in a notice given pursuant to this section. The proper notice address for Supplier shall be the address and email set forth on the first page of this Agreement. The proper notice address for Target shall be: Target Corporation; 1000 Nicollet Mall; Minneapolis, MN 55403; Attn: **Contract Services TRTK-0715**; Contract.Services@Target.com

24.5.    **Offset Rights.**

Target shall have the right to offset against any fees owed Supplier any amounts owed by Supplier to Target.

24.6.    **Amendments.**

The parties may not amend this Agreement except by a written agreement that each party executes. The terms of such an amendment shall apply as of the effective date of such amendment, unless the amendment specifies otherwise.

24.7.    **Waivers.**

No provision of this Agreement may be waived, except pursuant to a writing executed by the party against whom the waiver is sought to be enforced. No failure or delay in exercising any right or remedy or requiring the satisfaction of any condition under this Agreement operates as a waiver or estoppel of any right, remedy or condition.

24.8.    **Construction.**

In this Agreement, whenever the context so requires, the masculine, feminine or neuter gender, and the singular or plural number or tense, shall include the others. The headings to the various sections of this Agreement have been included for convenience of reference and shall not

affect the meaning of the language included therein.  As used in this Agreement the word "including" shall mean "including, but not limited to".

**24.9.  Entire Agreement.**

This Agreement, including any Exhibits to this Agreement or documents referenced in this Agreement, and the NDA constitute the entire expression of the parties' agreement on the matters contained in this Agreement and the NDA.   All prior and contemporaneous negotiations and agreements between the parties on the matters contained in this Agreement are expressly merged into and superseded by this Agreement.

**24.10.  Severability.**

If any provision of this Agreement is determined to be invalid, illegal or unenforceable, the remaining provisions of this Agreement remain in full force, if the essential terms and conditions of this Agreement for each party remain valid, binding and enforceable.

**24.11.  Survival.**

The provisions of this Agreement that by their nature are intended to survive termination of this Agreement shall do so.

**24.12.  Authority.**

Target and Supplier each warrant and represent to the other that the individuals executing this Agreement and all other documents to be executed pursuant hereto have the full power and authority to do so.

**24.13.  Audit Rights.**

During the term of this Agreement, and upon reasonable prior notice to Supplier, Target shall have the right to audit and inspect Supplier's relevant business records regarding:  (i) the fees charged by Supplier to Target; and (ii) Supplier's compliance with Supplier's obligations under this Agreement regarding confidentiality; insurance requirements; workforce screening processes; compliance with applicable laws, rules and regulations; and compliance with Target's policies and procedures.  Such audit rights shall be with respect to the two year period prior to the date Target gives Supplier notice of any such audit.

**24.14.  Successors and Assigns.**

This Agreement is binding upon and inures to the benefit of the parties hereto and respective permitted successors and assigns.  Supplier may not assign any of its rights or delegate any performance under this Agreement, voluntarily or involuntarily, whether by merger, consolidation, dissolution, operation of law or any other manner, without Target's written consent. Any purported assignment or delegation by Supplier is void.  This Agreement does not and is not intended to confer any rights or remedies upon any person or entity other than the parties hereto.


*[The balance of this page is intentionally left blank.  Signature page follows.]*

AGREED TO AND ACCEPTED BY:

**Target Corporation**

By:_____

Name/Title:_____
Michael A. Bell
Vice President, Building Services
Target Corporation

Date:_____4-6-06_____

**Supplier Name:**
Prestige Maintenance USA

By_____

Name/Title: Rachel Sanchez/VP of Finance

Date: 3/27/06

Attachments:    Applicable Scope of Work
Form of Compliance Certificate, if applicable

[* Target internal use only (check box, if applicable):
☐    Contractor does not provide Services in California (Contractor signs one agreement)
☒    Contractor provides Services only in California (Contractor signs one agreement – make sure that Sections 7, 8, 9 and 15 are completed)
☐    Contractor provides Services in California and elsewhere (Contractor should sign two agreements – make sure that Sections 7, 8, 9 and 15 are completed in the agreement applicable to Services provided in California)]

Target Corporation Procurement Contract Services
Form of Amendment to
Building Services Service Agreement
Version Dated February 9, 2005

## 1st AMENDMENT TO
## TARGET CORPORATION BUILDING SERVICES
## SERVICE AGREEMENT

This 1st Amendment to the Target Corporation Building Services Service Agreement (the **Amendment**) is entered into by and between Target Corporation and the contractor identified in the signature blank below (**Contractor**) to be effective as of May 6, 2006 (11 a.m.) (**Effective Date**).

### Recitals

A.    Target and Contractor are parties to that certain Target Corporation Building Services Service Agreement, effective as of March 24, 2006 (the **Agreement**).

B.    Target and Contractor desire to amend certain provisions of the Agreement as contained in this Amendment.

### AMENDMENTS

1.    **Adding Location(s) for Prestige Maintenance**. As of the Effective Date, Section 4 (Payment) of the Agreement is hereby amended to add the following:

| T Loc | Monthly Price including applicable tax | Monthly Chemical Budget | Name | Address | City | State | Zip Code |
|---|---|---|---|---|---|---|---|
| 1359 | $13,603.02 | $969.01 | Missouri City | 6000 Highway 6 & Murphy Road | Missouri City | TX | 77459 |
| 1377 | $13,603.02 | $1,065.19 | Clear Lake Shores | 255 FM 2094 | Kemah | TX | 77565 |
| 1459 | $13,603.02 | $1,056.51 | Pearland | 2660 FM 518 | Pearland | TX | 77584 |
| 1786 | $13,603.02 | $1,175.79 | Sugarland | 16300 Southwest Freeway | Sugarland | TX | 77479 |
| 1908 | $13,603.02 | $1,090.60 | Katy West | 23710 Westheimer Pkwy. | Katy West | TX | 77494-3605 |

2.    **Effect on Agreement**.  All of the terms of the Agreement remain in full force and effect except as expressly amended by this Amendment.

**AGREED TO AND ACCEPTED BY:**

**Target Corporation**

**Contractor Name:**

**Prestige Maintenance**

Target Corporation Procurement Contract Services
Form of Amendment to
Building Services Service Agreement
Version Dated February 9, 2005

By: _____

Name/Title: _____
Michael A. Bell
Vice President, Building Services
Target Corporation

Date: ___4 - 20 -06___

By: _____

Name/Title: ___Rachel Suncher /VP of Finance___

Date: ___4/5/06___

Target Corporation Procurement Contract Services
Form of Amendment to
Building Services Service Agreement
Version Dated February 9, 2005

## 2nd AMENDMENT TO
## TARGET CORPORATION BUILDING SERVICES
## SERVICE AGREEMENT

This 2nd Amendment to the Target Corporation Building Services Service Agreement (the **Amendment**) is entered into by and between Target Corporation and the contractor identified in the signature blank below (**Contractor**) to be effective as of April 25, 2006 (11 a.m.) (**Effective Date**).

### Recitals

A.      Target and Contractor are parties to that certain Target Corporation Building Services Service Agreement, effective as of March 24, 2006 (the **Agreement**).

B.      Target and Contractor desire to amend certain provisions of the Agreement as contained in this Amendment.

### AMENDMENTS

1.      **Adding Location(s) for Prestige Maintenance.** As of the Effective Date, Section 4 (Payment) of the Agreement is hereby amended to add the following:

| | Monthly Fixed Including Additional Budget | Monthly Mechanical Budget | | Address | City | State | Zip Code |
|---|---|---|---|---|---|---|---|
| 1358 | $14,048.87 | $1,014.09 | White Plains | 9 City Place | White Plains | NY | 10601 |
| 1798 | $19,946.06 | $1,423.59 | Riverdale | 40 W. 225th St. #50 | Bronx | NY | 10463-7016 |
| 1887 | $14,048.87 | $889.21 | Mt Vernon | 600 Garden Ave | Mount Vernon | NY | 10550 |

2.      **Effect on Agreement.**  All of the terms of the Agreement remain in full force and effect except as expressly amended by this Amendment.

AGREED TO AND ACCEPTED BY:

**Target Corporation**

By: _____

Name/Title: **Michael A. Bell**
**Vice President, Building Services**
**Target Corporation**

Date: _____ 5-3-06 _____

**Contractor Name:**

**Prestige Maintenance**

By: Rachel Sanchez

Name/Title: Rachel Sanchez / VP of Finance

Date: _____ 4/21/06 _____